IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRET A. EVANS, JUAN A. BEHER and JESSICA PEREZ, on behalf of themselves individually and all others similarly situated,<br><br>                                   Plaintiffs,<br><br>          v.<br><br>1) SELECT PORTFOLIO SERVICING, INC.;<br><br>2) U.S. BANK, N.A. AS TRUSTEE FOR THE J.P. MORGAN ACQUISITION TRUST 2006-WMC4 ASSET BACKED PASS-THROUGH CERTIFICATES, SERIES 2006-WMC4,<br><br>3) BANK OF AMERICA, N.A., and<br><br>4) Doe Defendants 1-25.<br><br>                              Defendants | Case No. 2:18-cv-05985 (WFK)(SMG)<br><br><br>**JURY TRIAL DEMANDED** |

## <u>FIRST AMENDED CLASS ACTION COMPLAINT</u>

1.      Plaintiffs, Bret A. Evans, Juan A. Beher, and Jessica Perez (collectively,

"Plaintiffs"), individually and on behalf of all others similarly situated, bring this class action

against defendant Select Portfolio Servicing, Inc., ("SPS"), the servicing agent for Plaintiffs'

residential mortgage loans; defendant U.S. Bank, N.A., as Trustee for the J.P. Morgan Mortgage

Acquisition Trust 2006-WMC4 Asset Backed Pass-Through Certificates, Series 2006-WMC4,

the identified "owner" of Plaintiff Evans's residential mortgage loan, and as Successor Trustee to

Bank of America N.A, ("U.S. Bank"), the  identified "owner" of Plaintiff Perez's residential

mortgage loan, and Bank of America, N.A. ("BOFA"), the identified "owner" of Plaintiff

Beher's residential mortgage loan; and Doe Defendants 1-25, lenders who originate mortgage

loans for which SPS obtains servicing rights   Defendants have engaged in unlawful and

deceptive acts, practices and misconduct in connection with the ownership and servicing of residential mortgage loans, including, but not limited to, (i) representing to Class members, via common, written forms that late fees will be charged, and/or charging late fees, after acceleration of Class members' loans, notwithstanding that such assessments are contrary to form mortgage agreements and unlawful in states where the named plaintiffs and many Class members reside; (ii) charging Class members excessive and unreasonable inspection fees despite occupancy, which is in violation of the standard form mortgage agreement and Fannie Mae industry guidelines and regulations; and (iii) miscalculating (to Class members' detriment) interest charges on Adjustable Rate Mortgage loans. In addition, SPS, as servicing agent, has violated RESPA, 12 U.S.C. § 2605(e) by failing to timely and adequately respond to Class members' Qualified Written Requests concerning improper fees and interest charges, and failing to take corrective action.

2.     Defendant SPS, as the servicing agent for the other Defendants, has engaged in numerous wrongful loan servicing activities, including, but not limited to, the ones set forth herein. The Consumer Financial Protection Bureau has received over 8,000 complaints from homeowners nationwide concerning the loan servicing practices of SPS.

## THE PARTIES

3.     Plaintiff Bret A. Evans is the owner of residential property located at 26 Cheviot Road, Southampton, New York 11968 (the "Evans Property"). On September 28, 2006, Plaintiff Evans obtained an adjustable rate residential mortgage loan from WMC Mortgage Corp. for the Evans Property, a copy of which is attached as Exhibit A hereto. Thereafter, Chase Home Finance LLC became the servicer for Plaintiff Evans's residential mortgage loan. In 2009, a foreclosure action was commenced against Plaintiff Evans in the New York Supreme Court for

Suffolk County.  In that foreclosure action, Plaintiff Evans disputed and continues to dispute inclusion of the improper fees challenged in this action as a part of any obligation claimed to be owed to Defendants U.S. Bank and/or SPS.  On June 1, 2013, SPS became the servicing agent for Plaintiff Evans's mortgage loan.

4.       Plaintiff Juan A. Beher is the owner of residential property located at 18731 Barnhart Avenue, Cupertino, CA 95014 (the "Beher Property").  On December 12, 2006, Plaintiff Beher obtained an adjustable rate residential mortgage loan from BOFA for the Beher Property, a copy of which is attached as Exhibit B hereto.  On or around March 1, 2017, SPS became the servicing agent for Plaintiff Beher's mortgage loan.

5.       Plaintiff Jessica Perez is the owner of residential property located at 135 Nassau Parkway, Oceanside, New York 11572-1543 (the "Perez Property").  The Perez Property is Ms. Perez's primary residence.  On or around October 5, 2005, Ms. Perez's father, Angel Flores, obtained a residential mortgage loan for the Perez Property and placed his daughter, Jessica Perez, on the deed.  In or around 2013, Angel Flores passed away, and Ms. Perez was solely responsible for making the monthly mortgage payments on the loan.  At some point in time, SPS became the servicer of the residential mortgage loan for the Perez Property.  Until December 14, 2017, BOFA was the lender for the residential mortgage loan for the Perez Property.  On or around December 14, 2017, BOFA assigned its interest in the Perez Property residential mortgage to U.S. Bank.

6.       Defendant Select Portfolio Servicing, Inc. ("SPS") is a residential loan servicing company with headquarters located at 3217 S. Decker Lake Drive, Salt Lake City, Utah 84119. As of March 31, 2016, SPS serviced more than 400,000 loans nationwide.  Upon information

and belief, due to its rapid expansion, that number had grown to nearly 560,000 loans by the middle of 2017 and has increased materially since that time.

7.      SPS enters into service agreements with lenders, note holders and trustees pursuant to which SPS provides servicing and agency activities for loan portfolios.  Pursuant to its agreements with U.S. Bank and BOFA, for example, SPS (a) acts as the agent of U.S. Bank and BOFA, the lenders and/or note holders (as well as other lenders and/or note holders), and (b) exercises the rights and responsibilities of those lenders and/or note holders pursuant to their approval.  SPS represents in standard, form letters to borrowers that, "[a]s the mortgage servicer, SPS is authorized to collect all payments and administer the terms of the note and security instrument."  SPS mails standard, form mortgage statements and notice letters to Plaintiff and Class members with the approval and authority of lenders.

8.      Defendant U.S. Bank, N.A. as Trustee for the J.P. Morgan Mortgage Acquisition Trust 2006-WMC4 Asset Backed Pass-through Certificates, Series 2006-WMC4, and as Successor Trustee to Bank of America N.A. ("U.S. Bank") is located at 209 S. LaSalle Street, Suite 300, Chicago, Illinois 60604.  U.S. Bank is headquartered at 425 Walnut Street, Cincinnati, Ohio 45202.  U.S. Bank provides commercial, personal and business banking services.  U.S. Bank is identified by SPS in a July 6, 2018 letter to Plaintiff Evans as the "owner" of Plaintiff's loan and account.   U.S. Bank is also the identified as the owner of Plaintiff Evans's residential loan in the foreclosure action pending the New York State court.   As of December 2017, U.S. Bank succeeded BOFA as the lender or owner of the residential mortgage loan for the Perez Property.

9.      Defendant Bank of America, N.A. ("BOFA") is located at 100 North Tyron Street, Charlotte, NC 28255.   BOFA provides a full range of financial products and services to

consumer nationwide.  BOFA is identified as the lender on Plaintiff Beher's adjustable rate Note. Until December 2017, BOFA also was identified as the lender on the residential mortgage loan for the Perez Property and has assigned its interest in the Perez Property residential mortgage loan to U.S. Bank.

10.     Doe Defendants 1-25, are the other lenders who originate and/or presently own the mortgage loans for which SPS obtains servicing rights.

