UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
BRET A. EVANS, JUAN A. BEHER, and
JESSICA PEREZ, on behalf of themselves and
all others similarly situated,

                     Plaintiffs,

           - against -

SELECT PORTFOLIO SERVICING, INC.;
U.S. BANK, N.A., as trustee for the J.P Morgan
Acquisition Trust 2006-WMC4 Asset Backed
Pass-Through Certificates, Series 2006-WMC4;
BANK OF AMERICA, N.A.; and Doe
Defendants 1–25,

                   Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
18-CV-5985 (PKC) (SMG)

PAMELA K. CHEN, United States District Judge:

      Plaintiffs Bret A. Evans, Juan A. Beher, and Jessica Perez bring this class action against

Defendants Select Portfolio Servicing, Inc. ("SPS"), U.S. Bank, N.A. ("U.S. Bank"), Bank of

America, N.A. ("BANA"), and Doe Defendants 1–25, alleging breach of contract, violation of the

covenant of good faith and fair dealing, violation of the Fair Debt Collection Practices Act

("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, violation of the Real Estate Settlement Procedures Act

("RESPA"), 12 U.S.C. §§ 2601 *et seq.*, violation of the Truth in Lending Act ("TILA"), 15 U.S.C.

§§ 1601 *et seq.*, and Regulation Z thereunder, 12 C.F.R. § 226, violation of the New York General

Business Law ("GBL") § 349, N.Y. Gen. Bus. Law § 349, and violation of the California Unfair

Competition Law ("UCL"), Cal. Bus. & Prof. §§ 17200 *et seq.*[1]  Defendants SPS and U.S. Bank

---

[1] Plaintiff Beher seeks to dismiss without prejudice all his claims against Defendant
BANA.  (Pls.' BANA Br., Dkt. 44, at 1 n.1.)  Accordingly, the Court considers those claims
withdrawn.

(Dkt. 41) and BANA (Dkt. 42) each move to dismiss Plaintiff's Amended Complaint (Dkt. 24). For the reasons stated below, the Court grants in part and denies in part Defendants' motions to dismiss.

## BACKGROUND

I.    **Factual Allegations[2]**

A.    **Plaintiff Evans**

On September 28, 2006, Plaintiff Evans obtained an adjustable rate residential mortgage loan from non-party WMC Mortgage Corp., which was later transferred to Defendant U.S. Bank, for a residential property located at 26 Cheviot Road, Southampton, NY 11968 (the "Evans Property"). (Amended Complaint ("Am. Compl."), Dkt. 24, ¶¶ 3, 17.) In 2009, the loan was accelerated with all amounts owed becoming due, and a foreclosure action was commenced against Plaintiff Evans by Defendant U.S. Bank in the New York Supreme Court, Suffolk County. (*Id.*) During the foreclosure action, Evans disputed the inclusion of improper fees, which he also challenges in this action. (*Id.* ¶ 3.) The state court granted U.S. Bank's request to enter a judgment of foreclosure and sale on November 28, 2018. (Declaration of Raymond Kim ("Kim Decl.") Ex.

---

[2] The facts recited in this section are based on the allegations in the Amended Complaint, which the Court accepts as true for purposes of Defendants' motions. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). "Although a court's review on a motion to dismiss is typically limited to the four corners of the complaint, a court may also review, among certain other categories, documents incorporated into the complaint by reference and documents integral to the complaint." *Harte v. Ocwen Fin. Corp. ("Hart II")*, No. 13-CV-5410 (MKB) (RER), 2016 WL 3647687, at *2 n.2 (E.D.N.Y. July 1, 2016) (citations omitted). Here, Plaintiffs' claims are predicated on the mortgages, notes, and communications between Plaintiffs and Defendants, and the Amended Complaint cites to those documents extensively. The Court therefore considers those documents, which the parties have provided to the Court in connection with the Amended Complaint and their motion briefing, incorporated into and integral to the Amended Complaint. The Court also takes judicial notice of various state court documents filed in Plaintiff Evans's state foreclosure proceeding. *Nath v. JP Morgan Chase Bank*, No. 15-CV-3937 (KMK), 2016 WL 5791193, at *1 (S.D.N.Y. Sept. 30, 2016) (collecting cases); *see id.* ("The [c]ourt may . . . take judicial notice of the state-court foreclosure proceedings.") (citation omitted)).

B, Dkt. 41-4, at ECF[3] 2–6.)  On June 1, 2013, while the foreclosure proceedings were pending, Defendant SPS became the servicing agent for Plaintiff Evans's loan.  (Am. Compl., Dkt. 24, ¶¶ 3, 17.)

        1.     <u>Late Fees and Qualified Written Requests</u>

On April 12, 2018, Defendant SPS mailed to Plaintiff Evans a standard form mortgage statement stating, "[t]his account has been accelerated, which means that all outstanding amounts are due[,]" and that, "[i]f payment is received after May 16, 2018, [a] $75.99 late fee will be charged."[4]  (*Id.* ¶ 20; Kim Decl. Ex. A, Dkt. 41-3, at ECF 8.)  That mortgage statement indicated that there were "unpaid late charges" of $835.89 and "other charges and fees" of $9,506.  (Am. Compl., Dkt. 24, ¶ 20; Kim Decl. Ex. A, Dkt. 41-3, at ECF 8.)

On April 30, 2018, Plaintiff Evans sent Defendant SPS a Qualified Written Request ("QWR"), requesting, *inter alia*, a detailed payment history, an accounting showing the total amount of late fees and other charges, and the default notice.  (Am. Compl., Dkt. 24, ¶ 21; Kim Decl. Ex. C, Dkt. 41-5.)  Defendant SPS responded to the QWR on May 14, 2018, stating, *inter alia*, that late fees were "assessed according to the requirements found in [Plaintiff Evans's] Adjustable Rate Note and state law."  (Am. Compl., Dkt. 24, ¶ 22; Kim Decl. Ex. D, Dkt. 41-6, at ECF 5.)

On May 3, 2018, Defendant SPS mailed Plaintiff Evans a payoff statement representing $835.89 in "Late Charges Outstanding."  (Am. Compl., Dkt. 24, ¶ 25.)  On May 15 and June 14,

---

      [3] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

      [4] Because the foreclosure action initiated against Evans was still pending in April 2018, his loan continued to be serviced by SPS.  (*See* Kim Decl. Ex. B, Dkt. 41-4, at ECF 2–6 (state court granting judgment of foreclosure and sale in November 2018).)

2018, Defendant SPS mailed similar standard form mortgage statements to Plaintiff Evans that threatened late fees. (*Id.* ¶¶ 26–27; Kim Decl. Ex. A, Dkt. 41-3, at ECF 11–16.)

On July 5, 2018, Plaintiff Evans sent Defendant SPS a second QWR, contesting the late fees. (Am. Compl., Dkt. 24, ¶ 29; Kim Decl. Ex. E, Dkt. 41-7.) On August 3, 2018, Defendant SPS wrote to Plaintiff Evans in response to his July 5, 2018 QWR, stating that the "issues raised have been addressed and resolved through our previous communications," and enclosed its May 14, 2018 response to Evans's first QWR. (Kim Decl. Ex. F, Dkt. 41-8, at ECF 4.)

### 2.   Interest Rates

According to the standard form adjustable rate mortgage agreement, Plaintiff Evans was "charged interest rates that [were] adjusted periodically pursuant to a formula based on the [London Interbank Offered Rate ("LIBOR")] index." (Am. Compl., Dkt. 24, ¶ 36.) "In April 2018, [Defendants] U.S. Bank and/or SPS charged Plaintiff Evans an interest rate of 8.5%, but should have charged a lower interest rate of approximately 8.03% based on LIBOR and the terms of his standard form adjustable rate mortgage." (*Id.* ¶ 38.)

### 3.   Inspection Fees

On May 14, 2018, SPS stated to Plaintiff Evans that, "[a]s a mortgage servicer, SPS may incur fees or costs[] that are necessary to protect the noteholder's interests in a property and are allowed under the terms of your Mortgage documents. These fees or servicer advances appear on your monthly statement as 'other Charges and Fees.'" (Am. Compl., Dkt. 24, ¶ 44.) Plaintiff Evans's mortgage agreement states that the lender will inspect the property "in a reasonable manner and at a reasonable time." (*Id.* ¶ 46.) "[A] standardized fee schedule for Plaintiff Evans's mortgage stated that a property inspection fee would be charged only[] 'if you are in default and we can[]not make contact with you to determine the condition of the property.'" (*Id.* ¶ 45.) Despite being in contact with Plaintiff Evans between June 14, 2013 and December 19, 2017, SPS charged

4

him monthly inspection fees, totaling over $1,200, as reflected in some of the monthly statements provided by Defendants.  (*Id.* ¶ 52; *see, e.g.*, Kim Decl. Ex. A, Dkt. 41-3, at ECF 2, 5.)  These inspection fees included twenty-nine separate charges on June 14, 2013, ranging in amounts of $14, $56, and $60.  (Am. Compl., Dkt. 24, ¶ 52.)

### B.    Plaintiff Beher

On December 12, 2006, Plaintiff Beher obtained an adjustable rate residential mortgage loan from BANA for a residential property located at 18731 Barnhart Avenue, Cupertino, CA 95014 (the "Beher Property").  (Amended Complaint ("Am. Compl."), Dkt. 24, ¶ 4.)  On March 1, 2017, Defendant SPS became the servicing agent for Plaintiff Beher's mortgage loan.  (*Id.*)

#### 1.    Interest Rates

According to the standard form adjustable rate mortgage agreement, Plaintiff Beher was "charged interest rates that [were] adjusted periodically pursuant to a formula based on the LIBOR index."  (Am. Compl., Dkt. 24, ¶ 36.)  "In January 2018, [BANA] and/or SPS charged Plaintiff Beher an interest rate of 5.25%, but should have charged a lower interest rate of approximately 4.25% based on LIBOR and the terms of his standard form adjustable rate mortgage."  (*Id.* ¶ 37.)

### C.    Plaintiff Perez

On or about October 5, 2005, Plaintiff Perez's father, Angel Flores, obtained a residential mortgage loan from Defendant BANA for a residential property located at 135 Nassau Parkway, Oceanside, NY 11572 (the "Perez Property") and placed Plaintiff Perez on the deed.  (Am. Compl., Dkt. 24, ¶ 5.)  In 2013, Angel Flores passed away and Plaintiff Perez became solely responsible for the loan.  (*Id.*)  "At some point in time, SPS became the servicer of the residential mortgage loan for the Perez Property."  (*Id.*)  On or about December 14, 2017, Defendant BANA assigned its interest in the loan to Defendant U.S. Bank.  (*Id.*)

In 2015, Plaintiff Perez missed two or three monthly mortgage payments.  (*Id.* ¶ 32.)  Once she was able to resume making the payments, she contacted Defendant SPS.  (*Id.*)  Defendant SPS instructed Plaintiff Perez to send a certified check for the full amount due to reinstate the loan as current.  (*Id.*)  However, when Plaintiff Perez did so, SPS returned the check and, upon further inquiry, informed her that it was too late to reinstate the loan because foreclosure proceedings had commenced.  (*Id.*)  In subsequent monthly mortgage statements, Defendant SPS represented that it had "completed the first notice or filing required to state a foreclosure."  (*Id.* ¶ 33.)  Since then, it has refused to accept payments from Plaintiff Perez on the mortgage.  (*Id.* ¶ 35.)

