**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRET A. EVANS and LISA DESIMONE, on behalf of themselves and all others similarly situated, | Case No. 18-cv-5985 |
| Plaintiffs, | Pamela K. Chen, USDJ<br>Robert M. Levy, USMJ |
| v. | |
| SELECT PORTFOLIO SERVICING, INC., | **PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION** |
| Defendant. | |

**PLEASE TAKE NOTICE** that, upon the accompanying *Memorandum of Law*, the *Joint Declaration of Catherine E. Anderson, Rachel Geman and Joseph S. Tusa* and the exhibits attached thereto, the argument of counsel, all papers and records on file in this matter, this Court's *Memorandum & Order* dated March 31, 2026 (Dkt. No. 214), and such other matters as the Court may consider, Plaintiffs Lisa DeSimone and Bret Evans respectfully request that the Court enter an Order:

(1)    Certifying the following Classes under Federal Rule of Civil Procedure 23(b)(3):

**Nationwide FDCPA Class:** All persons (1) with a residential mortgage loan securing a property in the United States serviced or subserviced by SPS; (2) with mortgage or deed of trust agreements incorporating standard uniform covenants from Fannie Mae/Freddie Mac or the Federal Housing Administration; (3) whose loans were in default when SPS began servicing or subservicing the loan;[1] and (4) who paid an inspection fee added to their loan by SPS since October 25, 2017: (a) in an amount greater than the cost of the inspections charged by inspection vendors Safeguard and ServiceLink; (b) when the inspection of the property resulting in the inspection fee did not conclude the home was Vacant or Abandoned; and/or (c) when an inspection fee was charged within 30 days of

---

[1] Loans will be deemed in default when SPS began servicing or subservicing when either: (1) SPS assigned the loan a Loan Status code "DELQ" or "FC" when it commenced servicing, or (2) SPS sent letters to the borrowers asserting default within 30-days of SPS commencing servicing.

SPS's Account Notes reflecting contact with or from the borrower (including a promise to pay).

**Nationwide Breach of Contract Class:** All persons (1) with a residential mortgage loan securing a property in the United States serviced or subserviced by SPS; (2) with mortgage or deed of trust instruments incorporating standard uniform covenants from Fannie Mae/Freddie Mac or the Federal Housing Administration; (3) who paid an inspection fee added to their loan by SPS during the applicable statutes of limitations (set forth in Exhibit 35) calculated from November 16, 2022[2] when the loan did not have a SPS loan status code of "DELQ" or "FC":  (a) in an amount greater than the cost of the inspections charged by inspection vendors Safeguard and ServiceLink; (b) when the inspection of the property resulting in the inspection fee did not conclude the home was Vacant or Abandoned; and/or (c) when an inspection fee was charged within 30 days of SPS's Account Notes reflecting contact with or from the borrower (including a promise to pay).

**Alternative Multi-State Good Faith and Fair Dealing Contract Class:**  If the Court does not certify the Nationwide Breach of Contract Class, Plaintiffs seek the following alternative Multi-State Good Faith and Fair Dealing Contract Class: All persons (1) with a residential mortgage loan securing a property in the 'GFFD States' serviced or subserviced by SPS; (2) with mortgage or deed of trust instruments incorporating standard uniform covenants from Fannie Mae/Freddie Mac or the Federal Housing Administration; (3) who paid an inspection fee added to their loan by SPS during the applicable statutes of limitations (set forth in Exhibit 35) calculated from November 16, 2022 when the loan did not have a SPS loan status code of "DELQ" or "FC": (a) in an amount greater than the cost of the inspections charged by inspection vendors Safeguard and ServiceLink; (b) when the inspection of the property resulting in the inspection fee did not conclude the home was Vacant or Abandoned; and/or (c) when an inspection fee was charged within 30 days of SPS's Account Notes reflecting contact with or from the borrower (including a promise to pay).  The GFFD States are New York as well as Arizona, California, Colorado, Connecticut, Delaware, Hawaii, Idaho, Kansas, Maryland, Massachusetts, Minnesota, Mississippi, Missouri, New Jersey, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, Wyoming, and the District of Columbia.

---

[2] November 16, 2022 was calculated by starting with the October 25, 2018 filing date of this action (Dkt. 1) and adding the 1,483 days between the dismissal of Plaintiff Evans' breach of contract claim on September 30, 2020 (Dkt. 51) and the filing of Plaintiff DeSimone's claims on October 22, 2024 (*see* Dkt. 214 at 17).

The Classes exclude (i) SPS's officers, directors, employees, and agents as well as any outside counsel in this litigation; (ii) any judge to whom this case is assigned, along with his or her staff; and (iii) immediate family of any individual excluded by (i) or (ii).

(2)    Designating Plaintiff Lisa DeSimone as Class Representative for all Classes; and

(3)    Appointing Proposed Co-Lead Class Counsel as Co-Lead Class Counsel.

Dated: April 30, 2026                                 Respectfully submitted,

By: */s/ Rachel Geman*

**LIEFF, CABRASER, HEIMANN &**
**  BERNSTEIN, LLP**
Rachel Geman
rgeman@lchb.com
250 Hudson Street, 8th Floor
New York, New York 10013
Tel: (212) 355-9500
Ellie Olson (*pro hac vice*)
eolson@lchb.com
222 2nd Ave S, Suite 1640
Nashville, Tennessee 37201
Tel: (615) 313-9000

**TUSA P.C.**
Joseph S. Tusa
joseph.tuspc@gmail.com
P.O. Box 566
55000 Main Road, 2nd Fl.
Southold, New York 11971
Tel: (631) 407-5100

**GISKAN SOLOTAROFF & ANDERSON LLP**
Catherine E. Anderson
canderson@gslawny.com
Oren Giskan
ogiskan@gslawny.com
 1 Rockefeller Plaza,   8th Floor
New York, New York 10020
Tel: (212) 847-8315

*Proposed Co-Lead Class Counsel*

**SHANBERG STAFFORD LLP**
Ross E. Shanberg
rshanberg@ssbfirm.com
4100 Newport Place, Suite 820
Newport Beach, California 92660
Tel: (949) 205-7515

*Additional Counsel for the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRET A. EVANS and LISA DESIMONE, on behalf of themselves and all others similarly situated, | Case No. 18-cv-5985 |
| Plaintiffs, | Pamela K. Chen, USDJ<br>Robert M. Levy, USMJ |
| v. | |
| SELECT PORTFOLIO SERVICING, INC., | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' AMENDED MOTION FOR CLASS CERTIFICATION** |
| Defendant. | |

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION .................................................................................................. 1

II. STATEMENT OF THE CASE.............................................................................. 2

   A.  Select Portfolio Servicing and its Affiliates........................................... 2

   B.  Uniform Mortgage Agreements and GSE Standards Limit When Inspection Fees May Be Charged ............................................................ 3

   C.  SPS Charges Borrowers Inspection Fees When Not Permitted or Reasonable ................................................................................................ 4

       1.  SPS Upcharges Borrowers Above the Cost of Inspections ......... 4

       2.  SPS's Systems Track Occupancy Status and Automatically Order Inspections of Occupied Properties ............................................. 6

       3.  SPS Charges Inspection Fees When in Contact with Borrowers.............. 8

   D.  Plaintiff DeSimone Was Improperly Charged Inspection Fees............................ 8

III. LEGAL STANDARD............................................................................................ 9

IV. THE PROPOSED CLASSES SATISFY RULE 23............................................. 10

   A.  The Classes Meet the Requirements of Rule 23(a)................................. 10

       1.  The Classes are Sufficiently Numerous....................................... 10

       2.  The Classes Present Common Issues of Law and Fact................ 11

       3.  Plaintiff DeSimone's Claims are Typical. ................................... 11

       4.  Adequacy is Satisfied.................................................................. 12

   B.  Certification Under Rule 23(b)(3) is Appropriate and the Classes are Ascertainable........................................................................................... 13