## JURISDICTION AND VENUE

11.     This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.  This Court also has diversity jurisdiction pursuant to the   Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in various sections of Title 28 of the United States Code), and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

12.     Plaintiffs are citizens of different states than at least one Defendant.  Plaintiff Evans and Plaintiff Perez are citizens and residents of New York.  Plaintiff Beher is a citizen and resident of California.  Defendant SPS is a citizen of Utah, Defendant BOFA is a citizen of North Carolina and Defendant U.S. Bank is a citizen of Ohio.  The  amount in controversy exceeds $5,000,000 and there are at least one hundred members of the Class.  *See* 28 U.S.C. § 1332(d)(2) & (d)(6).

13.     This Court has personal jurisdiction over Defendants because they either are foreign corporations authorized to conduct business in New York, are regularly doing or did business in New York during the relevant time period and have registered with the New York Secretary of State, or do sufficient business in New York, have sufficient minimum contacts with New York, or otherwise intentionally avail themselves of the New York financial, real

estate and consumer markets.  This purposeful availment renders the exercise of jurisdiction by this Court over Defendants and their affiliated or related entities permissible under traditional notions of fair play and substantial justice.

14.     This Court also has subject matter jurisdiction under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"), the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. § 2605, the Truth in Lending Act, 15 U.S.C. §1601 ("TILA"), 28 U.S.C. § 1331, and 28 U.S.C. § 1337.  The Court has supplemental jurisdiction over Plaintiffs' and the Classes' state and common law claims pursuant to 28 U.S.C. § 1367.

15.     Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because the property subject to Plaintiffs Evans and Perez's residential mortgage loans are located within this District, Defendants transact business and may be found in this District, and a substantial portion of the practices complained of herein occurred in the Eastern District of New York.

16.     All conditions precedent to this action have occurred, been performed, or have been waived.

## STATEMENT OF FACTS

### Common Late Fee Scheme:  SPS Represents That  Late Fees Will Be Charged Post-Acceleration, Contrary to the Law of At Least Six States and the Underlying Mortgage Notes

### SPS's Common, Written Representations To Plaintiff Evans

17.     On September 28, 2006, Plaintiff Evans obtained a residential mortgage loan from WMC Mortgage Corp. for the Evans Property.  Plaintiff Evans's mortgage is a Fannie Mae/ Freddie Mac Uniform Instrument.  Thereafter, ownership of the loan was transferred to U.S. Bank.  In 2009, Plaintiff Evans's loan was accelerated and all amounts owed became

immediately due and payable.  On June 1, 2013, SPS became the servicing agent for Plaintiff Evans's mortgage loan.

18.     Because Plaintiff Evans's loan had been accelerated prior to SPS becoming the servicer, no late fees lawfully could be imposed or collected by SPS, operating as U.S. Bank's agent, unless specifically authorized by the mortgage agreement.  Moreover, SPS's representations that late fees would be charged on accelerated loans was false and misleading. Plaintiff's standard form mortgage agreements do not permit the charging and collection of late fees post-acceleration.

19.     Despite acceleration of the Plaintiff Evans's loan, SPS, operating as U.S. Bank's agent, falsely represented that late fees could and would be charged to Plaintiff's loan if Plaintiff failed to make payments in full by a date certain.

20.      On April 12, 2018, Defendant SPS mailed a standard form mortgage statement to Plaintiff Evans which stated that, "This account has been accelerated, which means that all outstanding amounts are due."   The SPS April 12, 2018 mortgage statement further stated, "If payment is received after May 16, 2018, $75.99 late fee will be charged."  That mortgage statement indicated that there were "unpaid late charges" of $835.89 and "other charges and fees" of $9,506.00.

21.     On April 30, 2018, Plaintiff Evans sent SPS a Qualified Written Request ("QWR") pursuant to RESPA, 12 U.S.C. § 2605(e)(1)(B), requesting, among other things, that SPS provide him with a detailed payment history and an accounting showing, *inter alia*, the total amount of late fees that were charged to his mortgage account as well as an accounting for the "other charges and fees in the amount of $9,506.00."  Plaintiff Evans also requested that SPS provide him with the 30-day default notice and date of default.

22.     In response to Plaintiff Evans's QWR, SPS wrote to Plaintiff Evans on May 14, 2018, stating, in relevant part, "Late fees are assessed according to the requirements found in your Adjustable Rate Note and state law.  If the fee is allowed under the Adjustable Rate Note and state law, a late fee may be assessed if we do not receive your monthly payment prior to the expiration of any applicable grace period.  The late fee amount and grace period are outlined on the first page of your Periodic Statement."  However, U.S. Bank and SPS, operating as U.S. Bank's agent, knew, or reasonably should have known, and failed to disclose that assessing a late fee post-acceleration is not permitted by Plaintiff's mortgage, a Fannie Mae/Freddie Mac UNIFORM INSTRUMENT, and is not allowed under the laws of New York and other states, including, but not limited to, New Jersey, Pennsylvania, Vermont, Massachusetts, Illinois and California.  Moreover, SPS knew, or reasonably should have known and failed to disclose, that its representations that late fees would be charged was materially false and misleading.

23.     Plaintiff Evans's standard form mortgage states, in relevant part:

22. Lender's Rights if Borrowers Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument.  Lender may do this without making any further demand for payment. The requirement is called "Immediate Payment in Full."

        Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;
(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:
    (1) The promise or agreement that I failed to keep or the default that has occurred;
    (2)  The action that I must take to correct that default;
    (3)  A date by which I must correct the default.  That date will be at least 30 days from the date on which the notice is given;

> (4) That if I do not correct the default by the date stated in the notice, Lender may required Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;
>
> (5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and
>
> (6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and
>
> (c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

24.     There is thus no provision in Plaintiff Evans's standard form mortgage agreement which permits SPS to charge or collect a late fee post-acceleration, whether for itself or on behalf of U.S. Bank or any other lender or note-holder.

25.     Nevertheless, SPS, operating as U.S. Bank's agent, continued to represent to Plaintiff Evans in standard form mortgage statements that it would charge a monthly late fee.  On May 3, 2018, SPS mailed Plaintiff Evans a PAYOFF STATEMENT which represented $835.89 in "Late Charges Outstanding."

26.     On May 15, 2018, SPS mailed a standard form mortgage statement to Plaintiff Evans which stated that, "This account has been accelerated, which means that all outstanding amounts are due."  That May 15, 2018 mortgage statement further stated, "If payment is received after June 16, 2018, $75.99 late fee will be charged."

27.     On June 14, 2018, SPS mailed a standard, form mortgage statement to Plaintiff Evans which stated that, "This account has been accelerated, which means that all outstanding amounts are due."  That June 14, 2018 mortgage statement further stated, "If payment is received after July 16, 2018, $75.99 late fee will be charged."

28.     This was a typical representation to consumers and is not the first time SPS's representations to consumers in standardized, written loan servicing communications have been

the subject of litigation.  In September 2007, SPS was permanently restrained and enjoined from, among other things, the following:

> D.  "Misrepresenting, expressly or by implication, any amount that a consumer owes;  E. Misrepresenting, expressly or by implication, that any fee is allowed under the loan instruments, permitted by law, or  imposed for services actually rendered.

*See United States v. Select Portfolio Servicing, Inc*., 2007 U.S. Dist. LEXIS 104230, at *9 (D. Mass. Sept. 6, 2007).

29.      On July 5, 2018, Plaintiff Evans mailed (via USPS certified mail) and emailed SPS a second QWR, which placed SPS on further notice that Plaintiff Evans believed the late fees which U.S. Bank and SPS represented would be charged to his mortgage balance post-acceleration were improper.  Plaintiff Evans requested that the late fees, including the most recent late fee of $75.99, which SPS represented in the June 14, 2018 mortgage statement would be charged if payment was not received by July 16, 2018, be removed and that SPS refrain from charging late fees to Plaintiff Evans's mortgage account.  On July 5, 2018, SPS sent Plaintiff Evans an email confirming the SPS relationship manager had received his QWR via email.