### 1.  Late Fees

Since 2015, SPS has represented in monthly mortgage statements sent to Plaintiff Perez that "[i]f payment [of the total amount due] is received after [a certain date], [a] $18.05 late fee will be charged," and has continued to make these representations as recently as April 12, 2019. (*Id.* ¶¶ 33, 34.)

### 2.  Inspection Fees

In at least two monthly mortgage statements dated April 13, 2017 and June 14, 2017, Defendant SPS charged Plaintiff Perez inspection fees in the amount of $15, despite being in constant contact with her since 2015.  (*Id.* ¶ 53.)

## II.  Procedural History

Plaintiff Evans filed this action on October 25, 2018.  (*See generally* Complaint ("Compl."), Dkt. 1.)  Defendants SPS and U.S. Bank were served on October 31, 2018.  (Summons Returns, Dkts. 8, 9.)  On June 27, 2019, an Amended Complaint, *inter alia*, adding Plaintiffs Beher and Perez and Defendant BANA, was filed.  (Dkt. 24.)  Defendant BANA waived service on July 17, 2019.  (Dkt. 32.)  In the Amended Complaint, Plaintiffs asserted the following claims:

(1) Violation of the FDCPA against Defendant SPS by Plaintiffs Evans and Perez for improperly assessed late fees and inspection fees;

(2) Violation of the RESPA against Defendant SPS by Plaintiff Evans for failure to timely and adequately respond to his second QWR;

(3) Violation of the TILA, and Regulation Z thereunder, against all Defendants by all Plaintiffs for failure to provide Plaintiffs with accurate information concerning the amounts due on their mortgages;

(4) Violation of the New York GBL § 349 against all Defendants by Plaintiffs Evans and Perez for deceptive acts and practices, namely, representations that late fees could be charged post-acceleration and that inspection fees would be charged only as necessary;

(5) Violation of the California UCL against all Defendants by Plaintiff Beher for the imposition of unreasonable inspection and late fees;

(6) Breach of contract against all Defendants by all Plaintiffs for improperly assessed late fees, inspection fees, and interest rates; and

(7) Breach of good faith and fair dealing against all Defendants by all Plaintiffs for improperly assessed late fees, inspection fees, and interest rates.

(Am. Compl., Dkt. 24, ¶¶ 74–140.)

All Defendants thereafter moved to dismiss all claims in the Amended Complaint; their motions were fully briefed on October 11, 2019.  (Dkts. 41–48.)

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citing *Twombly*, 550 U.S. at 556).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679 (citation omitted).  In addressing the sufficiency of a complaint, a court must accept the well-pleaded factual allegations contained within the complaint as true, but "need not credit conclusory statements unsupported by assertions of facts[,] or legal conclusions . . . presented as factual allegations."  *See In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 404 (S.D.N.Y. 2001) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Additionally, "a court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice."  *Id.* at 405–06 (collecting cases).  At the pleadings stage, a court must limit its inquiry to the facts alleged in the complaint, the documents attached to the complaint or incorporated therein by reference, and "documents that, while not explicitly incorporated into the complaint, are 'integral' to [the] plaintiff's claims and were relied upon in drafting the complaint."  *Id.* at 404 (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991)).

**DISCUSSION**

I.     **Collateral Estoppel and *Res Judicata***

Defendants argue that all of Plaintiff Evans's claims are barred by collateral estoppel and

*res judicata* because the complaint alleges that "[i]n that foreclosure action, Plaintiff Evans

disputed and continues to dispute inclusion of the improper fees challenged in this action as a part

of any obligation claimed to be owed to Defendants U.S. Bank and/or SPS."  (Defendants SPS's

and U.S. Bank's Motion to Dismiss the First Amended Complaint ("SPS Br."), Dkt. 41, at 10–11

(quoting Am. Compl., Dkt. 24, ¶ 3).)  The Court disagrees.

A.     **Collateral Estoppel**

"The preclusive effect of a state court determination in a subsequent federal action is

determined by the rules of the state where the prior action occurred."  *Blumatte v. Farthing*, 320

F. App'x 68, 70 (2d Cir. 2009) (quoting *Wight v. BankAmerica Corp.*, 219 F.3d 79, 87–88 (2d Cir.

2000)).

> Under New York law, collateral estoppel bars relitigation of an issue when (1) the
> identical issue necessarily was decided in the prior action and is decisive of the
> present action, and (2) the party to be precluded from relitigating the issue had a
> full and fair opportunity to litigate the issue in the prior action.

*Charter Oak Fire Ins. Co. v. Electrolux Home Products, Inc.*, 882 F. Supp. 2d 396, 401 (E.D.N.Y.

2012) (quoting *In re Hyman*, 502 F.3d 61, 65 (2d Cir. 2007)).  "The party seeking the benefit of

collateral estoppel bears the burden of proving the identity of the issues."  *Id.* (quoting *Khandhar*

*v. Elfenbein*, 943 F.2d 244, 247 (2d Cir. 1991)).

In advancing this argument, Defendants rely solely on the allegation in the complaint that

Plaintiff Evans contested the improper fees in the state court foreclosure action, and asserts that

the "same claims were litigated in New York state court and adjudicated against Evans."  (SPS

Br., Dkt. 41, at 10.)  However, the foreclosure action complaint, answer, and state court[5] order provided by Defendants do not contain any reference to improper fees or rates.  (*See* Kim Decl. Ex. B, Dkt. 41-4.)  Plaintiff Evans may well have contested the improper fees in his arguments in the foreclosure action, but there is no indication in the record currently before the Court that the state court reached a decision on any claims raised in, or issues relevant to, this case.  Therefore, with respect to collateral estoppel, Defendants fail to carry their burden of proving that identical issues were decided in the state court foreclosure action.  *See Mercado v. Playa Realty Corp.*, No. 03-CV-3427 (JO), 2005 WL 1594306, at *6 (E.D.N.Y. July 7, 2005) (declining to apply collateral estoppel where "[t]he state court never reached a decision on the issues concerning the alleged violations of RESPA and TILA").

##### B.   *Res Judicata*

"The doctrine of claim preclusion, or *res judicata*, bars the subsequent litigation of any claims that were or could have been raised in a prior action." *Citigroup, Inc. v. Abu Dhabi Inv. Auth.*, 776 F.3d 126, 128 n.1 (2d Cir. 2015) (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)).  The party asserting *res judicata* bears the burden of proving: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Bey v. City of New York*, 454 F. App'x 1, 4–5 (2d Cir. 2011) (summary order) (*quoting Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000)) (citation omitted).

---

[5] The state court order, dated November 28, 2018, resolved various motions filed by the parties during the foreclosure action and issued a judgment of foreclosure and sale in Defendant U.S. Bank's favor against Plaintiff Evans.  (Kim Decl. Ex. B, Dkt. 41-4, at ECF 2–6.)

As explained *supra*, "[t]he preclusive effect of a state court determination in a subsequent federal action is determined by the rules of the state where the prior action occurred." *Blumatte*, 320 F. App'x at 70 (quoting *Wight*, 219 F.3d at 87–88). "The federal [and] New York . . . doctrines of res judicata are virtually identical." *Greenwich Life Settlements, Inc. v. ViaSource Funding Grp., LLC*, 742 F. Supp. 2d 446, 452–53 (S.D.N.Y. 2010) (collecting cases). However, "New York uses [a] transactional approach to res judicata, meaning parties are prevented 'from raising in a subsequent proceeding any claim they *could have* raised in the prior one, where all of the claims arise from the same underlying transaction.'" *Falardo v. N.Y.C. Police Dep't*, 566 F. Supp. 2d 283, 285–86 (S.D.N.Y. 2008) (emphasis added) (quoting *Schulz v. Williams*, 44 F.3d 48, 53 (2d Cir. 1994)). "In determining whether two claims involve the same transaction, New York courts look to whether the two claims are related in time, space, origin, or motivation." *Id.* at 286 (internal quotation and citation omitted).

"[A] party is not free to remain silent in an action in which she is the defendant and then bring a second action seeking relief inconsistent with the judgment in the first action by asserting what is simply a new legal theory." *Harris v. BNC Mortg., Inc.*, 737 F. App'x 573, 575 (2d Cir. 2018) (summary order) (alteration and quotation omitted). However, "New York's permissive counterclaim rule preserves the right of a party to bring a claim that it could have brought as a counterclaim in a prior action, as long as doing so would not impair the rights or interests established in the first action." *Guido v. Wells Fargo Bank, N.A.*, No. 16-CV-1568 (VSB), 2017 WL 5515859, at *3 (S.D.N.Y. Mar. 21, 2017) (internal quotation marks and citation omitted), *aff'd*, 699 F. App'x 54 (2d Cir. 2017); *see also* N.Y. Civ. Prac. L. & R. § 3019(a). At the same time, the mere existence of a foreclosure judgment does not preclude all possible claims a mortgagor may raise in relation to his debt. *See Utreras v. Chicago Title Ins. Co.*, No. 12-CV-

4766 (RRM) (LB), 2013 WL 4700564, at *4 (E.D.N.Y. Sept. 1, 2013) ("[C]ourts in this district have found violations of federal predatory lending statutes to arise out of separate transactions than mortgage defaults, and therefore have declined to find them barred by res judicata." (citations omitted)); *Schuh v. Druckman & Sinel, LLP*, 602 F. Supp. 2d 454, 467 (S.D.N.Y. 2009) (finding an FDCPA claim to be independent from "the foreclosure on the mortgage and the amounts due," because plaintiff "accept[ed] the validity of the judgment and the underlying debt and complain[ed] instead that the [collection] letter makes false statements about the judgment in violation of the FDCPA" (emphasis omitted); *Lopez v. Delta Funding Corp.*, No. 98-CV-7204 (CPS), 2000 WL 36688915, at *9 (E.D.N.Y. June 6, 2000) ("[T]his Court does have the power to grant remedies that have no effect on the state court foreclosure judgment, such as statutory and punitive damages under TILA.").

Here, Defendants have failed to prove for the purposes of *res judicata* that the claims asserted by Plaintiff Evans were adjudicated in the foreclosure action, as his answer in the foreclosure action did not raise the claims asserted here at all.  (*See* Kim Decla. Ex. B, Dkt. 41-4, at ECF 9–13.)  Nor do Defendants argue that Plaintiff Evans could have raised these claims as counterclaims in the foreclosure action.  In fact, even though Plaintiffs preemptively argue that Plaintiff Evans was not obligated to raise these claims in the foreclosure action under New York's permissive counterclaim rule in their opposition brief (*see* Plaintiff's Opposition to Defendants SPS's and U.S. Bank's Motion to Dismiss ("Pls.' SPS Opp."), Dkt. 43, at 32–34), Defendants fail to address the issue in their reply or show that Plaintiff Evans's claims are barred by *res judicata* (*see* Defendants SFS's and U.S. Bank's Reply in Support of their Motion to Dismiss ("SPS Reply"), Dkt. 48, at 1–2).  *See Guido*, 2017 WL 5515859, at *4 (declining to apply *res judicata* where defendant "fail[ed] to address [the] argument [about the permissive counterclaim rule] or

12

the legal authority Plaintiffs cite," and "offer[ed] no basis for why the claims in the [a]mended [c]omplaint are impermissible in light of the fact that New York is a permissive counterclaim jurisdiction"), *aff'd*, 699 F. App'x 54 (2d Cir. 2017).