       1.  Common Questions of Law and Fact Predominate. ................... 14

           a.  Common Factual Questions Predominate for All Claims............ 15

               1.  FDCPA Class  15

               2.  Nationwide Breach of Contract Class and Alternative Multi-State Good Faith and Fair Dealing Contract Class ...................................... 17

           b.  Common Questions of Law Predominate. ................... 20

           c.  Class Members Can Show Damages with Common Evidence........................................................................ 22

           d.  SPS's Defenses are Common, Not Individualized. ................... 23

**TABLE OF CONTENTS**
**(continued)**

**Page**

2.      A Class Action Is Superior to Individual Litigation. ............................... 24

V.      CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Allegra* v. *Luxottica Retail N. Am.*,
  341 F.R.D. 373 (E.D.N.Y. 2022) ...................................................................................12

*Am. Airlines, Inc. v. Wolens*,
  513 U.S. 219 (1995) .......................................................................................................20

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) ................................................................................10, 11, 14, 23

*Brown v. Kelly*,
  609 F.3d 467 (2d Cir. 2010) .........................................................................................11

*In re Cablevision*,
  2014 WL 1330546 .........................................................................................................24

*Cheng v. HSBC Bank USA, N.A.*,
  2024 WL 4835268 (2d Cir. Nov. 20, 2024).................................................................12

*CorpCar Servs. Houston, Ltd. v. Carey Licensing, Inc.*,
  325 A.3d 1235 (D.C. App. 2024)..................................................................................21

*Cox v. Spirit Airlines, Inc.*,
  341 F.R.D. 349 (E.D.N.Y. 2022) ...................................................................................20

*Fleisher v. Phoenix Life Ins. Co.*,
  2013 WL 12224042 (S.D.N.Y. July 12, 2013) ...........................................................19

*Francisco v. NY Tex Care, Inc.*,
  2022 WL 900603 (E.D.N.Y. Mar. 28, 2022)..........................................................10, 13

*Freedom Mortg. Corp. v. Engel*,
  169 N.E.3d 912 (N.Y. Ct. App. 2021) ...........................................................................3

*Ge Dandong v. Pinnacle Performance Ltd.*,
  2013 WL 5658790 (S.D.N.Y. Oct. 17, 2013) .............................................................19

*Globe Surgical Supply v GEICO Ins. Co.*,
  59 A.D.3d 129 (N.Y. 2008) ..........................................................................................19

*Greene v. Gerber Prods. Co*,
  262 F. Supp. 3d 38 (E.D.N.Y. 2017) ............................................................................22

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Handorf v. Transamerica Life Ins. Co.*,
    349 F.R.D. 540 (N.D. Ia. 2025) ...............................................................................20

*Hanks v. Lincoln Life & Annuity Co. of N.Y.*,
    330 F.R.D. 374 (S.D.N.Y. 2019) ..............................................................................20

*Harte v. Ocwen Fin. Corp.*,
    2018 WL 1830811 (E.D.N.Y. Feb. 8, 2018)............................................................15

*In re IndyMac Mortg.-Backed Sec. Litig.*,
    286 F.R.D. 226 (S.D.N.Y. 2012) ..............................................................................14

*Jenack v. Goshen Operations, LLC*,
    222 A.D.3d 36 (N.Y. App. Div. 2023) .....................................................................19

*Kinsey v. New York Times Co.*,
    991 F.3d 171 (2d Cir. 2021)......................................................................................22

*Kolbe v. BAC Home Loans Servicing, LP*,
    738 F.3d 432 (1st Cir. 2013)......................................................................................18

*In re Lincoln Nat'l COI Litig.*,
    620 F. Supp. 3d 230 (E.D. Pa. 2022) ........................................................................20

*Moore v. PaineWebber, Inc.*,
    306 F.3d 1247 (2d Cir. 2002).....................................................................................15

*Moyer v. Columbia State Bank*,
    505 P.3d 26 (Or. Ct. App. 2021)................................................................................21

*In re Petrobras Sec. Litig.*,
    862 F.3d 250 (2d Cir. 2017).......................................................................................13

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)...................................................................................................24

*Price v. L'Oreal USA, Inc.*,
    2018 WL 3869896 (S.D.N.Y. Aug. 15, 2018)...........................................................24

*Pryce v. Progressive Corp.*,
    2022 WL 969740 (E.D.N.Y. Mar. 31, 2022) ............................................................19

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993)........................................................................................12

*Schutter v. Tarena Int'l, Inc.*,
   2024 WL 4118465 (E.D.N.Y. Sept. 9, 2024) ......................................................11, 15

*Sneberger v. Morrison*,
   776 S.E.2d 156 (W.V. 2015).......................................................................................21

*Sosna v. Iowa*,
   419 U.S. 393 (1975)....................................................................................................12

*Steinberg v. Nationwide Mut. Ins. Co.*,
   224 F.R.D. 67 (E.D.N.Y. 2004) ..................................................................................19

*Sykes* v. *Mel Harris & Assocs., LLC*,
   285 F.R.D. 279 (S.D.N.Y. 2012) ...........................................................................13, 25

*Sykes v. Mel S. Harris & Assocs. LLC*,
   780 F.3d 70 (2d Cir. 2015)................................................................................11, 14, 15

*In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*,
   325 F.R.D. 136 (D.S.C. 2018) ....................................................................................20

*Thomas-Lawson, et al. v. Carrington Mortg. Servs., LLC*,
   No. 21-55459 (9th Cir. Feb. 22, 2022 ...........................................................................4

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016)..............................................................................................14, 23

*In re U.S. Foodservice Inc. Pricing Litig.*,
   729 F.3d 108 (2d Cir. 2013)..................................................................14, 19, 23, 24

*UFCW Loc. 1776 v. Eli Lilly & Co.*,
   620 F.3d 121 (2d Cir. 2010)........................................................................................14

*United States v. City of New York*,
   2011 WL 2259640 (E.D.N.Y. June 6, 2011) ..............................................................13

*Volino v. Progressive Cas. Ins. Co.*,
   2023 WL 2532836 (S.D.N.Y. Mar. 16, 2023) ............................................................23

**TABLE OF AUTHORITIES**
(continued)

Page

*Vu v. Diversified Collection Servs., Inc.*,
    293 F.R.D. 343 (E.D.N.Y. 2013) .................................................................................25

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ..................................................................................9, 11, 13

*Wells Fargo Ins. Servs. USA, Inc. v. Link*,
    827 S.E.2d 458 (N.C. 2019) ........................................................................................21

*Wilson v. EverBank, N.A.*,
    77 F.Supp.3d 1202 (S.D. Fl. 2015) ...........................................................................20

**Statutes**

15 U.S.C. § 1691 ................................................................................................................1

15 U.S.C. § 1692e ..............................................................................................................1

15 U.S.C. § 1692f ........................................................................................................1, 15

D.C. Code Ann. § 12-301(a)(7) .......................................................................................21

N.C. Gen. Stat. Ann. § 1-52(1) ........................................................................................21

Or. Rev. Stat. Ann. § 12.080 ............................................................................................21

W. Va. Code Ann. § 55-2-6 ..............................................................................................21

**Court Rules**

Fed. R. Civ. P. 23(a) ...................................................................................................10, 12

Fed. R. Civ. P. 23(b)(3)................................................................................................13, 24

**Treatises**

Restatement (Second) of Conflicts of Law § 187 ...........................................................20

Alba Conte and Herbert B. Newberg,
    *Newberg on Class Actions*, § 5:7 (4th Ed.) (2002) ...................................................24

**TABLE OF AUTHORITIES**
(continued)

**Page**

**Other Authorities**

Julia Patterson Forrester, *Fannie Mae/Freddie Mac Uniform Instruments: The Forgotten Benefit to Homeowners*, 72 Mo. L. Rev. 1077 (2007)................................................3

**Regulations**

24 C.F.R. § 203.17 ............................................................................................................18

24 C.F.R. § 203.377 ..........................................................................................................16

24 C.F.R. § 206.140 ..........................................................................................................16

I.      **INTRODUCTION**

Plaintiffs' amended motion seeks to certify a nationwide FDCPA class and a nationwide breach of contract class (or, in the alternative, a multi-state good faith breach of good faith and fair dealing contract class).  All the claims for every Class member involve a common and systematic factual pattern:  Select Portfolio Servicing, Inc. ("SPS") has charged improper inspection fees to mortgage loans it services.  Since 2017, and pursuant to common policies and procedures, SPS ordered millions of property inspections where: (1) SPS upcharged the inspection fees; (2) SPS knew the homes were occupied and not vacant or abandoned; and/or (3) SPS had recent contact with the Class members. 3/31/26 Mem. & Order (Dkt. 214), at 5, 7, 9 ("3/31 Order" or "Dkt. 214").  In denying summary judgment to SPS, this Court held that the challenged SPS inspection fee policies plausibly violate the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e and 1692f, and breach the terms (in particular Sections 7 & 9) of the same uniform Fannie Mae/Freddie Mac mortgage agreements held by Plaintiff DeSimone and Class members.  Dkt. 214 at 27, 32, 34.