30.      On August 3, 2018, SPS wrote to Plaintiff Evans in response to his July 5, 2018 QWR.  SPS stated it "received your correspondence dated 07/05/2018.  We are in the process of completing our research of the issue(s) identified in your letter and expect to provide a response to you within the next thirty (30) days."  SPS, however, failed to provide a response, or take corrective action, within thirty days.

**SPS's Common, Written Representations To Plaintiff Perez**

31.      SPS similarly has represented to Plaintiff Perez that late fees will be charged post-acceleration.

32.     In or around 2015, Ms. Perez was briefly unemployed and missed approximately two or three monthly mortgage payments.  Once Ms. Perez was gainfully employed again and able to resume making the monthly mortgage payments, she contacted SPS.  SPS instructed Ms. Perez to send a certified check for the full amount due to SPS in order to have the loan reinstated as current.  Ms. Perez did as instructed by SPS and sent a certified check for the full amount due to SPS to reinstate the loan.  Without explanation, SPS returned Ms. Perez's certified check. When Ms. Perez contacted SPS by telephone to inquire as to the reason that the certified check was returned, SPS explained that it was too late to have the loan reinstated because foreclosure proceedings had been commenced.

33.      Indeed, in monthly mortgage statements which Mr. Perez began receiving from SPS since it rejected her certified check for reinstatement of the loan, SPS has represented that "SPS has completed the first notice or filing required to state a foreclosure."  In these same monthly notices, SPS also represented that, "If payment [of the total amount due] is received after [a date certain], $18.05 late fee will be charged."

34.     SPS has continued to make these representations that it will impose a late fee on her account in monthly mortgage statements sent to Ms. Perez, including as recently as the mortgage statement dated April 12, 2019, which stated, *inter alia*, "[i]f payment [of $125,013.05] is received after 5/16/2019, $18.05 late fee will be charged."

35.     SPS has refused to accept payment from Ms. Perez on the mortgage for the Perez Property since approximately 2015.  Ms. Perez has been attempting to work out a modification with SPS for the past several years.

**Common Overcalculation of Interest Rate Scheme:  SPS, Acting as Agent For U.S. Bank and BOFA,  Charges Unauthorized Interest Rates In Breach of the Adjustable Rate Mortgage Agreements**

36.     Pursuant to standard form adjustable rate mortgage agreements, Plaintiffs Evans and Beher are charged interest rates that are adjusted periodically pursuant to a formula based on the LIBOR index.  Both Plaintiff Evans and Plaintiff Beher have been charged interest rates that are higher than the rates permitted by the standard form adjustable rate mortgage agreements within the applicable statutory period.

37.     In January 2018, BOFA and/or SPS charged Plaintiff Beher an interest rate of 5.25%, but should have charged a lower interest rate of approximately 4.25% based on LIBOR and the terms of his standard form adjustable rate mortgage.

38.     In April 2018, U.S. Bank and/or SPS charged Plaintiff Evans an interest rate of 8.5%, but should have charged a lower interest rate of approximately 8.03% based on LIBOR and the terms of his standard form adjustable rate mortgage.

39.     The miscalculation is effected pursuant to common practices, including but not limited to the imposition of a false "floor" on mortgage interest rates.

**Common Unlawful Inspection Fee Scheme:  SPS Charged Inspection Fees Neither Reasonable Nor Appropriate To Protect The Lender's Interest**

40.     As a loan servicer, SPS is required to follow the servicing guidelines of Fannie Mae.  Failure to comply with these guidelines is probative of a failure on the part of the loan servicer to comply with state consumer protection laws.  Moreover, the Fannie Mae servicing guidelines clarify what is "reasonable or appropriate" under the mortgage agreement.

41.     With respect to property inspections, Section 303 of the 2015 Fannie Mae Servicing Guidelines provide:

> Generally, the servicer does not have to inspect a property that secures a delinquent mortgage loan if it has established [Quality Right Party Contact ("QRPC")] with the borrower and is working with the borrower to resolve the delinquency … or a full payment has been received within the last 30 days.

The servicer must order the property inspection by the 45th day of delinquency and complete the property inspection no later than the 60th day of delinquency if QRPC has not been achieved or a full payment has not been received within the last 30 days. The servicer must continue to obtain property inspections every 30 days until it establishes QRPC as long as the mortgage loan remains 45 days or more delinquent.

42.     Section 303 of the 2015 Fannie Mae Servicing Guidelines is necessary to ensure the property is occupied when a loan servicer has been *unable to establish contact with the borrower* and loan payments have not been received.  But Section 303 does not authorize or permit inspections when the loan servicer is in contact with the borrower and knows the property to be inhabited, such as when the borrower provides a notice of occupancy to the loan servicer, or after the borrower has come current.

43.     In addition, the United States Department of Housing and Urban Development imposes a limitation on loan servicers' ability to order property inspections and charge them to borrowers. Specifically, 24 C.F.R. § 203.377 provides, in pertinent part:

The mortgagee, upon learning that a property subject to a mortgage insured under this part is vacant or abandoned, shall be responsible for the inspection of such property at least monthly, if the loan thereon is in default.  When a mortgage is in default and a payment thereon is not received within 45 days of the due date, **and efforts to reach the mortgagor by telephone within that period have been unsuccessful,** the mortgagee shall be responsible for a visual inspection of the security property to determine whether the property is vacant. The mortgagee shall take reasonable action to protect and preserve such security property when it is determined or should have been determined to be vacant or abandoned until its conveyance to the Secretary, if such action does not constitute an illegal trespass. "Reasonable action" includes the commencement of foreclosure within the time required by § 203.355(b) of this part. (Emphasis added).

44.     In its May 14, 2018 response to Plaintiff Evans, SPS  stated that, "[a]s a mortgage servicer, SPS may incur fees or costs, that are necessary to protect the noteholder's interests in a property and are allowed under the terms of your Mortgage documents.  These fees or servicer advances appear on your monthly statement as 'other Charges and Fees.'"  This statement was materially false and misleading.  Many of the fees charged, including the monthly inspection

fees, were neither reasonable nor appropriate to protect the noteholder or lender's interest in the property, nor allowed by Plaintiff Evans's standard form mortgage or note agreements.

45.     For example, SPS charged and imposed on Plaintiff Evans monthly inspection fees, and sometimes charged multiple monthly inspection fees and multiple inspections on the same day, despite being in contact with Plaintiff Evans and having knowledge that the property was occupied.  Indeed, a standardized fee schedule for Plaintiff Evans's mortgage stated that a property inspection fee would be charged only, "if you are in default and we can not make contact with you to determine the condition of the property."  However, SPS was able to make contact with Plaintiff Evans, knew the property was occupied, and nevertheless charged monthly inspection fees that were neither reasonable nor appropriate to protect the lender's interest in the property.  U.S Bank has also been in regular contact with Plaintiff and his foreclosure legal counsel in connection with a mortgage foreclosure action pending in the New York State courts since 2009.

46.      Plaintiff Evans's mortgage provides the following with respect to inspections:

7.  Borrower's Obligation to Maintain and Protect That Property And to Fulfill Any Lease Obligations.

(a) Maintenance and Protection of the Property.  I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate.  Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. . . .

(b) Lender's Inspection of Property. Lender, and others authorized by Lender, may enter on and inspect the Property.  They will do so in a reasonable manner and at reasonable times.

47.   Plaintiff Evans's mortgage further provides:

9.  Lender's Right to Protect its Rights in The Property:  If: (a) I do not keep my promises and agreements made in this Security Instrument. . . or (c) I have abandoned the Property, then Lender may do and pay for whatever is **reasonable or appropriate** to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to:  (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property;  . . .
I will pay to Lender any amounts, with interest, which Lender spends under this Section 9.  (Emphasis added).