Furthermore, based on the incomplete state court record submitted by Defendants, the Court cannot determine whether the relief sought by Plaintiff Evans in this action would necessarily be inconsistent with the foreclosure judgment.  The state complaint and answer were filed in 2009, predating the events that give rise to the present claims.  (*See* Kim Decl. Ex. B, Dkt. 41-4, at ECF 6–13.)  In its November 2018 order (*see supra* note 5), the state court declined to consider Plaintiff Evans's arguments for, *inter alia*, lack of personal jurisdiction and lack of personal service, and granted the bank final judgment of foreclosure.  (*See id.* at 1–5.)  Because the order does not reflect whether or not the foreclosure judgment took into account the improper fees that arose after the state action complaint, the Court cannot determine whether granting the relief requested here would "impair the rights or interests established in the [foreclosure] action." *Guido*, 2017 WL 5515859, at *3 (quoting *Henry Modell & Co. v. Minister, Elders & Deacons of Reformed Protestant Dutch Church of N.Y.C.*, 68 N.Y.2d 456, 462 n.2 (1986)); *cf. Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 511 (S.D.N.Y. 2016) (finding plaintiff's claims precluded by *res judicata* because plaintiff challenged the amount due in the foreclosure judgment as improperly calculated).  Therefore, because Defendants do not show or even argue that the present action constitutes an attack on the foreclosure judgment, the Court finds that the claims are not barred by *res judicata*.  *See Harris*, 737 F. App'x at 575; *Dolan v. Select Portfolio Servicing, Inc.*, No. 13-CV-1552 (PKC), 2014 WL 4662247, at *4 (E.D.N.Y. Sept. 18, 2014) ("The exception to New York's permissive counterclaim rule bars a subsequent lawsuit that amounts to 'an attack on a judgment' previously issued by the state court." (citation omitted)); *cf. Lopez*, 2000

WL 36688915, at *9 ("New York's permissive counterclaim rule would [] save from the bar of res judicata those claims for separate or different relief that could have been but were not interposed in the parties' prior action." (internal quotation marks and citation omitted)).[6]

## II.    FDCPA Claims

Plaintiffs Evans and Perez assert FDCPA claims against Defendant SPS on the basis of various statements Defendant SPS made in the mortgage statements.  (Am. Compl., Dkt. 24, ¶¶ 85–90.)  In order to state an FDCPA claim, a plaintiff must plead that

> (1) the plaintiff [is] a consumer who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, [] (2) the defendant collecting the debt is [] a "debt collector," and (3) the defendant has engaged in [an] act or omission in violation of FDCPA requirements.

*Zirogiannis v. Seterus, Inc.*, 221 F. Supp. 3d 292, 302 (E.D.N.Y. 2016) (internal quotation and citation omitted), *aff'd*, 707 F. App'x 724 (2d Cir. 2017).  SPS raises several arguments in support of its motion to dismiss Plaintiffs Evans and Perez's FDCPA claims pursuant to Rule 12(b)(6).

### A.    Statute of Limitations

Claims under the FDCPA must be commenced "within one year from the date on which the violation occurs."  15 U.S.C. § 1692k(d).  "A cause of action accrues under the FDCPA when 'injury occurs' and 'the injured party has the right to bring suit for all of the damages caused by the defendant's acts.'"  *Scott v. Greenberg*, No. 15-CV-5527 (MKB), 2017 WL 1214441, at *5 (E.D.N.Y. Mar. 31, 2017) (ellipsis omitted) (quoting *Benzemann v. Citibank N.A.*, 806 F.3d 98, 101 (2d Cir. 2015)).  "Separate communications that violate the FDCPA can create separate causes

---

[6] Because the Court does not find that Defendants have satisfied their burden with respect to the third element of *res judicata*, the Court does not address Plaintiffs' argument that Defendant SPS was not involved in the foreclosure action or in privity with any party in that action.

of action." *Puglisi v. Debt Recovery Sols., LLC*, No. 08-CV-5024 (JFB) (WDW), 2010 WL 376628, at *3 (E.D.N.Y. Jan. 26, 2010) (citation and alteration omitted).

      1.   <u>Late Fees</u>

Defendant SPS claims that because monthly statements containing the allegedly false information about late fees were sent to Plaintiffs Evans and Perez as early as, respectively, 2016 and 2015, *i.e.*, outside the FDCPA's one-year limitations period, Plaintiffs Evans and Perez's FDCPA claims in this case, which are based on 2018 and 2019 monthly statements, are time-barred. (SPS Br., Dkt. 41, at 18–19.) The Court disagrees.

Here, although Plaintiffs Evans and Perez began receiving monthly statements containing the same allegedly false late-fee information before their respective one-year limitations periods, Defendant SPS continued to send these statements each month thereafter to Plaintiffs Evans and Perez until June 2018 (Evans) and April 2019 (Perez). (Am. Compl., Dkt. 24, ¶¶ 27, 33–34.) Thus, some of the false statements were sent within the statute of limitations period while some were sent outside of it. "In the case of multiple allegations of FDCPA violations, some occurring before and others occurring after the statute of limitations has expired, a court must determine if the non-time-barred allegations are new and independent FDCPA violations." *Scott*, 2017 WL 1214441, at *5 (citations omitted). "The mere fact that Defendant [SPS] may have committed multiple offenses by frequently threatening Plaintiffs does not mean that violations that would otherwise fall within the statute of limitations are time-barred." *Basile v. I.C. Sys.*, Inc., No. 08-CV-42(S) (WMS), 2011 WL 4368510, at *4 (W.D.N.Y. Sept. 19, 2011). Similarly, "[t]he fact that [Defendant SPS] first made similar statements before the one-year period does not bar [P]laintiffs' claims." *Ellis v. Gen. Revenue Corp.*, 274 F.R.D. 53, 58 (D. Conn. 2011). Because "FDCPA causes of action accrue with each communication in violation of the Act[,]" *Ehrich v. RJM Acquisitions LLC*, No. 09-CV-2696 (BMC) (RER), 2009 WL 4545179, at *2 n.4 (E.D.N.Y. Dec.

4, 2009) (citation omitted), Plaintiffs' FDCPA claims in relation to late fees are not time-barred. *See Puglisi*, 2010 WL 376628, at *3 (allowing claims based on "separate, discrete violations" that were within the statute of limitations period to proceed but barring those that occurred outside the period).

Defendant SPS relies on a string of cases suggesting that FDCPA claims based on false representations cannot be revived with each new communication.  This reliance is misguided.  These cases exclusively concern plaintiffs' attempts to restart the statute of limitations based on false representations made later in court proceedings, where the only acts that allegedly violated the FDCPA occurred outside of the limitations period.  *See, e.g.*, *Scott*, 2017 WL 1214441, at *5 (finding plaintiff cannot revive the time-barred FDCPA claim by relying on defendant's pursuit of a default judgment); *Sierra v. Foster*, 48 F. Supp. 2d 393, 395 (S.D.N.Y. 1999) ("This is not a case where defendants have sent a series of threatening letters, each of which violate the FDCPA and only some of which are time-barred."); *Oliver v. U.S. Bancorp*, No. 14-CV-8948 (PKC), 2015 WL 4111908, at *2 (S.D.N.Y. July 8, 2015) ("The continued prosecution of a foreclosure or collection suit is not a continuing violation under the FDCPA-if the same alleged misrepresentation is repeated in court filings, the claim accrues on the date of the initial representation.").  Unlike these cases, each of the late-fee threats Defendant SPS sent to Plaintiffs Evans and Perez could form the basis of a separate FDCPA violation.

### 2.   Inspection Fees

Defendant SPS also argues that Plaintiff Perez's FDCPA claim on the basis of inspection fees is time-barred.  (SPS Br., Dkt. 41, at 19.)  Plaintiff Evans was the only named plaintiff in the original complaint filed on October 25, 2018, and the original complaint did not assert any claim based on inspection fees.  (*See generally* Compl., Dkt. 1.)  Plaintiff Perez was added as a plaintiff and brought her claims on June 27, 2019.  (*See generally* Am. Compl., Dkt. 24.)  She alleges that

Defendant SPS charged her inspections fees in two monthly mortgage statements dated April 13, 2017 and June 14, 2017, both of which were made before the one-year limitations period.  (*Id.* ¶ 53.)[7]  Plaintiffs do not address this issue at all in their opposition brief.  The Amended Complaint alleges merely that "[e]quitable tolling [] applies to Plaintiffs' claims to the extent Defendants[] misrepresented and concealed the true nature of the fees charged to Plaintiffs' and Class members' mortgage accounts."  (Am. Compl., Dkt. 24, ¶ 54.)  "The Second Circuit has not directly addressed whether FDCPA claims can be equitably tolled, [though] district courts have applied the equitable tolling doctrine in FDCPA cases."  *Scott*, 2017 WL 1214441, at *7 (collecting cases); *see also Benzemann v. Houslanger & Assocs., PLLC*, 924 F.3d 73, 82 (2d Cir. 2019) (assuming "for the sake of argument only" that equitable tolling applied to FDCPA claims), *cert. denied*, 140 S. Ct. 82 (2019).  Even assuming that equitable tolling applies, the Court finds that Plaintiffs' generalized and conclusory allegation that Defendants "prevented them from exercising their rights" is insufficient to toll the statute of limitations.  *See Singh v. Wells*, 445 F. App'x 373, 378 (2d Cir. 2011) (summary order); *see also id.* ("Generalized or conclusory allegations of fraudulent concealment are insufficient to toll a statute of limitations." (citation omitted)); *id.* ("To allege fraudulent concealment, a plaintiff must either plausibly allege that the defendant took affirmative steps to prevent the plaintiff's discovery of his claim or injury or that the wrong itself was of such a nature as to be self-concealing." (internal quotation and citation omitted)).  Therefore, the Court finds that Plaintiff Perez's FDCPA claim based on inspection fees is time-barred.

---

[7] Plaintiff Evans also asserts an FDCPA claim based on improperly imposed inspection fees.  Defendant SPS does not argue that Plaintiff Evans's inspection fees claim is time-barred, presumably because, unlike Plaintiff Perez, Plaintiff Evans was charged inspection fees until December 2017.  And unlike regarding the threats of late fees, Defendant SPS does not argue that the charging of inspection fees was a single continuing violation.