The 3/31 Order provisionally denied class certification and required Plaintiffs to "reformulate the proposed classes and resubmit their motion for class certification" to address the infirmities identified by the Court.  Dkt. 214 at 53.  Plaintiffs redress those infirmities as follows:

| Issue: | Resolution: |
|---|---|
| 1. Upcharge class untethered to legal claims.  (Dkt. 214 at 39, n.31, 50) | • Former Upcharge Class has been eliminated; violations for upcharging inspection fees have been added to the amended Nationwide FDCPA and Breach of Contract Classes. |
| 2.  FDCPA Class not limited to loans in default when SPS began servicing.  (*Id*. at 51). | • The amended Nationwide FDCPA Class is limited to Class members whose loans were in default when SPS began servicing their loans. |

- 1 -

| 3. Classes not limited to uniform mortgage agreements (*Id*. at 49-50, n.37) | • All amended Class definitions are limited to Fannie Mae/Freddie Mac or FHA uniform mortgage agreements. Appendices setting forth the applicable, uniform mortgage terms in all states annexed as Exhibit 34[3]. |
| 4. No choice-of-law and statute of limitations analysis for breach of contract and good faith and fair dealing claims.  (*Id*. at 50-52) | • Section IV.B  below contains a choice-of-law analysis, supported by Exhibits 35 and 36 (state-law surveys). |
| 5. Status of good faith and fair dealing claims.  (*Id*. at 51) | • As described in detail in Section IV.B below, good faith and fair dealing is addressed as part of the contract claim and, in the alternative, as a multi-state class. |

Plaintiffs' amended Motion satisfies Rule 23(a) and (b)(3), and each of the concerns addressed in the Court's March 31, 2026 decision.  The Classes are ascertainable and present predominating issues of fact and law that outweigh  individualized issues, if any.  The Classes should be certified.

## II.    STATEMENT OF THE CASE

### A.    Select Portfolio Servicing and its Affiliates

"Select Portfolio Servicing, Inc. (SPS) is an industry leading mortgage servicer" founded in 1989 and headquartered in Salt Lake City, Utah with an additional office in Florida."[4] SPS services nearly one million residential mortgage loans in exchange for receiving servicing fees from the lenders and investors. SPS represents in standard form letters to borrowers that, "[a]s the mortgage servicer, SPS is authorized to collect all payments and administer the terms of the note and security instrument." *See* ECF No. 162 (Second Am. Class Action Compl.) ¶ 7. That includes ordering property inspections serviced and charging borrowers for those inspections.

---

[3] All Exhibits are annexed to the accompanying *Joint Declaration of Catherine E. Anderson, Rachel Geman and Joseph S. Tusa* ("Joint Decl.").

[4] Select Portfolio Servicing, *About Us*, https://www.spservicing.com/StaticDetails/Aboutus (last accessed Apr. 30, 2026).

- 2 -

SPS works with its sister company Residential RealEstate Review ("RRR"). *See* Ex. 1 (Funk Tr. 10:20-12:19); Ex. 2 (Weinberger Tr. 50:4-7).  SPS and RRR were both wholly-owned subsidiaries of SP Holdings Enterprises Corp., Exs. 3-4, which was acquired by Credit Suisse in 2005 and then by UBS in 2023. SPS and RRR share office space in Salt Lake City, use the same phone system, share the same vendors, and access one-another's computer systems. Ex. 1 (Funk Tr. 13:12-22, 50:12-51:12, 83:6-17); Ex. 5 (Simon Tr. 38:5-39:22, 66:22-67:10). ███████████ ██████████████████████. Ex. 6. Most of RRR's business is provided by SPS. Ex. 5 (Simon Tr. 65:18-66:16). "SPS maintains data on the loans it services," Dkt. 214 at 5, and SPS has centralized servicing software. Ex. 5 (Simon Tr. 14:12-15:10).

**B.       Uniform Mortgage Agreements and GSE Standards Limit When Inspection Fees May Be Charged**

Plaintiffs' amended motion limits the Classes to those borrowers who (like Plaintiff DeSimone) had "uniform" Fannie Mae / Freddie Mac or FHA mortgage agreements. *See* Dkt. 214 at 3 ("Fannie Mae and Freddie Mae are private, government-sponsored enterprises ("GSEs") that dominate the mortgage industry, and they provide uniform mortgage instruments that underlie 'the great majority of home mortgage loans,' and "[e]ven private/conventional loans that are not owned or guaranteed by Fannie Mae or Freddie Mac frequently use the uniform mortgage instruments.") (citations omitted); *Freedom Mortg. Corp. v. Engel*, 169 N.E.3d 912, 918 (N.Y. Ct. App. 2021) ("In the residential mortgage industry, the use of standardized instruments is common, as reflected here where the relevant terms of the operative agreements are alike, facilitating a general discussion of the operation of the [contractual terms] with respect to claims arising from agreements of this nature.") (footnote omitted).[5] Since at least 2001, those Fannie

---

[5] *Accord* Julia Patterson Forrester, *Fannie Mae/Freddie Mac Uniform Mortgage Instruments: The Forgotten Benefit to Homeowners*, 72 Mo. L. Rev. 1077, 1077, 1085-87 (2007) ("Even

Mae / Freddie Mac uniform mortgage agreements used in every State, including Plaintiff DeSimone's mortgage, provide that borrowers may not be charged for inspections by the lender or servicer unless the charges are "reasonable." *See* Ex. 34 at A-1, A-2, A-3 (§§ 7, 9).

SPS applies the same inspection fee standards to all loans it services, based upon GSE servicing guidelines. Ex. 1 (Funk Tr. 41:7-8 ("A. Again, I believe everything is ordered based on the high standard of GSE.")); *see also infra* at Section IV.B (discussing GSE and FHA servicing guidelines). SPS has automated most of its inspection fee standards for the loans its services.

### C. SPS Charges Borrowers Inspection Fees When Not Permitted or Reasonable

#### 1. SPS Upcharges Borrowers Above the Cost of Inspections

SPS does not itself perform property inspections. Rather, the inspection orders are routed from SPS to its affiliate RRR, and then performed by two inspection vendors, Safeguard and ServiceLink. Ex. 5 (Simon Tr. 37:13-38:4). The price lists for inspections produced by Safeguard and ServiceLink show that, during the class periods, each charged $12 for most inspections:



Ex. 7.

---

lenders who do not contemplate selling their loans to the GSEs typically use the forms, which have become the standard for loans sold on the secondary market…. By some estimates, more than ninety percent of residential mortgage loans are documented on Fannie Mae/Freddie Mac uniform mortgage instruments[.]") (footnotes omitted); Br. of *Amici Curiae* Mortg. Bankers Ass'n, *et a*l. in Supp. of Appellee at 8, *Thomas-Lawson, et al. v. Carrington Mortg. Servs., LLC*, No. 21-55459 (9th Cir. Feb. 22, 2022), Dkt. No. 41 (citing the "pervasive use of the Fannie Mae/Freddie Mac uniform instruments in originating conventional mortgages."); Ex. 33 (4/11/22 letter of Mortgage Bankers Association to CFPB): "Most mortgage agreements, are governed by uniform instruments drafted by government sponsored entities or government agencies that purchase or insure mortgages." (footnote omitted).