48.     As detailed herein, Plaintiff Evans and other members of the Class have been in contact with SPS and U.S. Bank and/or Doe Defendants 1-25, and/or have provided notice of occupancy forms, have achieved QRPC under the Fannie Mae Servicing Guidelines, and/or have become current on their loans and were no longer in default.  Yet, SPS, operating as U.S. Bank's agent, ordered property inspections, which were charged to Plaintiff's and the Class members' mortgage balances, without a legitimate basis, solely to generate unreasonable and unnecessary fees.

49.     Upon information and belief, SPS utilizes a software-based servicing system which automatically orders property inspections, and charges the borrower's account for the inspections, if a borrower is in default.  The only criteria for the inspection to be ordered and charged is that the loan has been in default for a certain number of days.  The inspection is ordered and charged regardless of whether there is a lawful and reasonable basis for ordering the inspection or whether the borrower may be legally charged for the inspection.

50.      SPS and its automated servicing system, intentionally ignores whether Class members, including Plaintiff Evans, are living in their homes at the time of the inspections, have provided proof of occupancy, or otherwise have been in contact with SPS by telephone or written correspondence.

51.     The unwarranted charging of inspection fees allows SPS, operating as U.S. Bank's agent, to reap huge profits for itself and/or its principle at the cost of the Plaintiff and the other Class Members.

52.     For instance, Plaintiff Evans's mortgage account was charged regular monthly inspection fees by SPS as set forth below despite his being in contact with U.S. Bank and SPS during this period and occupying the property.  The inspection fees totaled over $1,200. Moreover, on a single day, June 14, 2013, SPS, operating as U.S. Bank's agent, charged 29 separate inspection fees, ranging in amounts of $14, $56 and $60:

| June 14, 2013 | $14 Inspection Fee |
| June 14, 2013 | $14 Inspection Fee |
| June 14, 2013 | $14 Inspection Fee |
| June 14, 2013 | $14 Inspection Fee |
| June 14, 2013 | $14 Inspection Fee |
| June 14, 2013 | $14 Inspection Fee |
| June 14, 2013 | $14 Inspection Fee |
| June 14, 2013 | $14 Inspection Fee |
| June 14, 2013 | $60 Inspection Fee |
| June 14, 2013 | $14 Inspection Fee |
| June 14, 2013 | $14 Inspection Fee |
| June 14, 2013 | $14 Inspection Fee |
| June 14, 2013 | $14 Inspection Fee |
| June 14, 2013 | $60 Inspection Fee |
| June 14, 2013 | $60 Inspection Fee |
| June 14, 2013 | $60 Inspection Fee |
| June 14, 2013 | $14 Inspection Fee |
| June 14, 2013 | $14 Inspection Fee |
| June 14, 2013 | $14 Inspection Fee |
| June 14, 2013 | $60 Inspection Fee |
| June 14, 2013 | $14 Inspection Fee |
| June 14, 2013 | $14 Inspection Fee |

| | |
|---|---|
| June 14, 2013 | $56 Inspection Fee |
| June 14, 2013 | $14 Inspection Fee |
| June 14, 2013 | $14 Inspection Fee |
| June 14, 2013 | $14 Inspection Fee |
| June 14, 2013 | $14 Inspection Fee |
| June 14, 2013 | $14 Inspection Fee |
| June 14, 2013 | $14 Inspection Fee |
| August 13, 2013 | $15 Inspection Fee for "Property Preservation" |
| October 2, 2013 | $15 Inspection Fee for "Property Preservation" |
| November 7, 2013 | $15 Inspection Fee for "Property Preservation" |
| December 19, 2013 | $15 Inspection Fee for "Property Preservation" |
| January 30, 2014 | $15 Inspection Fee for "Property Preservation" |
| March 7, 2014 | $15 Inspection Fee for "Property Preservation" |
| April 23, 2014 | $15 Inspection Fee for "Property Preservation" |
| June 2, 2014 | $15 Inspection Fee for "Property Preservation" |
| July 10, 2014 | $15 Inspection Fee for "Property Preservation" |
| August 21, 2014 | $15 Inspection Fee for "Property Preservation" |
| October 29, 2014 | $15 Inspection Fee for "Property Preservation" |
| December 1, 2014 | $15 Inspection Fee for "Property Preservation" |
| January 2, 2015 | $15 Inspection Fee for "Property Preservation" |
| February 12, 2015 | $15 Inspection Fee for "Property Preservation" |
| April 14, 2015 | $15 Inspection Fee for "Property Preservation" |
| May 20, 2015 | $15 Inspection Fee for "Property Preservation" |
| June 23, 2015 | $15 Inspection Fee for "Property Preservation" |
| July 29, 2015 | $15 Inspection Fee for "Property Preservation" |
| September 1, 2015 | $15 Inspection Fee for "Property Preservation" |
| October 9, 2015 | $15 Inspection Fee for "Property Preservation" |

| | |
|---|---|
| November 18, 2015 | $15 Inspection Fee for "Property Preservation" |
| December 23, 2015 | $15 Inspection Fee for "Property Preservation" |
| January 27, 2016 | $15 Inspection Fee for "Property Preservation" |
| March 1, 2016 | $15 Inspection Fee for "Property Preservation" |
| April 20, 2016 | $15 Inspection Fee for "Property Preservation" |
| June 24, 2016 | $15 Inspection Fee for "Property Preservation" |
| September 30, 2016 | $15 Inspection Fee for "Property Preservation" |
| December 2, 2016 | $15 Inspection Fee for "Property Preservation" |
| January 6, 2017 | $15 Inspection Fee for "Property Preservation" |
| February 7, 2017 | $15 Inspection Fee for "Property Preservation" |
| March 15, 2017 | $15 Inspection Fee for "Property Preservation" |
| April 19, 2017 | $15 Inspection Fee for "Property Preservation" |
| May 23, 2017 | $15 Inspection Fee for "Property Preservation" |
| June 26, 2017 | $15 Inspection Fee for "Property Preservation" |
| August 28, 2017 | $15 Inspection Fee for "Property Preservation" |
| October 3, 2017 | $15 Inspection Fee for "Property Preservation" |
| December 19, 2017 | $15 Inspection Fee for "Property Preservation" |

53.     SPS also has charged Plaintiff Perez for inspection fees in the amount of $15 on her monthly mortgage statements, including, but not limited to, the monthly mortgage statements dated April 13, 2017 and July 14, 2017.  SPS has been in constant contact with Plaintiff Perez since at least 2015 and is aware that the Perez Property is occupied.

## TOLLING

54.     The statute of limitations for the claims alleged herein is tolled as of the filing of the original class action on October 25, 2018.  *See American Pipe v. Utah*, 414 US 538, 561 (1974).  Equitable tolling also applies to Plaintiffs' claims to the extent Defendants'

misrepresented and concealed the true nature of the fees charged to Plaintiffs' and Class members' mortgage accounts.

## CLASS ACTION ALLEGATIONS

55.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure, Rule 23(a), 23(b)(2) and (b)(3) on behalf of the Classes defined as follows:

Multistate Late Fees Class:

All borrowers residing in the states of California, Illinois, Massachusetts, New Jersey, New York, Pennsylvania, and Vermont who have or had mortgage agreements for loans serviced by SPS that were accelerated  during the relevant statutes of limitation periods.

Interest Calculation Class:

All borrowers nationwide who have or had adjustable rate mortgage agreements for loans serviced by SPS during the period of an interest rate adjustment during the relevant statutes of limitations periods.

Inspection Fees Class:

All borrowers nationwide who have or had mortgage agreements for loans serviced by SPS, who have occupied the property for which the loan serviced by SPS was obtained, and who have had inspection fee(s) charged during the relevant statutes of limitations periods.