### B.     TILA Exemption

Defendant SPS argues "that the content of a borrower's monthly mortgage billing statement issued pursuant to the [TILA] cannot support a[n] FDCPA claim because the statement is not a debt collection communication."  (SPS Br., Dkt. 41, at 19.)  For support, SPS cites to several opinions, including one from the Second Circuit, finding that monthly mortgage statements sent in compliance with the TILA are not attempts to collect a debt and are therefore not subject to the FDCPA.  *See, e.g.*, *Hill v. DLJ Mortg. Cap., Inc.*, No. 15-CV-3083 (SJF) (AYS), 2016 WL 5818540, at *8 (E.D.N.Y. Oct. 5, 2016), *aff'd*, 689 F. App'x 97 (2d Cir. 2017); *Wagoner v. EverHome Mortg. Inc.*, No. 17-CV-8081 (JLL), 2018 WL 2230553, at *4 (D.N.J. May 16, 2018); *Green v. Specialized Loan Servicing LLC*, 766 F. App'x 777, 784 (11th Cir. 2019) (per curiam); *Brown v. Select Portfolio Servicing, Inc.*, No. 16-CV-62999 (WPD), 2017 WL 1157253, at *4 (S.D. Fla. Mar. 24, 2017).  However, those cases did not foreclose the possibility that a monthly statement could also be a debt collection letter.  *See Hill v. DLJ Mortg. Cap., Inc.*, 689 F. App'x 97, 98 (2d Cir. 2017) (summary order) (noting that "[n]one of the statements at issue in this case contain any similar debt-demand language"); *Brown*, 2017 WL 1157253, at *3 ("[P]eriodic statements required by TILA can constitute debt collection activity if the statement contains debt collection language." (internal quotation and citation omitted)); *see also Green*, 766 F. App'x at 784 (finding that "nothing in the language in question from the Mortgage Statement, beyond what is required by TILA, [] rises to the level of being unlawful debt collection language").

The mortgage statements at issue here contain explicit debt collection language.  (*See, e.g.*, Kim Decl. Ex. A, Dkt. 41-3, at ECF 8 (stating that "[t]his is an attempt to collect a debt.  All information obtained will be used for that purpose").)  In support of its argument, Defendant SPS cites to two Southern District of Florida decisions, *Brown*, 2017 WL 1157253, and *Jones v. Select Portfolio Servicing, Inc.*, No. 18-CV-20389 (UU), 2018 WL 2316636 (S.D. Fla. May 2, 2018),

18

involving substantively similar statements to those at issue here.  Both the *Brown* and *Jones* courts found that the statements there were not debt collection letters.  *See Brown*, 2017 WL 1157253, at *4; *Jones*, 2018 WL 2316636, at *4.  The court in *Jones* specifically noted that other district courts have found that "language such as 'this is an attempt to collect a debt' could convert a monthly statement into a debt collection communication in violation of the FDCPA," but ultimately adopted a different approach, requiring debt collection language that is more demanding and severe.  *Jones*, 2018 WL 2316636, at *4.  However, that approach is inconsistent with the approach in this Circuit. For instance, the Second Circuit found in *Carlin v. Davidson Fink LLP* that a letter was connected to debt collection because, "most notably, the letter states: 'PLEASE BE ADVISED THAT DAVIDSON FINK LLP IS A LAW FIRM ACTING AS A DEBT COLLECTOR.  THIS IS AN ATTEMPT TO COLLECT A DEBT.  ANY INFORMATION OBTAINED FROM YOU WILL BE USED FOR THAT PURPOSE.'"  852 F.3d 207, 215 (2d Cir. 2017) (record citation omitted).

Therefore, based on the precedent in this Circuit, because the monthly statements that Defendant SPS sent to Plaintiffs contained explicit debt collection language, the Court finds that these statements may form the basis of an FDCPA claim.  *See Izmirligil v. Select Portfolio Servicing, Inc.*, No. 18-CV-7043 (PKC) (LB), 2020 WL 1941319, at *10 n.25 (E.D.N.Y. Apr. 22, 2020) (finding that the content of monthly mortgage statements containing language such as "this is an attempt to collect a debt" may support an FDCPA claim); *see also Nichols v. BAC Home Loans Servicing LP*, No. 13-CV-224, 2013 WL 5723072, at *8 (N.D.N.Y. Oct. 18, 2013) (construing defendant SPS's monthly mortgage statement as an attempt to collect a debt).

### C. Debt Collector

The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or

due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  The term does not include "any person collecting or attempting to collect any debt owed or due . . . to the extent such activity . . . concerns a debt which was originated by such person."  *Id.* § 1692a(6)(F).  "A mortgage servicer is a 'debt collector' within the meaning of the FDCPA if the mortgage was in default at the time the servicer began servicing the debt."  *Zirogiannis*, 221 F. Supp. 3d at 302 (citation omitted).  "In contrast, where a mortgage servicer obtains a loan that is not in default, it is not a debt collector within the meaning of the FDCPA."  *Id.* (collecting cases).

Defendant SPS argues that Plaintiff Perez has failed to allege that her mortgage was in default when SPS began servicing the debt and that Defendant SPS therefore was a debt collector with respect to her claim.  (SPS Br., Dkt. 41, at 20–21.)  The Court agrees.

The Amended Complaint alleges in only conclusory fashion that Defendant SPS was a debt collector, and does not present any fact that would make that allegation plausible with respect to Plaintiff Perez's mortgage.  (Am. Compl. Dkt. 24, ¶ 86 ("SPS is a debt collector.  SPS regularly collects defaulted debts for others and the debts are in default when SPS first becomes involved with collections.").)  To the contrary, the Amended Complaint suggests that, if anything, Plaintiff Perez's mortgage was not in default when SPS began servicing it.  (*Id.* ¶ 32 (noting that when Plaintiff Perez fell behind on the payments, she contacted SPS and later sent a certified check for the full amount due).)  "Because the Court is unable to conclude that the Amended Complaint contains enough facts to make it plausible that [SPS] began servicing [Plaintiff Perez's mortgage] only after [] default," Plaintiff Perez has failed to plead that Defendant SPS was a debt collector with respect to her FDCPA claims.  *See Weir v. Cenlar FSB*, No. 16-CV-8650 (CS), 2018 WL 3443173, at *8 (S.D.N.Y. July 17, 2018) (internal quotation marks, alterations, and citation omitted) (dismissing the FDCPA claim where plaintiff made only conclusory allegations that

defendant was a debt collector); *Herrera v. Navient Corps.*, No. 19-CV-6583 (AMD) (VMS), 2020 WL 3960507, at *4 (E.D.N.Y. July 13, 2020) (dismissing the FDCPA claim because plaintiff failed to allege that the debt servicer acquired the loan after default and alleged only "in conclusory terms that [defendant] [was] a debt collector because it regularly attempts to collect third-party debts and has engaged in debt collection activities related to outstanding and delinquent student loans on behalf of several owners of federal student loans" (internal quotations and record citation omitted)).

Plaintiff Perez argues that the allegation that Defendant SPS was a debt collector is sufficient to satisfy this element at the pleadings stage. (Pl.'s SPS Opp., Dkt. 43, at 21.) Her only support for this argument is a case where the court found that such allegation was sufficient for a motion to amend under Rule 8(a) of the Federal Rules of Civil Procedure. *See McCrobie v. Palisades Acquisition XVI, LLC*, No. 15-CV-18 (LJV) (MJR), 2019 WL 4023367, at *4 (W.D.N.Y. Aug. 23, 2019). This argument ignores the fact that the Rule 8(a) pleading requirements for a motion to amend are more liberal than the Rule 12(b)(6) standard in connection with a motion to dismiss. *See Obot v. Sallie Mae*, 602 F. App'x 844, 846 (2d Cir. 2015) (summary order). Therefore, the Court finds that Plaintiff Perez has failed to sufficiently allege that Defendant SPS was a debt collector as to her mortgage for purposes of her FDCPA claims.[8]

### D.      Inspection Fees

Defendant SPS asserts that "the alleged wrongful assessment of inspection fees cannot serve as the basis for [an FDCPA] claim" against it because it was entitled "to inspect the property and charge [] for the inspection" under the mortgage agreement, and was required under the 2015

---

[8] Because all of Plaintiff Perez's FDCPA claims are dismissed, the Court does not address Defendants' argument that Perez's loan agreement expressly provided for the charge of inspection fees. (*See* SPS Br., Dkt. 41, at 21.)

Fannie Mae Servicing Guide to inspect a property where a "Quality Right Party Contact" ("QRPC")[9] has not been established.  (SPS Br., Dkt. 41, at 11–13.)  Defendant SPS argues that a QRPC was not established between SPS and Plaintiffs, because "Plaintiffs ha[d] not made a commitment to resolv[ing] their delinquencies," citing generally to the Amended Complaint without specifying any allegation therein.  (*Id.* at 13 (citing Am. Compl., Dkt. 24).)

Contrary to Defendant SPS's representations, Plaintiff Evans's FDCPA claim is based on the allegedly unreasonable manner in which SPS charged inspection fees.  The mortgage agreement permits SPS to "do and pay for whatever is *reasonable or appropriate* to protect [the] Lender's interest in the Property."  (Am. Compl., Dkt. 24, ¶ 47 (emphasis in original).)  Plaintiff Evans alleges that "SPS charged and imposed on [him] monthly inspection fees, and sometimes charged multiple monthly inspection fees and multiple inspections on the same day, despite being in contact with [him] and having knowledge that the property was occupied," which he argues was not reasonable or appropriate.  (*Id.* ¶ 45.)  Whether Defendant SPS's imposition of inspection fees was objectively reasonable is a question of fact best reserved for the jury.  *See Pettitt v. Chiari & Ilecki, LLP*, 419 F. Supp. 3d 627, 636 (W.D.N.Y. 2019) (finding reasonableness under the FDCPA was a question of fact reserved for the jury).  At the pleadings stage, Plaintiff Evans has sufficiently stated his FDCPA claim on the basis of unreasonable inspection fees.

\*     \*     \*

In sum, the Court dismisses all of Plaintiff Perez's FDCPA claims for failure to sufficiently allege that Defendant SPS was a debt collector with respect to her mortgage, and also her inspection-fees claim for being time-barred.  However, Plaintiff Evans's FDCPA claims against

---

[9] According to Defendants, a QRPC is "[a] uniform standard for communicating with the borrower, co-borrower, or a trusted advisor . . . about resolution of the mortgage loan delinquency." (SPS Br., Dkt. 41, at 12 (alteration in original); Kim Decl. Ex. J, Dkt. 41-12, at ECF 25.)

Defendant SPS, based on improperly assessed late fees and inspection fees, will proceed to discovery.

## III.    TILA Claims

Plaintiffs bring TILA claims against all Defendants for "charging unnecessary late fees, inspection fees and inaccurate interest rates, and representing those false charges to Plaintiffs and Class members in the periodic monthly mortgage statements."  (Am. Compl., Dkt. 24, ¶ 136.) Defendants argue that these claims are time-barred.  (SPS Br., Dkt. 41, at 31–32.)