Ex. 8; *accord* Dkt. 214 at 8 ("Safeguard and ServiceLink charge $12 for an exterior inspection of a property securing a conventional mortgage.").

SPS tracked of the prices it was charged for property inspections in an *Inspection Knowledge Guide* prepared and periodically updated by its Real Estate Owned ("REO") Division. The pricing schedule in the *Inspection Knowledge Guides* matches the prices charged by Safeguard and ServiceLink:



Ex. 9 (2019 *Inspection Knowledge Guide*). By 2024, the cost for most inspections remained the same:



Ex. 10 (2024 *Inspection Knowledge Guide*). SPS employee Rachel Funk prepared the *Inspection Knowledge Guides*. Ex. 1 (Funk Tr. 91:6-17). She testified that the prices listed in the *Inspection Knowledge Guides* are "the cost to SPS" for property inspections it ordered through RRR and performed by Safeguard and ServiceLink. Dkt. 214 at 9; *see also* Ex. 1 (Funk Tr. 105:11-25).

According to SPS's loan data, of the over 2.8 million inspection fees charged to borrowers since October 2017, virtually all borrowers (above 99%) were charged more than $12. Joint Decl. ¶32. Included among those are two $18.00 inspection fees charged to Plaintiff DeSimone, for which Safeguard or ServiceLink charged $12.

## 2. SPS's Systems Track Occupancy Status and Automatically Order Inspections of Occupied Properties

*First,* SPS knows the occupancy status of all loans that are inspected based on the inspection reports imported into its systems before it bills borrowers. Ex. 1 (Funk Tr. 76:19-77:18); *accord* Ex. 14 (9/10/24 Pulsipher Tr. 6:8-1. SPS also maintains an *Occupancy Status Report* listing the occupancy status for all loans. Ex. 1 (Funk Tr. 74:17-23).

*Second,* SPS automatically orders inspection fees using a computerized formula that electronically searches its loan databases daily for loans that match a defined criteria, and then automatically sends the inspection orders to SPS's inspection vendors. Ex. 1 (Funk Tr. 15:4-16:24). Inspections are re-ordered monthly, generating new inspections and inspection fees. *Id*. (20:5-8). All inspections of every type—regardless of who hired SPS to service the loan—are automatically ordered by SPS based on the same computerized formula that has been used throughout the Class periods. *Id*. (20:5-8 and 54:20-23); Ex. 12.  The REO policy manual explains the automatic ordering criteria. Ex. 13 (§§ 14.10, 14.11).

*Third,* "SPS states that its policy on property inspections is to order them for loans that are delinquent, regardless of whether the property is occupied.  Even when prior inspections have

- 6 -

confirmed occupancy, SPS states that it continues to order inspections ....” Dkt. 214 at 5; *accord*

Ex. 14 (9/10/24 Pulsipher Tr. 12:1-9; Ex. 1 (Funk Tr. 49:18-22). For all Class members, SPS

admittedly “‘follows its policies and procedures with respect to ... assessing inspection fees.’”

Dkt. 214 at 9 (quoting SPS 56.1 statement; ellipsis in original).

But, according to SPS’s policy manual (and GSE and FHA servicing guidelines),



. Ex. 13 (§§ 14.10, 14.11). Specifically, the SPS policy manual further

acknowledges that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ .

Ex. 13 (§ 14.9). SPS’s common practice is the opposite of this.

SPS also uses a common, automated process to determine who should *pay* for the

inspection between the borrower and the “investor” that hired SPS to service the loan. Ex. 15

(12/4/24 Pulsipher Tr. 94:6-18, 121:20-25). The criteria used by that formula is explained in

SPS’s Corporate Advance Control policy manual. Ex. 16 (§ 4.2). The formula applying the

allocation rules has not changed during the class periods. Ex. 15 (12/4/24 Pulsipher Tr. 97:8-12).

Thus, contrary to GSE and FHA servicing guidelines, SPS’s formula does *not* limit the borrower

from being charged for property inspections to instances when the property is vacant. In fact, the

formula does not consider the occupancy status at all.

Borrowers are charged for property inspections when SPS knows the property is occupied

and not vacant or abandoned. According to SPS’s loan data, over 92% of all property

inspections were ordered for properties SPS classified as not vacant and over 86% were

conducted on “Occupied” properties. Joint Decl. ¶32.

### 3. SPS Charges Inspection Fees When in Contact with Borrowers

"SPS maintains data on its contacts with borrowers, and assigns 'contact codes' to different types of contacts." Dkt. 214 at 7; Ex. 31. SPS's policies specify that borrowers should not be charged for property inspections if SPS has "contact" with them within the preceding 30 days. Ex. 13 (§§ 14.10, 14.11); Dkt. 214 at 9 (According to SPS's policy manual "inspection fees should *not* be charged to the borrower ... when there has been 'contact in the last thirty (30 days.'"). The same is true once a borrower has agreed to make an electronic payment. *Id*. But, even though the policy tracks the GSE servicing guidelines, SPS often fails to adhere to its own policy. Even when SPS's account notes reflect borrower "contact" within 30 days, borrowers still are routinely charged inspection fees. SPS's loan data shows that nearly 800,000 inspections were ordered even though a borrower had "contact" with SPS within 30 days. Joint Decl. ¶32. Many were wrongly charged to borrowers, including Plaintiff DeSimone. Adding to the problem is that many types of borrower contacts with SPS are not coded as "contacts" and thus ignored by the SPS's fee allocation formula. Ex. 15 (12/4/24 Pulsipher Tr. 127:1-128:15).[6]

### D. Plaintiff DeSimone Was Improperly Charged Inspection Fees

Plaintiff DeSimone is the owner of a home in Niagara, New York. Ex. 17 (DeSimone Tr. 61:1-23). When SPS began servicing her loan in September 2014, it sent her a letter stating that her loan was in default. Exs. 18-19. Dkt. 214 at 11 (confirming SPS's admission that,

---

[6] While SPS's policy manual refers to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ SPS's systems only track "contacts." *Compare* Ex. 13 (§§ 14.10, 14.11) *with* Ex. 15 (12/4/24 Pulsipher Tr. 73:1-15); *accord* Dkt. 214 at 7 ("SPS does not have a specific contact code for contacts it considers RPCs or QRPCs.") But SPS underreports its contacts with borrowers, omitting to record as "contacts" in account records many types of contact with a borrower, including communications with SPS via its website (including live communications), contacts where borrowers send SPS materials requested by SPS, personal contacts made with borrowers during property inspections ordered by SPS, and contacts with borrowers by process servicers. Ex. 1 (Funk Tr. 94:20–95:17).

- 8 -

"DeSimone's mortgage 'was in default when SPS became the servicing agent.'"). In October 2019, when evaluating Ms. DeSimone's loan for a modification, SPS confirmed her "Loan Status" as "Curr[ent]." Ex. 20. According to SPS's *Account History* for her loan, DeSimone's Loan Status was indicated as Current ▓▓▓ times (and never in any other Loan Status except ▓▓▓▓▓▓ when SPS began servicing in 2014). Ex. 21; *accord*. Exs. 20, 22. Her final SPS loan statement in April 2023 showed that her loan was current, which SPS has confirmed. Exs. 23 and 24; *accord* Dkt. 214 at 11, 13, 23-24 ("DeSimone has put forth sufficient evidence such that a reasonable jury could conclude she substantially performed under the mortgage agreement.").