56.     Excluded from the Classes are Defendants; any entity in which Defendants have or had a controlling interest or which have or had a controlling interest in any Defendant; Defendants' legal representatives, assigns, and successors; the judicial officer(s) to whom this matter is assigned and their immediate family; and Class members who timely opt-out of any certified 23(b)(3) opt-out Class.

57.     Plaintiffs reserve the right to modify or amend the definition of the Class before the Court determines whether certification is appropriate.

**Numerosity (Rule 23(a)(1))**

58.     Each proposed Class is so numerous that joinder of all members would be impracticable; SPS services hundreds of thousands of loans. The individual Class members are ascertainable, as the names and addresses of all Class members can be identified in the business records maintained by Defendants.   The precise number of Class members can be obtained through discovery, but the numbers are clearly more than can be consolidated in one complaint such that it would be impractical for each member to bring suit individually.  Plaintiffs do not anticipate any difficulties in the management of the action as a class action.

**Commonality (Rule 23(a)(2))**

59.     There are c o r e questions of law and fact that are common to Plaintiffs' and  Class members' claims.

60.     These common questions predominate over any questions that go particularly to any individual member of the Classes.   Among such common questions of law and fact are the following:

   a.  whether Defendants misrepresented that late fees would be charged on loans post-acceleration;

   b.  whether SPS was operating as an agent for its principles, including U.S. Bank and/or BOFA and/or Doe Defendants 1-25;

   c.  whether U.S. Bank and/or BOFA and/or Doe Defendants 1-25 gave authority and approval to SPS's representations in standard mortgage statements that late fees would be charged on loans post-acceleration;

   d.  whether Defendants charged late fees on loans post-acceleration;

   e.  whether Defendants charged interest rates higher than the rates permitted by the standard form adjustable rate mortgage agreements;

   f.  whether Defendants charged unreasonable inspection fees in violation of Fannie Mae industry guidelines and regulations;

g.  whether Defendants' actions are in breach of the standard form mortgage agreements of Plaintiffs and the other members of the Classes;

h.  whether SPS violated the FDCPA;

i.  whether SPS violated RESPA 12 U.S.C. § 2605(e)(1) and (2);

j.  whether Defendants violated TILA;

k.  whether Plaintiffs and the Class have suffered damages as a result of Defendants' actions and the amount thereof; and

l.  The appropriate remedies to be imposed on Defendants for their violations of the laws claimed herein.

**Typicality (Rule 23(a)(3))**

61.  Plaintiffs are members of the Classes they seek to represent. Plaintiffs' claims are typical of claims of the other Class members because of the similarity, uniformity, and common purpose of the Defendants' unlawful conduct. Each Class member has sustained, and will continue to sustain, damages in the same manner as Plaintiffs as a result of Defendants' unlawful conduct.

**Adequacy of Representation (Rules 23(a)(4) and 23(g))**

62.  Plaintiffs are adequate representatives of the Class and will fairly and adequately protect the interests of the Class. Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel, experienced in litigation of this nature, to represent them. There is no hostility between Plaintiffs and the unnamed Class members. Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

63.  To prosecute this case, Plaintiffs have chosen the undersigned law firms, who are experienced in class action litigation, fraud litigation, and mortgage litigation, and who have

the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

**Requirements of Fed. R. Civ. P. 23(b)(3)**

64.     The questions of law or fact common to Plaintiffs and each Class Member's claims predominate over any questions of law or fact affecting only individual members of the class.  All claims by Plaintiffs and the unnamed Class members are based on Defendants' common fraudulent and unlawful conduct based on uniform policies involving uniform (and form) mortgage documents.

65.     Moreover, common questions of law predominate.  For the Multistate Late Fees Class, the laws do not vary in any material respect with respect to the prohibition on late fees post-acceleration, and the federal laws apply to each Class member.  For the nationwide Classes, the laws do not vary materially with respect to the terms at issue or, alternatively, sub-classing, \ issue classes, or bellwether classes are appropriate.

66.     Common issues predominate when, as here, liability can be determined on a class-wide basis, even though some individualized damages determinations may be necessary.

**Superiority**

67.     A class action is superior to individual actions.

68.     Joinder of all Class members would create extreme hardship and inconvenience for the affected borrowers as they are dispersed geographically and reside across multiple states.

69.     Individual claims by Class members are impractical because the costs to pursue individual claims exceed the value of what any one Class member has at stake.   As a result, individual Class members have no interest in prosecuting and controlling separate actions.

70.     There are no known individual Class members who are interested in individually controlling the prosecution of separate actions.

71.     The interests of justice will be well served by resolving the common disputes of potential Class members in one forum.  Individual suits would not be cost effective or economically maintainable, and the action is manageable as a class action.

**Requirements of Fed. R. Civ. P. 23(b)(2)**

72.     Prosecuting separate actions by or against individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members  that would establish incompatible standards of conduct for the party opposing the Classes.

73.     Defendants have acted or failed to act in a manner generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

**FIRST CAUSE OF ACTION**
**Breach of Contract**
**(Against All Defendants on Behalf of All Classes)**

74.      Plaintiffs repeat and reallege each preceding paragraph of the Complaint as if fully set forth herein.

75.     Plaintiffs and the other members of the Class have executed standard form residential mortgage agreements for loans owned by U.S. Bank, BOFA, and Doe Defendants, and serviced by SPS, as the agent.

76.     Defendants have breached the terms of the standard form mortgage agreements by (i) charging interest rates higher than the rates permitted in the standard form adjustable rate mortgage agreements; (ii) charging late fees after acceleration not permitted by the loan

agreements; and/or (iii) charging inspection fees, despite occupancy, which is prohibited by the loan agreements and the Fannie Mae industry guidelines and regulations.

77.     Plaintiffs and the other members of the Class have been damaged as a direct result of Defendants' breaches.  Those damages comprise the wrongful charges added to their mortgage account balances, whether paid voluntarily or ultimately obtained by Defendants through foreclosure proceedings.  The application of unlawful charges to Plaintiffs' loan balances necessarily increased the total balances, and the accumulation of debts may reduce equity, affect credit ratings, limit borrowing capacity, or otherwise cause a concrete injury to Plaintiffs and Class members, even if Plaintiffs or Class members never actually pay the debt accumulated, perhaps due to foreclosure or bankruptcy.

**SECOND CAUSE OF ACTION**
**VIOLATION OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**
**(Against All Defendants on Behalf of All Classes)**

78.     Plaintiffs repeat and reallege each preceding paragraph of the Complaint as if fully set forth herein.

79.     Plaintiffs and the other members of the Class have executed standard form residential mortgage agreements for loans owned by U.S. Bank, BOFA, and Doe Defendants, and serviced by SPS, as the agent.

80.     A covenant of good faith and fair dealing is implied in every contract, including the standard form mortgage agreements of Plaintiffs and the other members of the Class.  This covenant imposes upon each party a duty of good faith and fair dealing in the performance of the contract

81.     Where an agreement affords one part the power to make a discretionary decision without defined standards, the duty to act in good faith limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party.

82.     The standard form mortgage agreement of Plaintiffs and the other members of the Class permit the lender to take actions reasonable and appropriate to protect its interest in the underlying property, and to charge the borrower for the cost thereof.  Defendants are thus afforded substantial discretion in taking actions reasonable and appropriate to protect the lender's interest in the property.  However, Defendants must exercise this discretion in good faith, which they have not done by imposing improper late fees and inspection fees.