"Private actions based on violations of TILA must be brought 'within one year from the date of the occurrence of the violation.'"  *Latouche v. Wells Fargo Home Mortg. Inc.*, 752 F. App'x 11, 12–13 (2d Cir. 2018) (summary order) (quoting 15 U.S.C. § 1640(e)).  "It is well-settled law that in 'closed-end credit' transactions,[10] like the one[s] at issue [here], the 'date of the occurrence of violation' is no later than the date the plaintiff enters the loan agreement or, possibly, when defendant performs by transmitting the funds to plaintiffs."  *Cardiello v. The Money Store, Inc.*, No. 00-CV-7332 (NRB), 2001 WL 604007, at *3 (S.D.N.Y. June 1, 2001) (footnote omitted) (collecting cases), *aff'd sub nom. Cardiello v. The Money Store*, 29 F. App'x 780 (2d Cir. 2002). "Thus, a plaintiff may not bring suit for damages under TILA, in connection with a mortgage loan, more than one year after entering into that loan."  *Latouche v. Well[s] Fargo Home Mortg. Inc.*, No. 16-CV-1175 (ERK), 2017 WL 8776975, at *6 (E.D.N.Y. Aug. 25, 2017) (citation omitted),

---

[10] "A closed-end credit transaction is one where the finance charge is divided into the term of the loan and incorporated into time payments, and includes a completed loan such as a mortgage or car loan."  *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 286 (S.D.N.Y. 2011) (internal quotation and citation omitted).  "By contrast, an open-end credit transaction is one in which the creditor reasonably contemplates repeated transactions, and provides for a finance charge which may be computed from time to time on the outstanding unpaid balance, such as a credit card."  *Id.* (internal quotation, ellipses, and citation omitted).

*report and recommendation adopted* (Nov. 9, 2017), *aff'd sub nom. Latouche v. Wells Fargo Home Mortg. Inc.*, 752 F. App'x 11 (2d Cir. 2018).

"Equitable tolling applies in rare and exceptional circumstances, where extraordinary circumstances prevented a party from timely performing a required act, and the party acted with reasonable diligence throughout the period she sought to toll." *Latouche*, 752 F. App'x at 13 (internal quotation, ellipses, alterations, and citations omitted). "To qualify for equitable tolling, a plaintiff must show that some extraordinary circumstance, such as fraudulent concealment of the cause of action, stood in the way of bringing suit and that she had been pursuing her rights diligently." *Id.* (citing *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 801 (2d Cir. 2014)). However, "absent some affirmative concealing conduct by the defendant beyond the nondisclosure of information required by TILA, a plaintiff's inability to discover a nondisclosure is not enough to toll the statute." *See McAnaney v. Astoria Fin. Corp.*, No. 04-CV-1101 (JFB) (WDW), 2007 WL 2702348, at *9 (E.D.N.Y. Sept. 12, 2007) (internal quotation, alteration, citation, and footnote omitted)).

Plaintiffs commenced this action on October 25, 2018, more than ten years after they entered into their respective mortgage agreements. (*Compare* Compl., Dkt. 1, *with* Am. Compl., Dkt. 24, ¶¶ 3–5.) Because the mortgages are closed-end credit transactions, the statute of limitations has long expired for Plaintiffs' TILA claims. Plaintiffs argue that the statute of limitations should be measured from the date each mortgage statement was made, relying on a case involving credit cards. (Pls.' SPS Opp., Dkt. 43, at 25 (citing *Schwartz v. HSBC Bank USA, N.A.*, 160 F. Supp. 3d 666, 679–81 (S.D.N.Y. 2016)).) That case is inapposite. "It is well-settled that, in the context of TILA claims, the 'discovery rule' that plaintiffs urge this Court to adopt is applied solely to claims arising from 'open-end' credit transactions, rather than the 'closed-end'

24

transactions at issue here." *McAnaney*, 2007 WL 2702348, at *6 (citations omitted).  Therefore, the "date of the occurrence of violation" in this case was when each Plaintiff "enter[ed] the loan agreement" and the statute of limitations for their TILA claims has thus expired.  *See Cardiello*, 2001 WL 604007, at *3 (collecting cases); *see also McAnaney*, 2007 WL 2702348, at *6 (dismissing plaintiff's TILA claims based on improper fees and finding that the statute of limitations should be measured from when plaintiff entered into the loan agreement).

Plaintiffs also argue that the statute of limitations should be equitably tolled because of "Defendants' conduct in obfuscating and jumbling together various purported charges, and failing to respond to consumers."  (Pls.' SPS Opp., Dkt. 43, at 24.)  Specifically, Plaintiffs rely on Defendant SPS's conduct, including (1) representing to Plaintiff Evans that they "expect[ed] to provide a response to [him] within the next thirty (30) days" about his challenge to the threat of late fees, but failing to do so (Am. Compl., Dkt. 24, ¶ 30), and (2) instructing Plaintiff Perez to send a check for the full amount due, but then refusing to accept the check or any payment from her (*id.* ¶ 32).  (*See* Pls.' SPS Opp., Dkt. 43, at 24.)  The Amended Complaint also alleges broadly that "Defendants[] misrepresented and concealed the true nature of the fees charged to Plaintiffs' and Class members' mortgage accounts."  (Am. Compl., Dkt. 24, ¶ 54.)

Plaintiffs' allegations are insufficient to show fraudulent concealment.  First, the "express requests for and [] collection of the disputed fees [do] not constitute affirmative steps intended to conceal wrongdoing."  *McAnaney*, 2007 WL 2702348, at *10 (emphasis omitted).  Second, Plaintiffs' allegation that Defendants jumbled together the charges and fees (made for the first time in their motion responses) and the Amended Complaint's conclusory allegation that Defendants concealed the true nature of the fees do not show an act of concealment either.  *See Latouche*, 752 F. App'x at 14 ("[Plaintiff]'s conclusory allegations of non-disclosure, such as hidden costs in

documents concerning purchase of the premises, do not amount to the sort of extraordinary circumstances that would warrant tolling." (citation omitted)); *Gorbaty v. Wells Fargo Bank, N.A. ("Gorbaty II")*, No. 10-CV-3291 (NGG) (SMG), 2014 WL 4742509, at *12 (E.D.N.Y. Sept. 23, 2014) (rejecting plaintiff's allegation that defendant provided the documents in "one pile").  Lastly, Defendant SPS's failure to respond to inquiries and refusal to accept payments cannot be reasonably perceived as efforts to prevent Plaintiffs from suing in time.  *See McAnaney*, 2007 WL 2702348, at *9 (stating that plaintiff must plead "efforts by the defendant, above and beyond the wrongdoing upon which the plaintiff's claim is founded, to prevent, by fraud or deception, the plaintiff from suing in time" (internal quotation and citation omitted)).

Accordingly, Plaintiffs' TILA claims are time-barred and therefore dismissed.[11]

## IV.    RESPA Claims

Plaintiff Evans brings a RESPA claim against Defendant SPS based on its alleged failure to provide a timely and adequate response to Evans's second QWR.[12]  Defendant SPS argues that its response was timely and adequate and that Evans failed to allege any damages.  (SPS Br., Dkt. 41, at 28–29.)  Assuming, without deciding, that Plaintiff Evans has adequately alleged Defendant

---

[11]  Because all of Plaintiffs' TILA claims are dismissed, the Court does not address Defendants' argument that the periodic statements did not violate the TILA.

[12]  To the extent that Plaintiff Evans also brings a RESPA claim based on Defendant SPS's response to the first QWR, the Court considers that claim abandoned since Plaintiffs failed to address in their opposition papers SPS's arguments for dismissing it.  (*See* SPS Br., Dkt. 41, at 26–27 (arguing that the first QWR cannot serve as a basis for a RESPA claim because it was sent to the wrong address).)  *See Robinson v. Fischer*, No. 09-CV-8882 (LAK) (AJP), 2010 WL 5376204, at *10 (S.D.N.Y. Dec. 29, 2010) ("Federal courts have the discretion to deem a claim abandoned when a defendant moves to dismiss that claim and the plaintiff fails to address in their opposition papers defendants' arguments for dismissing such a claim." (citation omitted)); *Div. 1181 Amalgamated Transit Union v. R & C Transit, Inc.*, No. 16-CV-2481 (ADS) (ARL), 2018 WL 794572, at *4 (E.D.N.Y. Feb. 7, 2018) (collecting cases).

SPS's insufficient response to his QWR, the Court nonetheless finds that his RESPA claim fails because he has not alleged actual damages.

"To survive a motion to dismiss, a plaintiff bringing a Section 2605 [RESPA] claim must, in addition to showing defendant's failure to comply with the provisions of Section 2605, identify actual damages that he or she sustained as a result of defendant's alleged violation(s)." *Castro v. Bank of N.Y. Mellon for CWalt Inc.*, No. 17-CV-4375 (JS) (GRB), 2018 WL 4158344, at *5 (E.D.N.Y. Aug. 30, 2018) (internal quotation marks and citation omitted); *Dolan v. Select Portfolio Servicing*, No. 03-CV-3285 (PKC) (AKT), 2016 WL 4099109, at *5–6 (E.D.N.Y. Aug. 2, 2016). "[W]hen the claim involves a failure to respond to a QWR, the complaint must offer factual allegations linking the alleged harms to the defendant's failure to timely respond to the QWR." *Id.* (internal quotation marks, alteration, and citation omitted). "[T]he loss alleged must be related to the RESPA violation itself." *Gorbaty v. Wells Fargo Bank, N.A. ("Gorbaty I")*, No. 10-CV-3291 (NGG) (SMG), 2012 WL 1372260, at *5 (E.D.N.Y. Apr. 18, 2012) (internal quotation and citation omitted). "Simply saying that . . . the servicer's failure to respond to a QWR caused damages without specifying how those damages were caused[] is not enough to survive a motion to dismiss." *Bonadio v. PHH Mortg. Corp.*, No. 12-CV-3421 (VB), 2014 WL 522784, at *6 (S.D.N.Y. Jan. 31, 2014) (internal quotation marks, alteration, and citation omitted).

Plaintiff Evans alleges actual damages in the form of "postage and copying fees, uncorrected late fees which have been charged to his mortgage account, incorrect interest rates, and additional out of pocket expenses incurred in meeting with legal counsel as a result of SPS's failure to timely and adequately respond to his QWRs and take the requested corrective action." (Am. Compl., Dkt. 24, ¶ 128.) The Court first notes that the monthly mortgage statements submitted by Defendant SPS show that SPS did not assess any late fees during the time Evans sent

27

his QWR and refused to pay, despite SPS's warning in those statements that "[i]f payment [was] received after [a certain date], $75.99 late fee [would] be charged." (*Compare* Kim Decl. Ex. A, Dkt. 41-3, at ECF 8 (April 12, 2018 statement demanding $835.89 for unpaid late charges), *with id.* at ECF 11 (May 15, 2018 statement demanding the same amount for unpaid late charges), and *id.* at ECF 14 (June 14, 2018 statement demanding the same amount for unpaid late charges).) Therefore, Plaintiff Evans has not shown that he was charged any late fees *as a result of* SPS's failure to adequately respond to his QWR.[13]  Because Evans was not billed for more late fees, he cannot show actual damages on this basis.  As for the allegedly incorrect interest rates, Evans's second QWR requested information related to late fees, payoff statements, and default notice, but did not mention interest rates.  Evans has not explained, and indeed does not defend in his briefing, how SPS's failure to adequately respond to Evans's second QWR proximately caused any incorrect interest rate.  (*See* Pls.' SPS Opp., Dkt. 43, at 28–29.)  Therefore, Plaintiff Evans has failed to show actual damages based on any charges he suffered due to Defendant SPS's allegedly untimely and inadequate response to the second QWR.