Ms. DeSimone paid two inspection fees that SPS added to her loan on December 3, 2020 ($18.00) and October 28, 2021 ($18.00). Exs. 25-26; Dkt. 214 at 12 ("DeSimone paid $18 for each inspection fee."). Since Ms. DeSimone's loan was a "Conventional" or "CV" loan, Ex. 11, the cost to SPS for both inspections was $12.00. Exs. 25-26. SPS knew Ms. DeSimone occupied the home each time it charged her. Both inspection reports are dated *before* SPS charged her the inspection fees and confirmed her home was "Occupied." Exs. 29-30; Dkt. 214 at 12, 13. It is also beyond dispute that SPS had "contact" with Ms. DeSimone within 30 days of charging her the December 2, 2020 inspection fee, wherein she made a promise to pay as reflected in SPS's own common and centralized systems. Ex. 20; Dkt. 214 at 12-13. SPS also had contact with Ms. DeSimone within 30 days of charging her the October 28, 2021 inspection fee on October 4, 2021, when she called SPS and then made a payment. *Id*.

III.    **LEGAL STANDARD**

A court's class certification analysis must be "rigorous" and may "entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). However, Rule 23 "requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."

- 9 -

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459 (2013). The Court's task is "not to adjudicate the case; rather, it is to select the method best suited to adjudication of the controversy fairly and efficiently." *Id*. at 460 (cleaned up); *see also Francisco v. NY Tex Care, Inc.*, 2022 WL 900603, at *3 (E.D.N.Y. Mar. 28, 2022) (Chen, J.) ("Rule 23 does not grant courts 'license to engage in free-ranging merits inquiries at the certification stage' and such inquiries may be considered 'only to the extent . . . they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'") "[T]he Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction, and it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." *Francisco*, 2022 WL 900603, at *4.

## IV.    THE PROPOSED CLASSES SATISFY RULE 23

### A.    The Classes Meet the Requirements of Rule 23(a).

In determining whether class certification is appropriate, the Court first must confirm that Plaintiffs have satisfied the Rule 23(a) requirements of numerosity, commonality, typicality and adequacy. Fed. R. Civ. P. 23(a). All of these are met in this action. *See* Dkt. 214 at 40 ("[T]he Court concludes that the proposed classes likely satisfy the requirements of Rule 23(a)").

#### 1.    The Classes are Sufficiently Numerous.

Rule 23(a)(1) requires Plaintiffs show that "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). SPS charged over 2.8 million inspection fees to over six hundred thousand unique borrowers since just October 2017, the majority of whom SPS knew to occupy the properties that were inspected. *See* Joint Decl. ¶32; Dkt. 214 at 40 ("Plaintiffs have…demonstrated that the proposed classes likely meet the numerosity requirement of Rule 23(a)(1)").

### 2. The Classes Present Common Issues of Law and Fact.

Rule 23(a)(2) requires common questions of law or fact. Although Class members' claims need not be identical, *Amgen*, 568 U.S. at 459, they must share common questions of fact or law, such that "a class-wide proceeding [can] generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (citation omitted).  The Classes here are "likely to satisfy commonality, so long as all class members have uniform mortgage agreements, and this limitation is made part of the class definition…." Dkt. 214 at 41-42. In Plaintiffs' amended motion, all Class definitions have been defined to satisfy the Court's direction.  In addition, Plaintiffs demonstrate that Sections 7 and 9 in the Fannie Mae / Freddie Mac and FHA agreements are substantially the same nationwide.  Ex. 34 at A-1, A-2.

Thus, "the 'key issue' is class-wide: whether SPS's standard policy of charging a set fee for property inspections, ordered pursuant to a standardized formula, violated the borrowers' uniform mortgage terms, given certain common circumstances (such as the borrowers being in recent contact with SPS or making a recent payment to SPS. That issue can and should be resolved on a class-wide basis."  Dkt. 214 at 43; *see generally Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 84 (2d Cir. 2015) (commonality satisfied when injuries based on a uniform practice); *Schutter v. Tarena Int'l, Inc.*, 2024 WL 4118465, at *4 (E.D.N.Y. Sept. 9, 2024) (Chen. J.) (quoting *Dukes*, 564 U.S. at 359) ("'Even a single common question' is enough").

### 3. Plaintiff DeSimone's Claims are Typical.

Rule 23(a)(3) requires that the claims of the representative plaintiff are typical of those of the Classes. The typicality rule is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010) (citation omitted). "[M]inor variations in the fact patterns underlying individual claims" do not defeat typicality

- 11 -

when the defendant directs "the same unlawful conduct" at the named plaintiff and the class. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993) (citations omitted). Like other Class members, Plaintiff DeSimone was charged and paid inspection fees above the cost of the inspections, when SPS knew she occupied her home, and within 30 days of being in contact with SPS, including promising to make (and making) mortgage payments.[7] In addition, her contract claims arise from a Fannie Mae/Freddie Mac agreement that is typical of Class members' agreements. *Cheng v. HSBC Bank USA, N.A.*, 2024 WL 4835268, at *2 (2d Cir. Nov. 20, 2024).

### 4.    Adequacy is Satisfied.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequate representation requires showing that the Class representative has an interest to pursue the litigation and possesses no interests "antagonistic" to Class members' interests. *Cheng*, 2024 WL 4835268, at *1 (citation omitted); *accord Sosna v. Iowa*, 419 U.S. 393, 403 (1975). Plaintiff DeSimone demonstrated "familiarity with the complaint, has been in contact with counsel, possesses a general understanding of the basis for this lawsuit and of [her] role[] as a class representative, and has demonstrated and professed a willingness to prosecute this case." *Allegra* v. *Luxottica Retail N. Am.*, 341 F.R.D. 373, 400 (E.D.N.Y. 2022); Ex. 17 (DeSimone Tr. 5:7-14, 9:17-10:3, 20:2-8, 42:6:43:9, 47:10-20). She further expressed a desire to benefit the Classes through this action. *Id*. (46:20-47:2, 60:1-12).  "[T]he Court is not aware of any ways in which DeSimone's 'interests are antagonistic to the interest of other members of the class,....'".  In addition, the Court has determined that

---

[7]  Dkt. 214 at 44-45 ("[T]he Court believes that the questions underlying DeSimone's claims are likely to be typical of the questions that underlie the claims of the other proposed class members… [and] The other class members' injuries apparently stem from the same course of conduct as DeSimone's, ....").

Catherine E. Anderson, Rachel Geman, and Joseph S. Tusa and their firms (collectively, "Proposed Class Counsel") are adequate for purposes of Rule 23(g). Dkt. 214 at 47.

### B. Certification Under Rule 23(b)(3) is Appropriate and the Classes are Ascertainable.[8]

In response to the Court's direction in the 3/31 Order, Plaintiffs have amended the proposed Class definitions, provide an in-depth choice of law analyses, and annex surveys of the (a) breach of contract elements and statutes of limitations; (b) good faith and fair dealing adoption and application; (c) the applicable Fannie Mae/Freddie Mac uniform covenants. Plaintiffs move for certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual class members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Dukes*, 564 U.S. at 362 (quoting FED. R. CIV. P. 23(b)(3)).

Class certification also requires that "the identities of the class members are reasonably ascertainable by reference to objective criteria." *See United States v. City of New York*, 2011 WL 2259640, at *3 (E.D.N.Y. June 6, 2011) (citations omitted). This is not a "freestanding administrative feasibility requirement[,]" but rather "a modest threshold" requiring only that the class must be "defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec. Litig.*, 862 F.3d 250, 264, 269 (2d Cir. 2017); *see also Hasemann*, 331 F.R.D. at 271; *Francisco*, 2022 WL 900603, at *10. "[A]lthough the membership of the class must be ascertainable at some point in the case, it does not necessarily have to be determined prior to class certification." *Sykes* v. *Mel Harris & Assocs., LLC,* 285 F.R.D. 279, 287 (S.D.N.Y. 2012) (cleaned up).

---

[8] Plaintiffs address ascertainability and predominance in tandem, which comports with the Court's treatment of these criteria. *See* Dkt. 214 at 47-52.

### 1.    Common Questions of Law and Fact Predominate.

"The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (cleaned up). Predominance is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) (quoting *UFCW Loc. 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d Cir. 2010)). Predominance "does *not* require a plaintiff seeking class certification to prove that each elemen[t] of [her] claim [is] susceptible to classwide proof.'" *Sykes,* 780 F.3d at 81 (quoting *Amgen*, 568 U.S. at 469); *see also In re IndyMac Mortg.-Backed Sec. Litig.*, 286 F.R.D. 226, 236 (S.D.N.Y. 2012) (Predominance "does not require a plaintiff to show that there are no individual issues.") (citation omitted).