83.     Defendants breached the implied covenant of good faith and fair dealing and exercised their discretion under the standard form mortgage agreement in bad faith by, *inter alia*, (a) charging Plaintiffs and other members of the Class interest rates higher than those permitted by the standard form adjustable rate mortgage agreements; (b) charging and/or threatening to chare late fees post-acceleration; and (b) charging Plaintiff Evans, Plaintiff Perez, and other members of the Class inspection fees once the loan was in default, despite their being in contact with the Plaintiff Evans, Plaintiff Perez, and other Class members and the occupancy of the property.  None of these actions was reasonable or appropriate to protect the lender's interest in the underlying property and was undertaken purely to generate additional profits for Defendants.

84.     As a direct and proximate result of the aforementioned breaches of the covenant of good faith and fair dealing, Plaintiffs and the Class have suffered damages.


**THIRD CAUSE OF ACTION**
**VIOLATION OF THE FAIR DEBT COLLECTION PRACTICE ACT**
**(Against Defendant SPS on Behalf of the Multistate Late Fees Class and Inspection Fee Classes)**

85.    Plaintiff Evans and Plaintiff Perez repeat and reallege each preceding paragraph of the Complaint as if fully set forth herein.

86.    SPS is a debt collector.  SPS regularly collects defaulted debts for others and the debts are in default when SPS first becomes involved with collections.

87.    The Fair Debt Collection Practices Act, 15 U.S.C. § 1692(e) provides, in relevant part:

False or misleading representations

A debt collector may not use any false, deceptive or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .

(2)    The false representation of –

    (A)  the character, amount, or legal status of any debt; . . .

(5)    The threat to take any action that cannot legally be taken or that is not intended to be taken. . .

(10)  The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer . . .

88.  The Fair Debt Collection Practices Act, 15 U.S.C. § 1692(f) provides, in relevant part:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1)  The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  ….

89.    SPS's representations to Plaintiff Evans and Plaintiff Perez and other members of the Class in standard form notices that (i) inspection fees are necessary to protect the borrower's

26

interest in a loan when the property is not occupied, but SPS nevertheless charges and seeks to collect inspection fees when the property is occupied; and/or (ii) late charges may be imposed on a loan that has been accelerated; and/or (iii) "[a]s a mortgage servicer, SPS may incur fees or costs, that are necessary to protect the noteholder's interests in a property and are allowed under the terms of your Mortgage documents.  These fees or services advanced appear on your monthly statement as 'other Charges and Fees;' are false, in violation of standard form mortgage agreements, and violate the FDCPA.

90.     As a result of SPS's violations of the FDCPA, Plaintiff Evans, Plaintiff Perez and the Classes seek actual and statutory damages, in addition the payment of attorneys' fees and reasonable expenses.

### FOURTH CAUSE OF ACTION
### VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349
### (Against All Defendangs on Behalf of The Late Fee and Inspection Fee Classes))

91.      Plaintiff Evans and Plaintiff Perez repeat and reallege each preceding paragraph of the Complaint as if fully set forth herein.

92.     Plaintiff Evans and Plaintiff Perez bring this cause of action individually and on behalf of the Multistate Late Fees Class, Inspection Fee Class and/or a New York Subclass against SPS comprising all Class members whose properties subject to the mortgages serviced by SPS are located within the State of New York.

93.     Plaintiff Evans, Plaintiff Perez, and the Class members are "persons" within the meaning of GBL §349(h).

94.     GBL §349(a) states: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

95.     SPS's acts and practices alleged herein constitute acts, uses, or employment by SPS and their agents of deception, fraud, unconscionable and unfair commercial practices, false pretenses, false promises, misrepresentations, or the knowing concealment, suppression, or omission of material facts with the intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of merchandise, and with the subsequent performance, of defendants in violation of § 349 of New York's General Business Law, making deceptive and unfair acts and practices illegal.

96.     SPS's conduct is deceptive because it is likely to mislead consumers and the public by making them believe, falsely, that late fees can and will be charged on accelerated loans in New York if payment is not made in full by a date certain.  Indeed, SPS represented to Plaintiff Evans, Plaintiff Perez and other members of the Multistate Late Fees Class,  Inspection Fee Class and/or New York Subclass in standard form letters that it would charge a late fee if payment was not made by a date certain.

97.     SPS also represented in standard form letters that inspection fees and other miscellaneous late fees would be charged as necessary to protect the noteholder's interest in the property.  SPS represents in standardized form letters that "inspection fees are necessary to protect the borrower's interest in a loan when the property is not occupied" and/or that "[a]s a mortgage servicer, SPS may incur fees or costs, that are necessary to protect the noteholder's interests in a property and are allowed under the terms of your Mortgage documents.  These fees or services advanced appear on your monthly statement as 'other Charges and Fees."  These representations are false and misleading because SPS has routinely charged inspection fees even where the property has been occupied, and/or has charged other miscellaneous late fees that are unnecessary to protect the noteholder's interest.

28

98.     SPS's representations were materially false and misleading and likely to deceive the consuming public because SPS knew, or reasonably should have known, and failed to disclose, that New York law, and the materially identical law of the other states in the Multistate Late Fees Class, does not permit late fees to be charged and collected on loans that had been accelerated, absent an explicit provision in the mortgage agreement permitting late fees to be charged post-acceleration.  SPS also knew, or reasonably should have known and failed to disclose, that SPS routinely charges inspection fees not necessary to protect the noteholder's interest where the property is occupied and that other miscellaneous and generic fees similarly are not necessary to protect the lender or noteholder's interest, but solely a means to enhance SPS's servicing revenues.

99.     The following alternative consumer protection statutes provide a commensurate basis for redress based on Defendant SPS's unfair, deceptive, and/or misleading acts, practices and conduct in charging late fees post acceleration, charging miscellaneous and generic fees which are not necessary to protect the lender or noteholder's interest in the underlying property, and charging unnecessary, repetitive and excessive inspection fees where the property is occupied.  To the extent reliance is required under any state law, it is satisfied by the materiality of the omissions and/or the actual reliance of these Plaintiffs, as reasonable consumers. Specifically, the other laws referenced in the previous paragraph that are relevant to the claims of the Multistate Late Fees Class members are:

a.      The California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.;

b.      The Massachusetts Regulation of Business Practice and Consumer Protection Act, Mass. Gen. Laws Ann. Ch. 93A;

c.      The New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, *et seq*.;

d.      The Pennsylvania Unfair Trade Practices and Consumer Protection Law, Pa. Stat. Ann. tit. 73, §§ 201-1, *et seq.*;

e.      The Illinois Consumer Fraud and Deceptive Business Practices Act, Ill. Comp. Stat. Ann. §§ 505/1 *et seq.*; and

f.      The Vermont Consumer Fraud Act, Vt. Stat. Ann. tit. 9, §§ 2451, *et seq.*

100.    SPS charged monthly inspection fees – and sometimes charged for multiple inspections on the same day- to the mortgage accounts of Plaintiffs and other members of the Inspection Fees Class residing in New York, despite occupancy and/or contact with the borrower in violation of the Fannie Mae regulations.  In so doing, SPS impliedly represented that such fees were lawful, when they were not.

101.    The deceptive acts and practices of SPS have directly, foreseeably, and proximately caused damages and injury to Plaintiff and the other members of the Classes. SPS's false and deceptive representations caused Plaintiff and other members of the New York Subclass to suffer damages, including, but not limited to, incurring out of pocket expenses either in an attempt to pay for the fees, or challenge the representations that the late fees could be charged post- acceleration.

102.    In addition to pecuniary losses, Plaintiff and Class members  suffered actual harm as a result of SPS's violations GBL §349(a), including but not limited to, the annoyance, harassment, time, frustration, anger, and anxiety incurred by Plaintiff and the New York Subclass due to SPS's violations of GBL §349.

103.    Plaintiff and the Classes and/or New York Subclasses are entitled to pursue claims against SPS  for damages, statutory damages, treble damages, exemplary damages,

injunctive relief, costs and attorney's fees pursuant to GBL §349(h) to redress SPS's violations of GBL §349(a).