Plaintiff Evans also argues that he incurred costs as a result of Defendant SPS's deficient August 3, 2018 response to the second QWR, presumably referring to the "postage and copying fees" and "additional out of pocket expenses incurred in meeting with legal counsel" asserted in the Amended Complaint (Am. Compl., Dkt. 28, ¶ 128).  (Pls.' SPS Opp., Dkt. 43, at 28.)  "Costs incurred after an incomplete or insufficient response are recoverable under RESPA, but costs incurred before the violation occurred, such as the expenses of preparing an initial request for

---

[13] The case Plaintiff Evans relies on is inapposite, because there the defendant misapplied the plaintiff's payment on the loan and the failure to correct the charges caused the plaintiff to be billed more than he owed. *See Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430, 448 (E.D.N.Y. 2013).

information, cannot serve as the basis for actual damages." *Tanasi v. CitiMortgage, Inc.*, 257 F. Supp. 3d 232, 271 (D. Conn. 2017) (internal quotation marks and citation omitted).  Plaintiffs claim in their opposition brief that Evans suffered costs from "preparing and mailing a follow[-]up letter pointing out the deficiencies of SPS's August 3, 2018 response."  (Pls.' SPS Opp., Dkt. 43, at 28.)  Contrary to this representation, the Amended Complaint is devoid of any allegation that Evans prepared and mailed a follow-up letter.  The two paragraphs in the Amended Complaint to which Plaintiff Evans seemingly cites for support are, in fact, unrelated to this issue.  (*See* Pls.' SPS Opp., Dkt. 43, at 28 (citing Am. Compl. ¶¶ 102, 106); Am. Compl., Dkt. 24, ¶¶ 102 (asserting actual harm resulting from GBL violation), 106 (asserting Plaintiff Beher's class representation).)  Therefore, Plaintiff Evans has not alleged actual damages incurred after Defendant SPS's allegedly insufficient response to the second QWR.  To the extent that Evans asserts costs arising from this litigation, the Court notes that "[s]imply having to file suit [cannot] suffice as a harm warranting actual damages [because] [i]f such were the case, every RESPA suit would inherently have a claim for damages built in."  *Gorbaty II*, 2014 WL 4742509, at *6 (E.D.N.Y. Sept. 23, 2014) (internal quotation, citation, and alteration omitted); *see also Jackson v. Caliber Home Loans*, No. 18-CV-4282 (NG) (CLP), 2019 WL 3426240, at *8 (E.D.N.Y. July 30, 2019) (reasoning that if attorneys' fees were considered actual damages, it would render superfluous § 2605(f)(3), a provision granting successful litigants attorneys' fees).

Accordingly, Plaintiff Evans has failed to show any actual damages resulting from Defendant SPS's untimely and inadequate response to his second QWR, and thus cannot state his RESPA claim.[14]

---

[14] Plaintiff Evans also asserts statutory damages.  "Although RESPA permits recovery of both actual and statutory damages, proof of actual damages is mandatory to recover on a § 2605(e) violation, and a § 2605(e) claim cannot stand on statutory damages alone."  *Kelmetis v. Fed. Nat'l*

## V.    Breach of Contract

Plaintiffs assert breach of contract claims against all Defendants on the basis that Defendants charged impermissibly high interest rates, improper late fees, and/or inspection fees. (Am. Compl., Dkt. 24, ¶¶ 74–77.)  Defendants raise several arguments in support of dismissing these claims.  (SPS Br., Dkt. 41, at 5–7.)

"To state a claim for breach of contract under New York law, a complaint must allege four elements: '(1) the existence of an agreement, (2) adequate performance of the contract by plaintiff, (3) breach of the contract by defendant, and (4) damages.'"  *Donnenfeld v. Petro, Inc.*, 333 F. Supp. 3d 208, 218 (E.D.N.Y. 2018) (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004)).

### A.    Nonperformance

"In alleging a claim for breach of contract under New York law, [a] [p]laintiff is required to, at least, generally plead her own performance under the contract."  *Harte II*, 2016 WL 3647687, at *5 (collecting cases).

Defendants argue that Plaintiffs Evans and Perez cannot state a breach of contract claim because they failed to make mortgage payments and thus failed to perform under the mortgage agreements.  (SPS Br., Dkt. 41, at 13–14.)  Plaintiffs Evans and Perez concede that they failed to make certain payments, but argue that Defendants have waived the defense of non-performance. (Pls.' SPS Opp., Dkt. 43, at 5.)  They rely on several out-of-circuit decisions for the proposition that a mortgagor may still bring a breach of contract claim after breaching the mortgage agreement if the lender elects to continue the agreement by commencing a foreclosure action.  (*Id.* at 5–6.)

---

*Mortg. Ass'n*, No. 16-CV-246 (MAD) (CFH), 2017 WL 395120, at *8 (N.D.N.Y. Jan. 27, 2017) (internal quotation marks, alteration, and citation omitted).  Thus, any demand for statutory damages does not save his RESPA claim.

However, this position has not been adopted by New York courts and has, in fact, been rejected in this district. *See Harte v. Ocwen Fin. Corp. ("Harte I")*, No. 13-CV-5410 (MKB) (RER), 2016 WL 11120941, at *8 (E.D.N.Y. Mar. 11, 2016), *report and recommendation adopted in part*, No. 13-CV-5410 (MKB) (RER), 2016 WL 1275045 (E.D.N.Y. Mar. 31, 2016), *and report and recommendation adopted*, No. 13-CV-5410 (MKB) (RER), 2016 WL 3647687 (E.D.N.Y. July 1, 2016); *see also Harte II*, 2016 WL 3647687, at *4 ("[W]ith little guiding authority, the Court relies on the traditional contract framework to govern this dispute." (footnote omitted)).

Additionally, as Defendants correctly point out, all of the out-of-circuit decisions on which Plaintiffs rely involved a different scenario than the present action, and analyzed whether, by force-placing insurance on the mortgaged property, lenders waive the right to rely on borrowers' failure to maintain insurance as a defense to breach of contract claims. (SPS Reply, Dkt. 48, at 3 n.1.) The one case cited by Plaintiffs from this Circuit stands simply for the proposition that "once the non-breaching party elects to continue the contract, he may not at a later time renounce his election and seek to terminate based on the prior breach." *See V.S. Int'l, S.A. v. Boyden World Corp.*, 862 F. Supp. 1188, 1196 (S.D.N.Y. 1994) (citations and alteration omitted). That case did not involve mortgage loans and did not hold that nonperformance may be excused when the lender commenced a foreclosure action. *See id.*

Therefore, Plaintiffs Evans and Perez have failed to allege that they performed under the agreement and cannot state a breach of contract claim. *See Harte II*, 2016 WL 3647687, at *5 (dismissing a borrower's breach of contract claim for nonperformance where the lender initiated a foreclosure action after the borrower failed to make payments); *see also Nichols*, 2013 WL 5723072, at *10 (dismissing a borrower's breach of contract claim for nonperformance where the servicer continued to impose fees after the borrower failed to make payments); *Bravo v.*

*MERSCORP, Inc.*, No. 12-CV-884 (ENV) (LB), 2013 WL 1652325, at \*5 (E.D.N.Y. Apr. 16, 2013) ("Not having fulfilled his obligations [by making mortgage payments] under the contract, plaintiff cannot sustain a claim for breach of contract.").

### B.    Damages

Defendants argue that Plaintiffs have failed to allege damages because they "do not allege that they paid any of the allegedly improper fees or interest."  (SPS Br., Dkt. 41, at 14–15.) Because the Court has found that Plaintiffs Evans and Perez cannot state their breach of contract claims, the Court considers this argument only with respect to Plaintiff Beher's claim.

"[A] plaintiff is not obligated to show, on a motion to dismiss, that it actually sustained damages and need only plead allegations from which damages attributable to defendant's breach might be reasonably inferred[.]"  *Kapsis*, 923 F. Supp. 2d at 450 (internal quotation, alterations, and citation omitted).[15]  Unlike with respect to Plaintiffs Evans and Perez, the Amended Complaint does not state one way or the other whether Plaintiff Beher properly made mortgage payments pursuant to his loan agreement.  Because Plaintiff Beher has pleaded that Defendants imposed

---

[15] The parties have not given the Court any indication as to what law applies to Beher's state law claims.  Defendants cite only to New York cases, whereas Plaintiffs cite to New Jersey, Florida, and California cases.  The Court's discussion in this section is based on New York law, though the Beher Property is located in California.  (*See* Am. Compl., Dkt. 24, ¶ 4.)  Plaintiff Beher's mortgage note, which is attached to the Amended Complaint, does not contain a choice of law provision.  (*See* Beher Note, Dkt. 24-2.)  If California law applies, the Court would nonetheless reach the same result.  Under California law, a plaintiff must plead "appreciable and actual damage" in relation to their breach of contract claim.  *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1028 (N.D. Cal. 2012) (citation omitted).  However, at the pleadings stage, the plaintiff is not required to plead that he has paid the amounts incorrectly charged.  *See Newsom v. BAC Home Loans Servicing, LP*, No. 09-CV-5288 (SBA), 2011 WL 2462315, at \*2 (N.D. Cal. June 21, 2011) (rejecting defendant's argument that plaintiffs failed to allege damages where they "ha[d] not alleged that they actually paid these fees or had their accounts debited in order to pay them" (record citation omitted)); *Esquivel v. Bank of Am., N.A.*, No. 12-CV-2502 (GEB), 2013 WL 5781679, at \*7 (E.D. Cal. Oct. 25, 2013) (finding sufficient the plaintiff's allegation that the defendant imposed fees not owed).

improper interest rates, he has adequately pleaded the damages prong of his breach of contract claim. *See id.* (finding that plaintiff sufficiently pleaded damages where plaintiff alleged that defendant imposed sums that were not owed); *see also Mendez v. Bank of Am. Home Loans Servicing, LP*, 840 F. Supp. 2d 639, 651–53 (E.D.N.Y. 2012) (allowing a breach of contract claim where plaintiff pleaded the assessment of late fees and improper interest).[16]

Accordingly, Plaintiffs Evans's and Perez's breach of contract claims are dismissed. Only Plaintiff Beher's breach of contract claim will proceed to discovery.

**VI.   Breach of Good Faith and Fair Dealing**

Plaintiffs also assert claims of breach of good faith and fair dealing based on the same allegations they allege in support of their breach of contract claims. (Am. Compl., Dkt. 24, ¶¶ 78–84.)