Predominance is "readily met" in consumer cases where, as here, common questions of law and fact center upon the defendant's course of conduct. *Hasemann*, 331 F.R.D. at 273.The core issues that will drive resolution of Class members' claims—whether SPS upcharged inspection fees, whether SPS automatically charged borrowers for the inspection of occupied homes and/or despite recent contact between SPS and the borrowers, whether those practices violated the FDCPA and/or Class members' uniform mortgage agreements, and what damages should be awarded—turn entirely on SPS's uniform course of conduct.

The proposed Classes are objectively defined and ascertainable. SPS maintains searchable databases with the data to determine Class membership, including who was charged inspection fees, the amount of the inspection fees, whether their homes were vacant or occupied, and whether they were in contact with SPS or made promises to pay within 30-days of being

- 14 -

charged an inspection fee. Ex. 15. In addition, SPS maintains each Class member's Loan Status and letters it sent to them when SPS began servicing their loans, which the parties can use to identify: (a) Class member loans in default when SPS commenced servicing, for the Nationwide FDCPA Class; and (b) Class members that were not in default when paying inspection fees, for the Nationwide Breach of Contract and Alternative Good Faith and Fair Dealing Contract Class. Similar classes of mortgage borrowers were ascertainable. *See, e.g.*, *Harte v. Ocwen Fin. Corp.*, 2018 WL 1830811, at *31 (E.D.N.Y. Feb. 8, 2018) (collecting cases).

### a.      Common Factual Questions Predominate for All Claims.

The proposed Classes are "sufficiently cohesive to warrant adjudication by representation" because SPS's challenged conduct and policies gave rise to both Plaintiff DeSimone's and the Classes' injuries. Dkt. 214 at 44-45; *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002) (citation omitted); *see Sykes*, 780 F.3d at 88 ("All that is required at class certification is that the plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability.") (cleaned up). The predominant common questions will therefore be whether SPS's policies regarding the imposition of inspection fees on borrowers constitute a breach of: (1) the Class members' "uniform" mortgage agreements and/or (2) the FDCPA. Because each of these questions "is essential to the claims of all putative class members," and the "same evidence will suffice for each class member to answer it," predominance is met. *Schutter*, 2024 WL 4118465, at *5 (cleaned up).

### 1.      FDCPA Class

SPS violated the FDCPA by charging unreasonable inspection fees not expressly permitted by Class members' uniform mortgage agreements. Dkt. 214 at 21-22. The FDCPA, 15 U.S.C. § 1692f, prohibits a loan servicer acting as a debt collector from charging any fee that is not expressly authorized by the loan agreements. For the uniform Fannie Mae / Freddie Mac

- 15 -

mortgage agreements at issue classwide, the inspections fees charged by SPS were not expressly permitted. Dkt. 214 at 25-26, 33-34 ("SPS instead argues that Section 9 'expressly authorized' it to inspect DeSimone's property and charge her associated fees. … The Court disagrees."). A violation of FDCPA Section 1692f(1) is also "in most cases, a violation of [FDCPA] Sections 1692e(2) and 1692e(10)." *Id*. at 34.

The amended Nationwide FDCPA Class consists of borrowers in default when SPS began servicing their loans, as is required for SPS to be a debt collector under the FDCPA. Dkt. 214 at 51. The two objective methods to ascertain whose loans were in default when SPS began servicing or subservicing the loan are: (1) loans assigned Loan Status codes "DELQ" and "FC" when SPS commenced servicing, *see* Ex. 15 (12/4/24 Pulsipher Tr. 79:1-13, 125:23-126:9)[9]; or (2) letters sent to borrowers by SPS asserting default within 30-day of SPS commencing servicing. Exs. 18, 19.

SPS's imposition of inspection fees were further unreasonable as contrary to federal regulations and GSE servicing guidelines that do not permit the borrower to be charged unless the property is vacant and contact cannot be made with the borrower. Regulations from the United States Department of Housing and Urban Development ("HUD") do not permit borrowers to be charged for inspections unless the lender or servicer knows the property is "vacant or abandoned" or if the lender or servicer is unable to make contact with the borrower by telephone. 24 C.F.R. §§ 203.377; 206.140. Similarly, the Fannie Mae Servicing Guidelines have consistently proscribed charging for inspections unless the property is known to be vacant and the servicer has not been in contact with the borrower. *See* 2024 Fannie Mae Servicing Guide, § D2-2-10 (5/10/23) ("However, the servicer must not complete a property inspection every

---

[9] "SPS assigns each of the loans it services a 'loan status code.' ... [E]ach [loan] can only have a single loan status code at a time." Dkt. 214 at 5 (citations omitted).

calendar month when the mortgage loan is 90 or more days delinquent if [] the property is borrower/tenant occupied, and . . . [Qualified Right Party Contact] has been established within the last 30 days . . . "); 2017 Fannie Mae Servicing Guide, § D2-2-10 (10/14/15). GSE guidelines further prohibit servicers from charging more than the actual cost of the inspections, thereby preventing the use of inspection fees as a profit center. *See* Freddie Mac Single-Family Seller/Servicer Guide, § 9701.9 (limiting cost to lesser of "actual cost of the property inspection" or Freddie Mac cost limits) (9/27/21); 2024 Fannie Mae Servicing Guide, § A4-2.1-02, Property Inspection Vendor Management and Oversight (11/12/14). Each of these sources serves as common proof of the illegality of SPS's practices and, consistent with that conclusion, courts—including this one—routinely hold the predominance requirement satisfied where classes pursue FDCPA claims. *See, e.g.*, *Weissman*, 2019 WL 254035, at \*11 (finding predominance satisfied where class members alleged defendant's uniform practices violated the FDCPA).

**2.     Nationwide Breach of Contract Class and Alternative Multi-State Good Faith and Fair Dealing Contract Class**

The Nationwide Breach of Contract Class is also subject to common proof. Fannie Mae and Freddie Mac have jointly prepared uniform mortgage agreements for properties in all states and United States territories since the 1970s.  The Fannie Mae/Freddie Mac uniform instruments were updated nationwide in July 2021 ("07/2021") and reflect that date in the agreement footer. Before that, the last nationwide update was in January 2001 ("01/01").[10]  Interim revisions between and since the 2001 and 2021 updates are published by Fannie Mae and Freddie Mac. *See* Ex. 34 at A-4, A-5.  The Court has confirmed that the parties' and Classes' claims and defenses in this action pertain to Sections 7 and 9 of the Fannie Mae / Freddie Mac uniform

---

[10] *See Fannie Mae Uniform Instruments Fact Sheet* (https://singlefamily.fanniemae.com/media/27911/display) ; Ex. 34 at A-4 ("July 2021:Newly published legal documents.").

- 17 -

mortgage agreements.  Dkt. 214 at 10-11, 25-27.  Sections 7 and 9 are present in the January 2001 Fannie Mae/Freddie Mac uniform mortgage agreements and also the July 2021 updated Fannie Mae/Freddie Mac uniform mortgage agreements.  Ex. 34 at A-1 and A-2 reprises those uniform mortgage terms in the Fannie Mae /Freddie Mac uniform agreements for each state and United States Territory.  While there were minor language changes between the January 2001 and July 2021 form agreements in Sections 7 and 9, those terms have been substantially identical nationwide in language and application since at least 2001.[11] All Fannie Mae/Freddie Mac form agreements require inspection fees to be "reasonable or appropriate." *Id*. (§9); Dkt. 214 at 26. Ex. 34 at A-3 contains Sections 7 and 9 from the Plaintiff DeSimone's mortgage agreement.