104.    New York Subclass members who were sixty-five years of age or older at the time of SPS's violations of GBL §349 are entitled to pursue additional remedies pursuant to GBL §349-c to redress Defendants' violations of GBL §349(a) perpetrated against elderly persons.

**FIFTH CAUSE OF ACTION**
**Violations of the California Unfair Competition Law,**
**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**
**(Against All Defendants on Behalf of the California Subclass)**

105.    Plaintiff Beher repeats and realleges each preceding paragraph of the Complaint as if fully set forth herein.

106.    Plaintiff Beher brings this cause of action individually and on behalf of the Classes and/or a California Subclass against SPS comprising all Class members whose properties subject to the mortgages serviced by SPS are located within the State of California.

107.    California Bus. & Professions Code § 17200 prohibits unlawful, unfair, and deceptive practices to those who lost money or property as a result of such challenged practices, and it provides restitution.

108.    SPS's practice of miscalculating interest rates and charging unreasonable inspection and late fees and/or miscellaneous unnecessary fees, is unlawful, in that it breaches the contracts and mortgage servicer guidelines.  Further, California law forbids the assessment of post-acceleration late fees where, as here, the mortgage notes so forbid.

109.    Defendants' practices are likely to deceive the public.

110. Defendants' practices are unfair, unscrupulous, and injurious to consumers. They are contrary to the public policy of the State of California, and injurious to competition, in that they create an incentive for competitors to pursue similarly unscrupulous and deceptive tactics. The harm to consumers outweighs any utility of Defendants' acts.

111. As a result of the violations asserted in these and all preceding paragraphs, Plaintiff Beher seeks available remedies under the UCL, including restitution, equitable relief, and fees.

112. The following alternative consumer protection statutes provide a basis for redress based on Defendant SPS's unfair, deceptive, and/or misleading acts, practices and conduct in charging late fees post acceleration and inspection fees, despite occupancy and contact with borrowers in other states, including, but not limited to, New Jersey, Pennsylvania, Massachusetts, Vermont, and Illinois:

a. The Massachusetts Regulation of Business Practice and Consumer Protection Act, Mass. Gen. Laws Ann. Ch. 93A;

b. The New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, *et seq*.

c. The Pennsylvania Unfair Trade Practices and Consumer Protection Law, Pa. Stat. Ann. tit. 73, §§ 201-1, *et seq*.;

d. The Illinois Consumer Fraud and Deceptive Business Practices Act, Ill. Comp. Stat. Ann. §§ 505/1 *et seq*.; and

e. The Vermont Consumer Fraud Act, Vt. Stat. Ann. tit. 9, §§ 2451, *et seq*.;

113. Plaintiff Beher and other members of the Classes and/or California Subclass have been injured as a direct and proximate result of Defendants' violations of the state consumer protection laws recited in this Count.

114.    Plaintiff Beher and the other members of the Class have suffered and incurred actual damages as a direct and proximate result of Defendants' violations of the state consumer protection laws recited in this Count.

### SIXTH CAUSE OF ACTION

### VIOLATION OF RESPA, 12 U.S.C. § 2605
### (Against Defendant SPS on Behalf of Class)

115.    Plaintiff Evans repeats and realleges each preceding paragraph of the Complaint as if fully set forth herein.

116.    SPS is a servicer of a federally related mortgage loan, including Plaintiff Evans's mortgage on his residential property located at 26 Cheviot Road, Southampton, New York 11968.

117.    On April 30, 2018, Plaintiff Evans sent SPS a Qualified Written Request ("QWR") pursuant to RESPA 12 U.S.C. § 2605(e)(1)(B), requesting, among other things, that SPS provide him with detailed payment history and an accounting showing, *inter alia*, the total amount of late fees that were charged to his mortgage account as well as an accounting for the "other charges and fees in the amount of $9,506.00." Plaintiff Evans also requested that SPS provide him with the 30-day default notice and date of default. On May 2, 2018, SPS sent Plaintiff Evans an email confirming the SPS relationship manager had received his QWR via email.

118.    In response, SPS wrote to Plaintiff Evans on May 14, 2018, stating, in relevant part, "Late fees are assessed according to the requirements found in your Adjustable Rate Note and state law. If the fee is allowed under the Adjustable Rate Note and state law, a late fee may be assessed if we do not receive your monthly payment prior to the expiration of any applicable grace period. The late fee amount and grace period are outlined on the first page of your

Periodic Statement."  However, SPS knew, or reasonably should have known, and failed to disclose that assessing a late fee post-acceleration is not permitted by Plaintiff's mortgage, a Fannie Mae/Freddie Mac UNIFORM INSTRUMENT, and is not allowed under the laws of New York and other states, including New Jersey, Pennsylvania, Vermont, Massachusetts, Illinois and California.  Moreover, SPS knew and failed to disclose that the miscellaneous late fees charged to Evans's mortgage were not necessary to protect the noteholder's interest in the loan.

119.    Nevertheless, SPS continued to represent that it would impose on  Plaintiff Evans a monthly late fee.  On May 3, 2018, SPS mailed Plaintiff Evans a PAYOFF STATEMENT, which represented $835.89 in "Late Charges Outstanding."

120.    On May 15, 2018, SPS mailed a standard form mortgage statement to Plaintiff Evans, which stated that, "This account has been accelerated, which means that all outstanding amounts are due."  The SPS May 15, 2018 mortgage statement further stated, "If payment is received after June 16, 2018, $75.99 late fee will be charged."

121.    On June 14, 2018, SPS mailed a standard form mortgage statement to Plaintiff Evans, which stated that, "This account has been accelerated, which means that all outstanding amounts are due."  The SPS June 14, 2018 mortgage statement further stated, "If payment is received after July 16, 2018, $75.99 late fee will be charged."

122.    On July 5, 2018, Plaintiff Evans mailed by USPS certified mail and emailed SPS a second QWR, which placed SPS on notice that Plaintiff Evans believed the late fees which had been charged to his mortgage balance, including those imposed post-acceleration were improper. Plaintiff Evans requested that the monthly late fees, including the most recent late fee of $75.99, which SPS represented in the June 14, 2018 mortgage statement would be charged if payment was not received by July 16, 2018, be removed and that SPS refrain from charging monthly late

fees to Plaintiff Evans's mortgage account.  On July 5, 2018, SPS sent Plaintiff Evans an email

confirming the SPS relationship manager had received his QWR via email.

123.    On August 3, 2018, SPS wrote to Plaintiff Evans in response to his July 5, 2018

QWR.  SPS stated it "received your correspondence dated 07/05/2018.  We are in the process of

completing our research of the issue(s) identified in your letter and expect to provide a response

to you within the next thirty (30) days."

124.    On August 10, 2018, Plaintiff Evans wrote to SPS expressing his frustration with

SPS's failure to timely reply and fully-respond to his July 5, 2018 QWR.  Plaintiff Evans

indicated that he would be taking legal action if SPS did not take corrective action concerning

the improper late fees and other issues with his mortgage account.  On August 15, 2018, SPS

sent Plaintiff Evans an email confirming the SPS relationship manager had received his QWR

via email.

125.    On September 13, 2018, forty-one days from August 3, 2018- and more than two

months after receiving Plaintiff's July 5, 2018 QWR which SPS confirmed receipt of by email on

July 5, 2018, SPS wrote to Plaintiff Evans.  SPS stated:  "We have completed a full review of

your inquiry and the account and our response is below.  The issues presented in your letter are

part of an ongoing litigation.  Due to the current litigation, SPS believes that it would be more

appropriate to refrain from providing a detailed response to you at this time.  We encourage you

to continue working with our legal counsel to determine4 the available resolution options."