"Under New York law, all contracts contain an implied covenant of good faith and fair dealing." *Perks v. TD Bank, N.A.*, 444 F. Supp. 3d 635, 641 (S.D.N.Y. 2020) (citing *Fishoff v. Coty Inc.*, 634 F.3d 647, 653 (2d Cir. 2011)). "Ordinarily, the covenant of good faith and fair dealing is breached where a party has complied with the literal terms of the contract, but has done so in a way that undermines the purpose of the contract and deprives the other party of the benefit of the bargain." *Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*, 886 N.E.2d 127, 134 (N.Y. 2008) (internal citation omitted). However, "[a] claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the

---

[16] Defendants raise for the first time on reply that Plaintiffs Evans and Beher failed to allege why the interest rate should have been lower. (*See* SPS Reply, Dkt. 48, at 4–5.) "It is well-established that '[a]rguments may not be made for the first time in a reply brief.'" *Zirogiannis*, 221 F. Supp. 3d at 298 (citation omitted), *aff'd*, 707 F. App'x 724 (2d Cir. 2017). In addition, it is the same argument that Defendants made as to Plaintiff Beher's UCL claim. Therefore, the Court rejects the argument for the same reasons stated *infra*.

predicate for breach of covenant of an express provision of the underlying contract." *Perks*, 444 F. Supp. 3d at 641 (internal quotation and citation omitted); *see also Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013) ("New York law does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." (internal quotation, alterations, and citation omitted)). "In most circumstances, claims for breach of contract and the covenant of good faith and fair dealing are duplicative[.]" *Echostar DBS Corp. v. Gemstar–TV Guide Int'l, Inc.*, No. 05-CV-8510 (DAB), 2007 WL 438088, at *7 (S.D.N.Y. Feb. 8, 2007).[17]

Defendants argue that Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing are redundant. (*See* SPS Br., Dkt. 41, at 15–16.) The Court agrees. Plaintiffs' breach of the implied covenant claim relies upon the same facts, *i.e.*, the imposition of late fees, inspection fees, and incorrect interest rates, as their breach of contract claim. (*Compare* Am. Compl., Dkt. 24, ¶ 76 ("Defendants have breached the terms of the standard form mortgage agreements by (i) charging interest rates higher than the rates permitted in the standard form adjustable rate mortgage agreements; (ii) charging late fees after acceleration not permitted by the loan agreements; and/or (iii) charging inspection fees, despite occupancy, which is prohibited by the loan agreements and the Fannie Mae industry guidelines and regulations."), *with id.* ¶ 83

---

[17] "California law is similar." *Sullivan v. Barclays PLC*, No. 13-CV-2811 (PKC), 2017 WL 685570, at *36 (S.D.N.Y. Feb. 21, 2017) (citation omitted); *see Integrated Storage Consulting Servs., Inc. v. NetApp, Inc.*, No. 12-CV-6209 (EJD), 2013 WL 3974537, at *7 (N.D. Cal. July 31, 2013) ("A claim alleging breach of the implied covenant of good faith and fair dealing cannot be based on the same breach as the contract claim." (internal quotation marks and citation omitted)). In light of this similarity and considering that the parties' briefs do not argue California law should apply here, the Court does not separately analyze Plaintiff Beher's claim.

("Defendants breached the implied covenant of good faith and fair dealing . . . by, *inter alia*,[18] (a) charging . . . interest rates higher than those permitted by the standard form adjustable rate mortgage agreements; (b) charging and/or threatening to char[g]e late fees post-acceleration; and [(c)] charging . . . inspection fees once the loan was in default, despite their being in contact with [] Plaintiff Evans, Plaintiff Perez, and other Class members[,] and the occupancy of the property.").)  Moreover, "any damages resulting from a breach of the contract are necessarily the same as any damages resulting from a breach of the implied covenant of good faith and fair dealing," *i.e.*, the assessing of late fees, inspection fees, and additional charges as a result of incorrect interest rates. *Mendez*, 840 F. Supp. 2d at 653; *see also id.* ("A cause of action to recover damages for breach of the implied covenant of good faith and fair dealing cannot be maintained where the alleged breach is intrinsically tied to the damages allegedly resulting from a breach of contract." (citation omitted)).

Plaintiffs argue that their claims for breach of the implied covenant are distinct from their breach of contract claims because the assessment of inspection fees[19] shows that Defendants exercised the discretion afforded by the contracts in bad faith.  (Pls.' SPS Opp., Dkt. 43, at 7–8.)  However, that Plaintiffs may have sufficiently pleaded the elements of breach of the implied covenants does not change the fact that the alleged conduct is also the basis for the breach of contract claims.  Indeed, as Plaintiffs argue in support of their inspection fees claims, the Amended Complaint alleges that the standard form mortgage agreements have express terms that require the lender to inspect the properties "in a reasonable manner" and to "do and pay for whatever is

---

[18] Although this language may suggest that other acts of Defendants breached the implied covenant, Plaintiffs do not allege other grounds for the breach.

[19] Plaintiffs do not similarly assert that the imposition of late fees and incorrect interest rates demonstrates bad faith.  (*See* Pls.' SPS Opp., Dkt. 43, at 7–8.)

reasonable or appropriate" to "protect[] and/or assess[] the value of the [p]roperty." (Am. Compl., Dkt. 24, ¶¶ 46–47; *see* Pls.' SPS Opp., Dkt. 43, at 9–10.) Plaintiffs' claim that Defendants assessed inspection fees in an unreasonable manner is a violation of the express terms of the contract, not the implied covenant. None of the cases cited by Plaintiffs support their argument that their claim for breach of good faith and fair dealing is separate and distinct from their breach of contract claim, simply because they explicitly allege bad faith. Indeed, courts routinely dismiss claims for breach of good faith and fair dealing as redundant, where plaintiffs have alleged bad faith. *See, e.g.*, *Ticheli v. Travelers Ins. Co.*, No. 14-CV-172 (TJM), 2014 WL 12587066, at *3 (N.D.N.Y. Dec. 23, 2014) ("New York courts do not recognize a bad faith claim for a breach of the duties of good faith and fair dealings when such an allegation is, as here, simply duplicative of a breach of contract claim." (internal quotation and citations omitted)); *Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 452 (S.D.N.Y. 2014) (dismissing claim for breach of good faith and fair dealing where plaintiffs alleged that defendants acted in bad faith); *Doyle v. MasterCard Int'l Inc.*, No. 15-CV-9360 (LTS), 2016 WL 9649874, at *2 (S.D.N.Y. Dec. 15, 2016) ("The [plaintiff's] naked assertions of bad faith, unaccompanied by any factual predicate distinct from the breach of contract claim, are insufficient to plead a plausible breach of the implied covenant of good faith and fair dealing." (citation omitted)), *aff'd*, 700 F. App'x 22 (2d Cir. 2017).

Accordingly, the Court dismisses Plaintiffs' claims for breach of good faith and fair dealing because they are redundant of their breach of contract claims.

## VII.   New York GBL § 349

Plaintiffs Evans and Perez assert GBL § 349 claims based on SPS's representations that late fees could be charged post-acceleration and that inspection fees would be charged as necessary.[20]  (Am. Compl., Dkt. 24, ¶¶ 91–104.)

"To state a claim under GBL § 349, a plaintiff must prove three elements: first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act."  *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014) (citation omitted).  "Section 349 on its face applies to virtually all economic activity, and its application has been correspondingly broad."  *McCrobie*, 359 F. Supp. 3d at 254 (internal quotation, alterations, and citation omitted).  "Section 349 is directed at wrongs against the consuming public."  *Id.* (internal quotation marks, alteration, and citation omitted).

As an initial matter, the Court rejects SPS's argument, citing *Spagnola v. Chubb Corp.*, 574 F.3d 64 (2d Cir. 2009), that the loss alleged under GBL § 349 must be independent of the loss caused by the alleged breach of contract.  (SPS Br., Dkt. 41, at 21–22.)  "[I]n a recent case, *Nick's Garage, Inc. v. Progressive Casualty Insurance Co.*, 875 F.3d 107 (2d Cir. 2017), the Second Circuit emphasized that no such broad requirement [to state independent damages for a § 349

---

[20] Even though the heading of the § 349 claims in the Amended Complaint refers to all Defendants, Plaintiffs make allegations and seek redress only against Defendant SPS for violating § 349.  (*See, e.g.*, Am. Compl., Dkt. 24, ¶ 92 ("Plaintiff Evans and Plaintiff Perez bring this cause of action . . . against SPS comprising all Class members whose properties subject to the mortgages serviced by SPS are located within the State of New York."); *id.* ¶ 98 ("SPS's representations were materially false and misleading . . . ."); *id.* ¶ 103 ("Plaintiff[s] . . . are entitled to pursue claims against SPS for damages, statutory damages, treble damages, exemplary damages, injunctive relief, costs and attorney's fees pursuant to GBL §349(h) to redress SPS's violations of GBL §349(a).").)  Therefore, given the absence of any allegations relating to the other Defendants in this cause of action, the Court deems Plaintiffs Evans and Perez as having asserted § 349 claims only against Defendant SPS.

claim] exists under New York law." *Donnenfeld*, 333 F. Supp. 3d at 224.  Where a plaintiff alleges

that he was charged a fee that, but for the defendant's deceptive conduct, he would not have been

charged, or that he incurred expenses that, but for the defendant's deceptive conduct, he would not

have incurred, "[t]his is more akin to damages related to overpaying for an item as a result of a

defendant's deceptive conduct, a type of injury that is sufficient to state a § 349 damages claim."

*Lussoro v. Ocean Fin. Fed. Credit Union*, No. 18-CV-7400 (PKC) (ST), 2020 WL 1941236, at

*10 (E.D.N.Y. Apr. 22, 2020) (citing *Donnenfeld*, 333 F. Supp. 3d at 223).  Therefore, the Court

does not find that Plaintiffs fail to sufficiently allege damages simply because the alleged damages

are the same as those sought in their breach of contract claim.

### A.      Late Fees

Defendant SPS argues that Plaintiffs Evans and Perez were not actually charged with any

late fees and did not suffer any kind of injury.  (SPS Br., Dkt. 41, at 22–23.)  In response, Plaintiffs

claim that they incurred "out of pocket expenses either in an attempt to pay for the fees, or [in]

challeng[ing] the representations that the late fees could be charged post-acceleration."  (Am.

Compl., Dkt. 24, ¶ 101; Pls.' SPS Opp., Dkt. 43, at 14.)

"A plaintiff must prove actual injury to recover under the statute, though not necessarily

pecuniary harm." *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 706

(S.D.N.Y. 2019) (citation and alteration omitted).  "Courts have 'recognize[d] several types of

harm which might be cognizable as a legal injury, such as physical, emotional, pecuniary or

reputational harm, or the impairment of a recognized legal right.'"  *Id.* (citations omitted).

As discussed *supra*, Plaintiffs have not shown that they were actually charged with any late

fees.  In addition, the Amended Complaint is devoid of any allegation that Plaintiff Perez incurred

expenses while attempting to pay the late fees or challenging SPS's threats to impose late fees.