Like the Fannie Mae/Freddie Mac uniform mortgage agreements, FHA mortgage agreements are also uniform instruments. HUD regulations require a single mortgage form to be used. *See* 24 C.F.R. § 203.17; *accord Kolbe v. BAC Home Loans Servicing, LP*, 738 F.3d 432, 437 (1st Cir. 2013) ("The mortgage agreement contained a set of Uniform Covenants that are required by HUD regulations to be in every FHA-insured mortgage.") (citations omitted). That form forward mortgage agreement (the "FHA form mortgage") is available on HUD's website: https://www.hud.gov/hud-partners/single-family-model-documents. The FHA Form Mortgage agreement contains terms that are substantially similar to Sections 7 and 9 of the Fannie Mae/Freddie Mac form mortgage agreements. *Compare* FHA Form Mortgage §§ 7, 9 *with* Ex. 34 at A-1, A-2.  Both also contain substantially similar "Governing Law" terms.  *Compare* FHA Form Mortgage §15 *with* Ex. 34 at A-1 (§16), A-2 (§17).

---

[11] Also reprised in Ex. 34 at A-1 and A-2 are the Fannie Mae / Freddie Mac mortgage agreements' definition of "Applicable Law" and "Governing Law" terms, as those provisions affect the choice-of-law.

Courts routinely find predominance satisfied, and class certification appropriate, in similar circumstances, where plaintiffs allege breach of form contracts, like the uniform mortgage agreements at issue here. *See In re U.S. Foodservice.*, 729 F.3d at 124-25 (affirming class certification where contracts were "substantially similar in all material respects"); *Fleisher v. Phoenix Life Ins. Co.*, 2013 WL 12224042, at *13 (S.D.N.Y. July 12, 2013) ("There is widespread agreement that certification under Rule 23(b)(3) is warranted for claims that involve contracts that, like here, contain the same or essentially the same terms."); *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 72 (E.D.N.Y. 2004) (certifying multistate breach of contract class where "the plaintiff's breach of contract claim involves the general principles of contract interpretation"); *Jenack v. Goshen Operations, LLC*, 222 A.D.3d 36, 42 (N.Y. App. Div. 2023) (New York courts have "'uniformly certified breach of contract class actions, notwithstanding differing individual damages, where . . . there is uniformity in contractual agreements and/or statutorily imposed obligations.'") (quoting *Globe Surgical Supply v GEICO Ins. Co.*, 59 A.D.3d 129, 139 (N.Y. 2008); *see also Pryce v. Progressive Corp.*, 2022 WL 969740, at *8 (E.D.N.Y. Mar. 31, 2022) (determining common issues associated with plaintiff's breach of contract claim predominated); *Ge Dandong v. Pinnacle Performance Ltd.*, 2013 WL 5658790, at *12 (S.D.N.Y. Oct. 17, 2013) (certifying implied covenant class based, in part, upon predominance of common issues).

Finally, even "[a]ssuming *arguendo* that the property inspection fees did not breach an express term of the mortgage agreement, there is still a question as to whether SPS exercised its discretion under the contract arbitrarily, irrationally, or in bad faith by charging the fees. That is the alleged violation of the implied covenant." Dkt. 214 at 32. "And the same disputed facts that bear on whether the property inspection fees were 'reasonable or appropriate'… are also material to whether the fees were assessed arbitrarily, irrationally, or in bad faith." *Id.*

- 19 -

### b. Common Questions of Law Predominate.

The Nationwide FDCPA Class's claims stem from a federal law, and there are thus no individualized questions. The Nationwide Breach of Contract Class also presents predominate issues of law comprising SPS's violations of the Fannie Mae / Feddie Mac and FHA uniform mortgage agreements.  Dkt. 214 at 10, 25-27, n24. Plaintiff DeSimone and all Class members' uniform mortgage agreements provide that federal law and the law of the state where the mortgaged property is located applies.  Ex. 34 at A-1, A-2.

"The Second Circuit has [] explained, in the context of breach-of-contract claims, that 'state contract law defines breach consistently such that the question will usually be the same in all jurisdictions.'" *Cox v. Spirit Airlines, Inc.*, 341 F.R.D. 349, 370 (E.D.N.Y. 2022) (citations omitted); *see also Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 233, n.8 (1995) ("contract law is not at its core diverse, nonuniform, and confusing") (citation omitted); *Hanks v. Lincoln Life & Annuity Co. of N.Y.*, 330 F.R.D. 374, 383 (S.D.N.Y. 2019) ("[T]he applicable legal standard for breach of contract is not materially different across jurisdictions."); *In re Lincoln Nat'l COI Litig.*, 620 F. Supp. 3d 230, 255-56 (E.D. Pa. 2022) (where existence of a contract and its terms are undisputed, "whether common issues predominate turns largely on whether breach is capable of proof on a classwide basis").

Plaintiffs recognize that some courts have found material differences in state contract law, such as whether a plaintiff must show the breach was material and whether extrinsic evidence can be used even if a contract is unambiguous. *See, e.g.*, *Handorf v. Transamerica Life Ins. Co.*, 349 F.R.D. 540, 555 (N.D. Ia. 2025); *In re TD Bank, N.A. Debit Card Overdraft Fee Litig.*, 325 F.R.D. 136, 174 (D.S.C. 2018). Here, these distinctions are unnecessary. *First,* the alleged inspection fees do in fact constitute a material breach of the mortgage agreements. *See, e.g.*, *Wilson v. EverBank, N.A.*, 77 F.Supp.3d 1202, 1217 (S.D. Fl. 2015) (holding plaintiffs'

- 20 -

allegations that defendant "charged Plaintiffs for costs not properly chargeable to the borrower under the terms of their mortgage agreements" stated "a material breach of Plaintiffs' mortgage agreements"). *Second,* not only are the relevant mortgage agreement provisions unambiguous, but there is no relevant extrinsic/parole evidence to speak of in these take-it-or-leave it uniform contracts. The proposed Nationwide Breach of Contract Class lends itself to certification because every State provides that where there are breaches of valid contracts term and damages, there is a contract claim. *See* Ex. 35 (Contract Appendix).[12]  This is especially true in this case because virtually every State also requires good faith performance of contracts.  Ex. 36 (Good Faith and Fair Dealing Appendix).   SPS acted in bad faith by upcharging the cost of the inspections and charging unreasonable inspection fees in violation of GSE and FHA guidelines.[13]

Finally, common questions of law predominate for all members of the Alternative Multi-State Good Faith and Fair Dealing Contract Class.  If the Court denies the Nationwide Breach of Contract Class on the basis that there is no common express term of the Classes' mortgage

---

[12] This appendix did not include the District of Columbia, North Carolina, Oregon, and West Virginia, but these as well have substantially similar elements to plead breach of contract claim. In the District of Columbia, "a party asserting breach of contract must prove four elements: (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *CorpCar Servs. Houston, Ltd. v. Carey Licensing, Inc.*, 325 A.3d 1235, 1244-45 (D.C. App. 2024) (citation modified). The statute of limitations is three years. D.C. Code Ann. § 12-301(a)(7). In Oregon, a party "must allege the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach, and defendant's breach resulting in damage to plaintiff." *Moyer v. Columbia State Bank*, 505 P.3d 26, 33 (Or. Ct. App. 2021) (citation modified). The statute of limitations is six years. Or. Rev. Stat. Ann. § 12.080. In North Carolina, the "elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of [the] contract." *Wells Fargo Ins. Servs. USA, Inc. v. Link*, 827 S.E.2d 458, 472 (N.C. 2019) (internal quotations omitted). The statute of limitations is three years. N.C. Gen. Stat. Ann. § 1-52(1). In West Virginia, a "claim for breach of contract requires proof of the formation of a contract, a breach of the terms of that contract, and resulting damages." *Sneberger v. Morrison*, 776 S.E.2d 156, 171 (W.V. 2015) (citations omitted). The statute of limitations is ten years. W. Va. Code Ann. § 55-2-6.

[13] Virtually every State implies good faith into all contracts.  Ex. 36.

agreements (or otherwise determines that the express contract terms present predominating individualized issues, which Plaintiffs submit is not the case), this is the alternative.