126.    SPS failed to provide a timely, adequate response or take corrective action in

response to Plaintiff's QWR to correct the improper late fees charged to Plaintiff Evans's

account post-acceleration.  Moreover, the existence of ongoing litigation, which SPS failed to

identify by caption or case number in its September 13, 2018 letter to Plaintiff Evans, is not an

excuse for failure to take corrective action or to provide an adequate response to Plaintiff Evans's QWR concerning the improper late fees charged to his mortgage account post-acceleration.  The remedy proposed by SPS in the September 13, 2018 letter, *i.e.*, that Plaintiff Evans "continue" to work with SPS's lawyers, rings hollow:  Plaintiff Evans has not worked with any SPS lawyers and no name or contact information of said lawyers was provided by SPS in the September 13, 2018 letter.  SPS thus provided an untimely, inadequate, insufficient and misleading explanation of why the information and corrective action requested by Plaintiff Evans was unavailable or could not be obtained by the servicer in violation of 12 U.S.C. § 2605(2)(A)(c)(i).

127.    SPS violated RESPA 12 U.S.C § 2605(e)(2) by failing to provide a substantive response to Plaintiff Evans within 30 days, including failing to "(1) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction"; or (2) "after conducting an investigation, provide the borrower with a written explanation or clarification" that including (i) a statement of the reasons the servicer believes the account is correct and (ii) the contact information of a servicer employee or office that can provide assistance to the borrower."

128.    As a result of SPS's RESPA QWR violations, Plaintiff Evans has suffered damages, including postage and copying fees, uncorrected late fees which have been charged to his mortgage account, incorrect interest rates, and additional out of pocket expenses incurred in meeting with legal counsel as a result of SPS's failure to timely and adequately respond to his QWRs and take the requested corrective action.

129.    Upon information and belief, SPS routinely fails to timely and adequately respond to QWRs from Class members and fails to take corrective action to remove the erroneous and

unlawful charges to mortgage accounts.  Indeed, other home mortgage borrowers have complained to the Consumer Financial Protection Bureau ("CFPB") and elsewhere that SPS fails to timely and adequately respond to QWRs.   See https://getoutofdebt.org/104245/select-portfolio-servicing-inc-cfpb-complaint-4;

https://www.consumeraffairs.com/finance/select_portfolio.html?page=8;

https://www.consumeraffairs.com/finance/select_portfolio.html?page=11;

https://www.bankrank.org/complaint/2734366;

http://yourdailycomplaint.blogspot.com/2015/06/select-portfolio-servicing.html.

130.    Plaintiff Evans and the Class members for whom SPS violated 12 U.S.C § 2605 are entitled to damages, including actual damages and statutory damages, as a result of SPS's pattern and practice of violating RESPA QWR requirements.

## SEVENTH CAUSE OF ACTION
## VIOLATIONS OF THE TRUTH IN LENDING ACT, 15 U.S.C. § 1601, *et seq.*
## (Against Defendants on behalf of the Classes)

131.    Plaintiffs repeat and reallege each preceding paragraph of the Complaint as if fully set forth herein.

132.    Plaintiffs' and the Class Members' mortgages were consumer credit plans secured by their principal dwellings, and were subject to the disclosure requirements of TILA, 15 U.S.C. § 1601, *et seq.*, and all related regulations, commentary, and interpretive guidance promulgated by the Federal Reserve Board.

133.    Defendants are "creditors" as defined by TILA because they owned or serviced Plaintiffs' mortgage and changed the terms of the mortgages so as to create a new mortgage obligation, of which Defendants were the creditors.

134.    Pursuant to TILA, Defendants were required to accurately and fully disclose the terms of the legal obligations between the parties. *See* 12 C.F.R. § 226.17(c).

135.    TILA, Regulation Z, including C.F.R.§10026.41, requires periodic mortgage statements to provide accurate information concerning, *inter alia*, the amount due, an explanation of the amount due, account information, delinquency information and the total payment needed to bring the account current.

136.    By charging unnecessary late fees, inspection fees and inaccurate interest rates, and representing those false charges to Plaintiffs and Class members in the periodic monthly mortgage statements, SPS has violated TILA by failing to provide Plaintiffs with periodic mortgage statements which provide accurate information concerning the amount due.

137.    Plaintiffs and Class Members have been injured and have suffered a monetary loss arising from Defendants' violations of TILA.

138.    As a result of Defendants' TILA violations, Plaintiffs and Class members are entitled to recover actual damages and a penalty of $500,000.00 or 1% of these Defendants' net worth, as provided by 15 U.S.C. § 1640(a)(1)-(2).

139.    Plaintiffs and Class Members are also entitled to recovery of attorneys' fees and costs to be paid by Defendants as provided by 15 U.S.C. § 1640(a)(3).

140.    Plaintiffs, on behalf of themselves and Class members, seek a judgment in their favor against Defendants, awarding actual damages and a penalty of $500,000.00 or 1% of Defendants' net worth, as provided by 15 U.S.C. § 1640(a)(1)-(2), as well as of attorneys' fees and costs to be paid by Defendants as provided by 15 U.S.C. § 1640(a)(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

A.  Certifying the Classes and, in the alternative, the Subclasses pursuant to Federal Rule of Civil Procedure 23, certifying Plaintiffs as the representatives of the Classes and any Subclasses, and designating their counsel as counsel for the Classes and Subclasses;

B.  Actual and compensatory damages for injuries suffered by Plaintiffs and the Classes and Subclasses;

C.  Awarding Plaintiffs and the Classes and Subclasses statutory and exemplary damages where permitted;

D.  Injunctive relief, including, but not limited to, removal of charges for inaccurate and unlawful interest rates, late fees and inspection fees imposed on the mortgage accounts of Plaintiffs and the Classes and Subclasses; and Reasonable attorney's fees and costs of this action and pre-judgment interest under the FDCPA, RESPA, TILA, GBL § 349, the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*; the Massachusetts Regulation of Business Practice and Consumer Protection Act, Mass. Gen. Laws Ann. Ch. 93A; the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, *et seq.*; the Pennsylvania Unfair Trade Practices and Consumer Protection Law, Pa. Stat. Ann. tit. 73, §§ 201-1, *et seq.*; the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill. Comp. Stat. Ann. §§ 505/1 *et seq.*, and the Vermont Consumer Fraud Act, Vt. Stat. Ann. tit. 9, §§ 2451, *et seq.*; and

E.  Such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs, the Classes, and Subclasses demand a trial by jury on all issues so triable

Dated:  June 27, 2019
New York, New York

**GISKAN SOLOTAROFF
& ANDERSON LLP**

/s/ Catherine E. Anderson
_____

Catherine E. Anderson, Esq.
Email: canderson@gslawny.com
Oren Giskan, Esq.
Email: ogiskan@gslawny.com
217 Centre Street, 6th Floor
New York, NY 10013
Tel: (212) 847-8315 x 12

**TUSA P.C**.
Joseph S. Tusa, Esq.
Email:  joseph.tuspc@gmail.com
P.O. Box 566
Southold, NY 11971

-and-

150 Motor Parkway, Suite 401
Hauppauge, NY 11788
Tel: (631) 407-5100

LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
Rachel Geman, Esq.
Email: rgeman@lchb.com
250 Hudson Street, 8th Floor
New York, New York 10013
Tel: (212) 355-9500
Fax: (212) 355-9592

SHANBERG, STAFFORD & BARTZ LLP
Ross E. Shanberg, Esq.
Email: rshanberg@ssbfirm.com
5031 Birch Street
Newport Beach, California 92660
Tel: (800) 519-9810
Fax: (949) 205-7144

*Counsel for Plaintiffs
and Proposed Counsel for the Classes
and Subclasses*