Nor has she alleged any other harm resulting from these efforts.  Thus, the Court finds that Plaintiff

Perez has not shown that she suffered any actual injury as a result of the threats of late fees.  *See Roth v. CitiMortgage Inc.*, No. 12-CV-2446 (SJF) (WDW), 2013 WL 5205775, at \*12 (E.D.N.Y. Sept. 11, 2013) ("Such conclusory allegations are insufficient to state a claim that plaintiff was injured by defendant's conduct." (collecting cases)), *aff'd*, 756 F.3d 178 (2d Cir. 2014); *Lane v. Fein, Such & Crane*, LLP, 767 F. Supp. 2d 382, 391 (E.D.N.Y. 2011) ("[T]he plaintiffs have alleged no facts—aside from their conclusion that they suffered emotional distress—that show that the alleged acts of the defendant caused any quantifiable damage.").  In contrast, Plaintiff Evans sent written requests to Defendant SPS, attempting to challenge the representation.  (Am. Compl., Dkt. 24, ¶¶ 21–27.)  The expenses Plaintiff Evans incurred in this process are recoverable.  *See McCrobie*, 359 F. Supp. 3d at 256 ("Abusive debt collection is 'a harm in itself,' especially when misrepresentations place a consumer in immediate fear that he or she may be about to lose his home or her income." (internal quotations citations omitted)).

Accordingly, the Court dismisses Plaintiff Perez's GBL § 349 claim based on late fees, but Plaintiff Evans's GBL § 349 claim will proceed to discovery.

### B.    Inspection Fees

Defendant SPS argues that the alleged misrepresentation that inspection fees would be charged only as necessary cannot serve as the basis for a GBL § 349 claim and that Plaintiffs Evans and Perez have failed to allege any fact showing that the alleged misrepresentation affected Plaintiffs' actions and caused them injuries.  (SPS Br., Dkt. 41, at 23.)  Plaintiffs do not substantively respond to this argument.  (Pls.' SPS Opp., Dkt. 43, at 15–16.)

"Federal courts have made a distinction between charges that are themselves illegal under state or federal law and those that may be unreasonable under a contract in determining whether a mortgage servicer's actions were deceptive under § 349."  *Weir*, 2018 WL 3443173, at \*14 (citations omitted).  "[C]harging loan servicing fees for mortgage loan defaults are not deceptive

under [] § 349 if there is no express limitation on the appropriate amount of default-related service fees and there is no violation of federal and state statutes." *Silvester v. Selene Fin., LP*, No. 18-CV-2425 (NSR), 2019 WL 1316475, at *10 (S.D.N.Y. Mar. 21, 2019) (collecting cases). Here, as in *Silvester*, "there [is] no express limitation—other than [that] the inspections be 'reasonable' and [P]laintiff[s] ha[ve] not successfully pled any other violation of state or federal law." *Id.* Accordingly, Plaintiffs' § 349 claims based on inspection fees must fail.

## VIII.   California UCL

Plaintiff Beher asserts a claim based on Defendant SPS's application of incorrect interest rates under the California UCL.[21]  (Am. Compl., Dkt. 24, ¶¶ 105–14.)

### A.       Standing

To have standing to sue under the UCL, a private plaintiff must allege he "has suffered injury in fact and has lost money or property." Cal. Bus. & Profs. Code § 17204.  "The 'lost money or property' requirement [] requires a plaintiff to demonstrate 'some form of economic injury' as a result of his transactions with the defendant, although the quantum of lost money or property necessary to show standing is only so much as would suffice to establish [Article III] injury in fact." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013) (internal quotations and citation omitted), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013).

> There are innumerable ways in which economic injury from unfair competition may be shown.  For example, a plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction,

---

[21] Despite the allegation that "SPS's practice of miscalculating interest rates and charging unreasonable inspection and late fees and/or miscellaneous unnecessary fees, is unlawful," Plaintiff Beher, the only named plaintiff asserting claims under UCL, makes only allegations about incorrect interest rates.  (*Compare* Am. Compl., Dkt. 24, ¶ 108, *with id.* ¶¶ 36–37.)  Therefore, the Court deems Plaintiff Beher as bringing his UCL claim only on the basis of miscalculated interest rates.

costing money or property, that would otherwise have been unnecessary.  Further, ineligibility for restitution is not a basis for denying standing under the UCL.

*Robbins v. Hyundai Motor Am.*, No. 14-CV-5 (JLS), 2015 WL 304142, at *10 (C.D. Cal. Jan. 14, 2015) (internal quotations and citation omitted); *see also In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1085 (C.D. Cal. 2015) ("Ordinarily when we say someone has 'lost' money we mean that he has parted, deliberately or otherwise, with some identifiable sum formerly belonging to him or subject to his control; it has passed out of his hands by some means, such as being spent or mislaid." (citation omitted)).

Here, Plaintiff Beher has sufficient standing to assert a UCL claim.  Beher alleges that Defendants charged him incorrect interest rates, but does not allege that he paid any amount.  (*See* Am. Compl., Dkt. 24, ¶ 37.)  Nonetheless, "[a]n increase in [his] debt diminishes the equity []he obtained in [his] home, and thus [he] is financially injured when [his] debt increases.  The fact that [he] failed to make any mortgage payments is not dispositive."  *Vega v. Ocwen Fin. Corp.*, No. 14-CV-4408 (ODW), 2015 WL 1383241, at *8 (C.D. Cal. Mar. 24, 2015).  Courts have found that "[e]ven if a borrower has been charged but has not yet paid for the expense, the debt is an economic injury and lien upon his property sufficient to confer standing to assert a claim under the unfair competition law."  *Lane v. Wells Fargo Bank, N.A.*, No. 12-CV-4026, 2013 WL 3187410, at *11 (N.D. Cal. June 21, 2013); *see also Rubio v. Cap. One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010) ("If she kept her account open, she would have accepted a higher [annual percentage rate] and thus also lost money." (citation omitted)).  Accordingly, at this stage of litigation, Plaintiff Beher has alleged sufficient facts to confer standing in a California UCL claim based on Defendants SPS's alleged miscalculation of interest rates applicable to Beher's mortgage.  *See Craig v. Cap. One, N.A.*, No. 17-CV-3788 (DMG), 2018 WL 5857987, at *10 (C.D. Cal. Apr. 10, 2018) ("Whether the alleged interest and fees were incurred or paid is an issue better reserved for discovery and,

perhaps, a motion for summary judgment.  Taking her factual allegations as true, however, Plaintiff has standing to bring a UCL claim.").

### B.      Failure to State a Claim

Defendants also make several arguments regarding the substance of Plaintiff Beher's UCL claim.  First, Defendants argue that Beher's UCL claim fails to assert the predicate breach of contract claim.  (SPS Br., Dkt. 41, at 24–25.)  Because, as explained above, the Court does not find that Plaintiff Beher has failed to state damages for his breach of contract claim, his UCL claim does not fail for this reason.

Second, Defendants argue that, despite asserting this claim against all Defendants, Plaintiff Beher has not alleged that he suffered any injury as a result of Defendants U.S. Bank's and BANA's conduct.  (*Id.* at 25–26.)  Beher does not defend this point in his response.  (See Pls.' SPS Opp., Dkt. 43, at 18–19.)  Defendants rely on cases where the UCL claim against all defendants was dismissed on the basis that the plaintiff "lump[ed] all of the Defendants together and treat[ed] them as one for the purposes of the UCL claim."  *Okada v. Bank of Am., N.A.*, No. 15-CV-981 (CJC), 2015 WL 5556937, at *5 (C.D. Cal. Sept. 16, 2015) (collecting cases).  Here, rather than "lump[ing]" all of Defendants together, the Amended Complaint identifies only Defendant SPS's conduct as violating the UCL.  (*See, e.g.*, Am. Compl., Dkt. 24, ¶ 106 ("Plaintiff Beher brings this cause of action . . .  against SPS[.]"; *id.* ¶ 108 ("SPS's practice of miscalculating interest rates and charging unreasonable inspection and late fees and/or miscellaneous unnecessary fees, is unlawful[.]").)  Thus, the Court deems Plaintiff Beher as having brought his UCL claim only against Defendant SPS and, to the extent that Plaintiff Beher asserts a UCL claim against Defendants U.S. Bank and BANA, those claims are dismissed.  *See Schulz v. Neovi Data Corp.*, 152 Cal. App. 4th 86, 92 (2007) (dismissing UCL claim against those defendants against whom plaintiff did not make any allegation of unfair competition).

Third, Defendants argue that Plaintiff Beher has failed to allege that SPS miscalculated interest rates.  (SPS Br., Dkt. 41, at 26.)  Plaintiff Beher alleges that, according to the standard form adjustable rate mortgage agreement, he should have been "charged interest rates that [were] adjusted periodically pursuant to a formula based on the LIBOR index," but that, in January 2018, he was charged an interest rate of 5.25%, instead of 4.25% as determined by LIBOR.  (Am. Compl., Dkt. 24, ¶¶ 36–37.)  Citing no case law, Defendants argue that Plaintiff Beher's claim is deficient because he failed to identify the provision of the mortgage contract that governs interest rates, how LIBOR should have affected the interest rate in January 2018, and how his calculation arrived at the rate of 4.25%.  (SPS Br., Dkt. 41, at 26.)  "Although relevant terms of a contract must be adequately described in order to meet Rule 8's pleading requirements, there is no requirement that the contract be attached to the complaint or that the complaint quote each relevant provision verbatim."  *United Specialty Ins. Co. v. Meridian Mgmt. Grp., Inc.*, No. 15-CV-1039 (HSG), 2015 WL 4718998, at *2 (N.D. Cal. Aug. 7, 2015) (collecting cases); *see also Taboola, Inc. v. Ezoic Inc.*, No. 17-CV-9909 (OWS), 2019 WL 465003, at *9 (S.D.N.Y. Feb. 6, 2019) ("[T]he plaintiff [] is not required to attach a copy of the contract or to plead its terms verbatim." (citation and alterations omitted)).  "Claims involving contractual language are generally dismissed for want of detail only where the complaint fails to identify and describe the provisions on which the right to recovery is based."  *United Specialty Ins. Co.*, 2015 WL 4718998, at *2 (citation omitted).  Here, Plaintiff Beher has adequately described the contractual provision he relies on and has sufficiently alleged the basis for his UCL claim.  The issues Defendants contest are better reserved for discovery.

Accordingly, the Court denies Defendants' motion to dismiss Plaintiff Beher's California UCL claim based on allegedly miscalculated interest rates, and it will proceed to discovery.

## CONCLUSION

For the reasons stated above, the Court grants in part and denies in part Defendants' motions to dismiss.  Plaintiffs' claims are dismissed, except for: (1) Plaintiff Evans's FDCPA claims against Defendant SPS based on the imposition of late fees and inspection fees, and his GBL § 349 claim against Defendant SPS based on the imposition of late fees; and (2) Plaintiff Beher's breach of contract claim and UCL claim, both based on the miscalculation of interest rates, against Defendant SPS.  Because Plaintiff Perez and Defendants U.S. Bank and BANA have no remaining claims to which they are a party, they are terminated from this action.[22]  The surviving claims shall proceed to discovery.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 30, 2020
       Brooklyn, New York

---

[22] For this reason, the Court does not address the additional arguments in Defendant BANA's separate motion to dismiss.  (*See* Dkt. 42-1.)