This Alternative Multi-State Good Faith and Fair Dealing Contract Class consists of States whose law is materially similar to New York's substantive law, given that the Court need not find complete uniformity of state law to certify a multi-state class, but only that there are no material conflicts so grouping is warranted. *See Greene v. Gerber Prods. Co*, 262 F. Supp. 3d 38, 80 (E.D.N.Y. 2017); *Kinsey v. New York Times Co.*, 991 F.3d 171, 176 (2d Cir. 2021) (first question in choice-of-law analysis is whether the laws of the various jurisdictions actually conflict).

Here, a State is deemed to be materially similar to New York's if: (a) the breach of the implied covenant is considered a breach of the contract itself and there is not a specter of double recovery, and (b) the covenant prohibits bad faith conduct that impairs a party's right to receive the benefits of the contract or the party's reasonable expectations under the contract. Dkt. 214 at 28; Ex. 36. Thus, there are no material conflicts among the States included in the Alternative Multi-State Good Faith and Fair Dealing Contract Class, let alone individualized questions of law that predominate over common questions.

#### c. Class Members Can Show Damages with Common Evidence.

Common issues also predominate for damages. Plaintiffs and the Classes seek to recover the alleged improper inspection fees—recorded in SPS's software-based servicing system—as well as any accrued interest. Such damages are easily calculable with common evidence obtainable from SPS itself because these records are maintained in the normal course of business. Joint Decl. ¶¶ 31-32. As detailed *supra*, those records reveal the loan and occupancy status of each inspected property, SPS's contact with borrowers, how much each borrower was charged, and the corresponding cost to SPS, for the inspection, and the Loan Status of each Class

member loan. Therefore, just as SPS utilizes a uniform methodology—*i.e.* computerized formulas that electronically search its loan databases to order inspections and determine whether the borrower should pay for those inspections, *see* Ex. 1 (Funk Tr. 15:4-16:24); Ex. 15 (12/4/24 Pulsipher Tr. 94:6-18, 121:20-25), so too are the Classes' damages susceptible to a uniform methodology. *See, e.g.*, *Volino v. Progressive Cas. Ins. Co.*, 2023 WL 2532836, at *10 (S.D.N.Y. Mar. 16, 2023) (predominance satisfied where plaintiff proffered a damages methodology based upon defendant's records).

### d.   SPS's Defenses are Common, Not Individualized.

Defendants often assert defenses to class certification that are predominant classwide issues. *See Amgen*, 568 U.S. at 459 ("Rule 23(b)(3) requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class."); *Tyson*, 577 U.S. at 457 ("That defense is itself common to the claims made by all class members."); *In re U.S. Foodservice*, 729 F.3d at 119 ("In short, because the [defense] question . . . is common to all plaintiffs, the class will 'prevail or fail in unison' on this point — rendering certification appropriate.") (*quoting Amgen*, 568 U.S. at 460). Here, SPS relies on at least two classwide defenses well-suited to classwide resolution. *First*, SPS contends that either it is not upcharging inspection fees, or is permitted to do so under the FDCPA and the uniform mortgage agreements. *Second*, SPS contends that the occupancy status is not relevant to the propriety of charging Class members for property inspections. While Plaintiffs disagree with both defenses, it is undeniable that resolution of both defenses are classwide issues that do not vary depending upon the individual circumstances of borrowers or their loans.

- 23 -

## 2.    A Class Action Is Superior to Individual Litigation.

As a final predicate to class certification, Plaintiffs must show that a class action such is superior to other available methods of adjudication. Fed. R. Civ. P. 23(b)(3). In determining the superiority of the class mechanism, courts consider the following factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

*Id*. Here, each factor counsels in favor of class certification.

*First*, in consumer lawsuits such as this one, because of the burdens of separate litigations and relatively small individual damages, class actions "are clearly superior to the alternative of forcing consumers to litigate on principle." *Price v. L'Oreal USA, Inc.*, 2018 WL 3869896, at *11 (S.D.N.Y. Aug. 15, 2018); *see also Weissman*, 2019 WL 254035, at *11 (finding class litigation a superior method of adjudicating FDCPA claims). There can be no credible argument that Class members' claims are best addressed in hundreds of thousands of virtually identical cases rather than a single collective action. *See In re U.S. Foodservice*, 729 F.3d at 130-31 ("[S]ubstituting a single class action for numerous trials in a matter involving substantial common legal issues and factual issues susceptible to generalized proof will achieve significant economies of time, effort and expense, and promote uniformity of decision.") (cleaned up). Instead, a class action is "the best means of adjudicating this controversy." *In re Cablevision*, 2014 WL 1330546, at *14; *accord Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("Class actions also may permit the plaintiffs to pool claims which would be uneconomical to litigate individually"); *accord* Alba Conte and Herbert B. Newberg, *Newberg on Class Actions*, § 5:7 (4th Ed.) (2002) ("A class action may represent the only means for judicial relief when a plaintiff's claim is too small economically to support individual litigation."). Furthermore, "a

- 24 -

class action will promote a unity of analysis and outcome, compared to potentially conflicting outcomes across a multitude of individual suits." *Vu v. Diversified Collection Servs., Inc.*, 293 F.R.D. 343, 356 (E.D.N.Y. 2013).

*Second*, Plaintiffs are not aware of any other pending litigation related to SPS's inspection fees. This case represents the consolidation of related actions in this District. *Third*, Plaintiffs have conducted extensive discovery and litigation in this forum over the past seven years. It will be efficient and convenient to continue litigating common questions here and no litigation asserting similar claims is pending elsewhere. And, *fourth*, any difficulties that may arise can be addressed with the Court's management tools. *See Sykes*, 285 F.R.D. at 294.

## V.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant Plaintiffs' amended motion for class certification, certify Plaintiff DeSimone as the representative for the Classes, and appoint the undersigned as Class Counsel.[14]

Dated:  April 30, 2026

Respectfully submitted,

By: */s/ Rachel Geman*

**LIEFF, CABRASER, HEIMANN &
  BERNSTEIN, LLP**
Rachel Geman
rgeman@lchb.com
250 Hudson Street, 8th Floor
New York, New York 10013
Tel: (212) 355-9500
Ellie Olson (*pro hac vice*)
eolson@lchb.com
222 2nd Ave S, Suite 1640
Nashville, Tennessee 37201
Tel: (615) 313-9000

---

[14] Plaintiffs will submit a plan for the class notice required by Fed. R. Civ. P. 23(c) following class certification and as further directed by the Court.

**TUSA P.C.**
Joseph S. Tusa
joseph.tuspc@gmail.com
P.O. Box 566
55000 Main Road, 2nd Fl.
Southold, New York 11971
Tel: (631) 407-5100

**GISKAN SOLOTAROFF & ANDERSON LLP**
Catherine E. Anderson
canderson@gslawny.com
Oren Giskan
ogiskan@gslawny.com
1 Rockefeller Plaza, 8th Floor
New York, New York 10020
Tel: (212) 847-8315

*Proposed Co-Lead Class Counsel*

**SHANBERG STAFFORD LLP**
Ross E. Shanberg
rshanberg@ssbfirm.com
4100 Newport Place, Suite 820
Newport Beach, California 92660
Tel: (949) 205-7515

*Additional Counsel for the Class*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1**

Rachel Geman, co-counsel for Plaintiffs, certifies pursuant to Local Rule 7.1(c) that the foregoing *Memorandum of Law* is less than twenty-five pages, exclusive of the caption and cover page, the table of contents, the table of authorities, counsel's signature block not including exhibits, appendices or attachments, in accordance with the Individual Practices of the Honorable Pamela K. Chen, § 3.B.

DATED:  April 30, 2026                    Respectfully submitted,

                                          By: */s/ Rachel Geman*

                                          **LIEFF, CABRASER, HEIMANN &**
                                            **BERNSTEIN, LLP**
                                          Rachel Geman
                                          rgeman@lchb.com
                                          250 Hudson Street, 8th Floor
                                          New York, New York 10013
                                          Tel: (212) 355-9500

- 1 -